# THE STATE v. THE MEXICAN GULF RAILWAY COMPANY.

A railway is not an immoveable, either by nature or destination, when the soil on which it is laid belongs to another ; it is, consequently, not affected by judicial or legal mortgages, nor susceptible of being mortgaged unless authorized by a special act of the legislature.

Future property can never be the subject of conventional mortgage. C. C. 3276. The act of 12th March, 1838, authorizing certain loans to be made to the Mexican Gulf Railway Company, and other Companies, does not, of itself, create a mortgage on the property of those Companies, nor could it without their consent. That consent is expressed by the acts of mortgage, executed in pursuance of it. The act contains only a proposition to loan, upon the execution of a mortgage on the property of the Company ; when accepted, the mortgage exists, and is essentially conventional. The act did not contemplate taking a general mortgage on all the property of the Company, present and future.

The State v. The Mexican Gulf Railway Company.

APPEAL, by the defendants and certain intervenors, from a judgment of the District Court of the First District, in favor of the State, *Buchanan*, J.

BULLARD, J. The second section of the act of 12 March, 1838, entitled " An act amendatory of an act to expedite the construction of the New Orleans and Nashville Rail Road," declares, that the State engages to make a loan, among others, to the Gulf of Mexico Rail Road Company of $100,000, provided that before receiving the bonds of the State, &c., the Company shall execute their obligation to the State for the payment of the principal and interest of said bonds, the faithful payment thereof to be secured by mortgage and privilege on all the property, slaves, machinery, &c., of said Company, to be executed as required by an act of 13th March, 1837 ; and provided, that before executing the notarial act of mortgage, the Governor shall name three disinterested persons, who shall, under oath, appraise the property of the Company, and show satisfactorily to the Governor and the Treasurer of the State, that the mortgage, bonds, or obligations are sufficient to secure the State against all losses. The act contains certain other conditions and restrictions, not now important to mention.*

---

* The act of 12th March, 1838, provides :

Sect. 2. That for the purpose of facilitating the immediate construction of the Red River Rail Road, of the Baton Rouge and Clinton Rail Road, and of the Gulf of Mexico Rail Road, the State hereby engages to make a loan to said companies of the following amounts, viz : of one hundred thousand dollars to the Red River Rail Road Company ; of seventy-five thousand dollars to the Baton Rouge and Clinton Rail Road Company ; and of one hundred thousand dollars to the Gulf of Mexico Rail Road Company ; *provided, however*, that before receiving the bonds of the State, the proceeds, or any part thereof, which proceeds are to be deposited in the Treasury of the State, the said companies shall be and they are hereby required to execute their respective obligations to the State for the payment of the principal and interest of said bonds, the faithful payment whereof to be secured by mortgage and privilege on all the property, slaves, machinery, &c. of said companies, to be executed in the same manner and effect, in every particular, as is required by the State of the New Orleans and Nashville Rail Road Company, by the second section of an act entitled " An act to expedite the construction of the New Orleans and Nashville Rail Road," approved 13th March, 1837 ; *and provided also*, that before executing the notarial act of mortgage, the Governor shall name three disinterested persons, who shall, under oath, appraise the respective property of each of said companies, and whose farther duty it shall be to satisfy the Governor and Treasurer of the State, that the respective property of each of said

In pursuance of this act, the Company executed to the Governor, at different times, three acts of mortgage, and received the bonds of the State, which were negotiated through the City Bank. These acts declare that the Company grants a first lien, privilege and mortgage to the State, upon all the property of the said Com-

companies, and their mortgages, bonds, or obligations aforesaid, are sufficient to secure the State against all losses ; *and provided, moreover,* that only ten thousand dollars of the proceeds of said bonds shall be paid over by the Treasurer of the State, for each mile of said Rail Road as soon as completed, not including that part of the Rail Road which may now be completed ; *provided, also,* that the second, third, fourth, and fifth sections of the above recited act do apply to the aforesaid companies, &c. ; *and provided,* that none of the provisions of the said second section [of the act of 13th March, 1837] shall affect the other Rail Road Companies mentioned in this act, except those by which the New Orleans and Nashville Rail Road Company shall be bound under this act, &c,

The act of 13th March, 1837, to expedite the construction of the New Orleans and Nashville Railroad, declares :

Sect. 2. That so soon as this act shall be accepted by said Company, evidenced by the consent of a majority in value of the stockholders thereof, and the same shall be made known *to* the satisfaction of the Governor and Treasurer of this State, and the President of said Company shall have executed a notarial act in pursuance of the consent of the stockholders aforesaid, in conformity with the provisions of this act, in favor of the Governor of this State and his successors in office, giving a first privilege, lien, and mortgage to the State of Louisiana upon all property of the Company, immoveables, slaves, rights, machinery, lots, railways, and generally upon all property which may appertain to said Company within the limits of the State of Louisiana, which first privilege, lien, and mortgage are hereby declared legal and obligatory, all laws to the contrary notwithstanding, for the faithful payment of the principal and interest of said loan as the same shall become due, it shall be the duty of the Treasurer of this State, and he is hereby authorized and required to issue the bonds of said State, and deliver the same to the President of said Company, &c.

Sect. 3. That in case the said Company shall fail to pay the said interest when the same shall become payable, then the principal of said bonds shall be considered as due, and the State of Louisiana shall enjoy all the rights resulting from the privilege, lien, and mortgage aforesaid, and may, on the petition of the Attorney General, filed in either of the District Courts of the First and Second Judicial districts of this State, or other competent tribunals, cause all the property, immoveables, slaves, rights, machinery, lots, railways, and generally all the property belonging to said Company, to be seized and sold, as required by the laws of the State in cases of mortgages with judgment confessed, for the purpose of enforcing the payment of the principal and interest of the bonds aforesaid ; &c.

The parts of the second and third sections omitted in the above extracts, and the whole of the fourth and fifth sections of the act, are irrelevant to the questions involved in this action.

pany, slaves, machinery, railways, buildings, and more especially upon a car house then being constructed, a saw mill and appurtenances on the bayou Loutre, and a certain number of slaves who are mentioned by name.

The interest on the bonds not having been regularly paid, the Attorney General sued out an order of seizure and sale, according to the condition of the contract. Various creditors of the Company intervened, and opposed this proceeding on the part of the State, alleging superior privileges to that of the State, upon certain property of the Company not enumerated in the acts of mortgage.

*First.* F. De Lizardi & Co. claim the vendor's privilege for $6099 upon iron rails, laid down on a portion of the road not included in the mortgage given to the State, as well as the privilege of seizing creditors on the same, it having been seized previously to the issuing of the order of seizure in this·case. They also claim as pledgees certain judgments, notes, and claims belonging to the Company, to secure the same debt.

*Second.* Albert, as agent of Norris, claims the vendor's privilege on a locomotive. He has also seized certain claims.

*Third.* Millaudon, and the Orleans Insurance Company, claim a judicial mortgage on a lot of ground, and on a slave acquired by the Company since the mortgage to the State.

*Fourth.* Lallande, and J. and L. Garnier claim as judgment creditors, having seized claims and suits of the Company.

*Fifth.* Smith, and others, in the employment of the Company, claim privileges as such.

*Roselius*, Attorney General, for the State. The act of 1838, under which the bonds of the State in favor of the Company were issued, refers in express terms to that of the 13th March, 1837, and makes the provisions of the second, third, fourth and fifth sections of the latter applicable to the transaction between the State and the defendants. The act of 1837 gives the State not merely a mortgage, but " the first lien, privilege, and mortgage on all the property of the Company, within the limits of the State, at the time the Company shall fail to pay either the principal or interest of the bonds." Persons contracting with the Company were

bound to know that the State had the first lien and mortgage on all its property.

*S. L. Johnson* and *L. Janin*, contra.   By the second section of the act of 1838, the Company is required to execute its obligation for the loan made by the State, and to secure its payment by a mortgage.   An act, on the part of the Company, was necessary to secure the payment ;  and this act was required to be executed in the same manner as the acts prescribed by the second section of the act of 13th March, 1837.   It was not to be accepted, until the property should have been appraised by three persons appointed by the Governor.   The property to be thus appraised, must have been in existence, and this excludes the idea that the future property of the Company was to be affected.   This is made still clearer by that part of the section which directs that the loan shall be made only in case the appraisers, the Governor, and the Treasurer shall all be satisfied, that the property so appraised is sufficient to protect the State against loss.

But it has been contended by the Attorney General that the second, third, fourth, and fifth sections of the act of 13th March, 1837, apply to the Mexican Gulf Railway Company, and warrant the construction he has put upon the rights of the State, and the obligations of the Company.   The fourth and fifth sections of that act have no bearing upon the present controversy.   By the second section it is provided :  " That so soon as the President of said Company shall have executed a notarial act, &c., in favor of the Governor of this State and his successors in office, giving a first lien, privilege, and mortgage to the State, upon all property of the Company, immoveables, slaves, rights, machines, lots, railways, and generally upon all property which may appertain to said Company within the limits of the State of Louisiana, which first privilege, lien, and mortgage are hereby declared legal and obligatory, all laws to the contrary notwithstanding, &c., it shall be the duty of the Treasurer to issue the bonds," &c.   It thus appears that the *notarial act gives the lien, privilege, or mortgage*, and that it extends only to the property specially affected by the act, which says nothing of future property.

The third section of the act of 1837, provides, that in the event of the failure of the Company to pay either the principal or in-

terest of the bonds, the whole shall be considered as due, and that the State " shall enjoy all the rights *resulting from the privilege, lien, and mortgage aforesaid,* and may cause all the property, immoveables, slaves, rights, machinery, lots, railways, and generally all the property belonging to said Company, to be seized and sold, as required by the laws of the State *in cases of mortgage with judgment confessed* ;"—that is, that the State shall enjoy all the rights resulting from the *act aforesaid,* which gave no rights upon future, or any other property than that specially described therein. The rights of the State are those of a mortgagee under an act importing a confession of judgment, and apply only to the property specially mortgaged. An order of seizure and sale is to be taken out, without citing the defendant; and the evidence of debt, as well as the property bound, must, therefore, appear from the notarial act. The judge can order the seizure of no other property than that specified in the act. In the absence of clear and precise provisions, the court will not presume that the legislature intended to alter the general laws of the State, and dispense with a description, in the act, of the property mortgaged, (Civil Code, arts. 3273, 3274,) or to authorize the mortgaging of future property. Civil Code, art. 3276.

BULLARD, J. Among the admissions of the parties in the record, is the following : " The land on which the Rail Road has been made does not belong to the Company, none of the owners having been expropriated." It is not, therefore, independently of the act of the legislature, susceptible of being mortgaged, and is not affected by judicial or legal mortgages. That act, we doubt not, rendered it susceptible of being mortgaged, and subjected it to a special conventional privilege, so far as the State is concerned, and for the purpose of securing the reimbursement of the loan ; but the Railway is not an immoveable, either by nature or destination, if the soil over which it is laid belongs to another. The rails, therefore, did not become immoveable by being laid down.

It is also clear that future property can never be the subject of conventional mortgage. Civ. Code, art. 3276. To this it is replied by the Attorney General, that the mortgage results from the special law passed in this case. We do not so understand it. The act does not create the mortgage, nor could it without the

consent of the corporation. That consent is expressed in the acts of mortgage. The statute contains only the proposition to loan upon the execution of a lien, privilege, and mortgage upon all the property of the Company. As soon as that proposition is accepted the mortgage exists, and is essentially conventional. That the legislature did not intend to take a general mortgage upon all the property of the Company, present and future, real or moveable, appears also from the clause in the act which requires the appointment of appraisers of its property, who were to satisfy the Governor and the State Treasurer that the property and the bond of the Company are sufficient to secure the State. It was evidently not contemplated that the mortgage should embrace property to be acquired afterwards, because it could neither be appraised nor described, much less that it should defeat the vendor's privilege on property afterwards acquired on credit, or judicial mortgages on lands or slaves which did not belong to the Company at the date of the act of mortgage.

The application of these principles to the cases of the different creditors who have made opposition, is not difficult.

The slave Peter acquired from Phelps, and the lot of ground in the *faubourg* Franklin, are not mortgaged to the State, and are subject to the judgment of Millaudon, Albert, and the Orleans Insurance Company.

De Lizardi & Co. claim the privilege of vendors on the iron rails laid down on the road, except for the first six miles; and their right had been recognized, and they had actually seized under execution, when the State interfered by injunction, alleging a superior right under the statute, and the acts of mortgage and privilege. The rails not having been attached to an immoveable, were still, in our opinion, subject to the vendor's lien, and the injunction obtained by the State ought not to be sustained.

The same principles apply to the other privileged creditors; and we are of opinion, that the opposing creditors have a right to be paid in preference to the State.

It is, therefore, ordered, that the judgment of the District Court be reversed; that the opposing creditors be first paid out of the the property subject to their privileges; and that, to this extent, the injunctions of the opposing creditors be perpetuated.

In the cases of *Claude Tournier* v. *Chauchon and another*, *William Prehn* v. *Etienne Rivolet and another*, and *Alphonse Regnier* v. *R. H. Hawthorn and another*, from the City Court of New Orleans ; of *William F. Thompson, Syndic*, v. *Elizabeth Morris and Husband, Joseph Albert* v. *Artemon Hill and another, Thomas C. Magoffin* v. *Oliver Dubois and another, Laurent Millaudon* v. *Artemon Hill and another, William Frost and another* v. *Jacques Léon and others, Michael Maher* v. *Patrick Summers, John D. James* v. *How Hinds, Benjamin Florance* v. *Joseph A. Beard*, and *Benjamin Florance* v. *John Mitchell*, from the Commercial Court of New Orleans ; of *Neally and another*, v. *Wellington and another, Paul Liautaud* v. *Jean Jonau*, and *Thomas H. Gorman* v. *Seth W. Nye*, from the District Court of the First District, the judgments of the lower courts were affirmed on appeal, in New Orleans, with damages, during the period embraced by this volume.

# INDEX.

## ACCESSION.

1. In an action by one claiming land under a patent from the United States, against a party in possession who had made valuable improvements thereon, the latter will be entitled to claim the excess of the value thereof above the fruits received since the commencement of suit.

*Kellam* v. *Rippey*, 138.

2. Where it is proved that the land claimed by the plaintiff would be equally, or more valuable to him with the timber on it, defendants, who were mere trespassers, will not be allowed any thing for the expense incurred by them in clearing it. *Baillio* v. *Burney*, 317.

## ACCOUNT.

1. An account bears interest from its liquidation; and will be considered as liquidated from the time when it was rendered, if not objected to within a reasonable time. *Shaw* v. *Oakey*, 361.

2. An unliquidated account bears interest from judicial demand. *Ib.*

See INTEREST, 2.

## ACT, AUTHENTIC.

See FIERI FACIAS, 17.

## ACTION.

See PLEADING.

## ACT SOUS SEIGN PRIVE.

Proof of the signatures of the grantor, and of one of the subscribing witnesses residing in another State, is sufficient evidence of the execution of a deed *sous seign privé*. *Thomas* v. *Turnley*, 206.

## ADMINISTRATOR.

See EVIDENCE, 59. SUCCESSIONS.

VOL. III.                              66

## ADMISSION.

See APPEAL, 27. EVIDENCE, 22. 25. DOMICIL, 1. PLEADING, 28. 29.

## ADVOCATE.

See ATTORNEY AT LAW.

## AGENCY.

1. The declarations of one who had acted as an agent, made after the termination of his agency, are not binding on the principal, though the former be dead at the time of the trial. *Reynolds* v. *Rowley*, 201.

2. The joint owners of a plantation are liable, each for his virile share, for supplies furnished for its use *Ib.*

3. Though the powers of attorney given to the manager of an estate by the joint proprietors, may have been revoked by the death of one, and the marriage of another, yet if he continue to act as such, for the benefit of the joint owners, without any express disavowal of his authority, or if he be subsequently recognized as such, either tacitly or expressly, the proprietors will be bound by his acts. *Ib.*

4. Where it clearly appears that defendant intended to authorize a third person to endorse certain notes in his name, he will be bound by such endorsement, though the letter of attorney were received by his agent after the endorsement. The authority, subsequently received, would amount, at least, to a ratification of the act of the agent.
*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

5. Though a receiver, appointed to collect money due to the parties to a suit, have no authority to pay debts due by them, yet if they know that he is doing so, and do not object at the time, they cannot do so afterwards.
*Kellar* v. *Williams*, 321.

6. Where, on the motion of one of the parties to a suit, with the consent of the other, a third person is appointed by the court to receive and sue for all amounts due to the litigants, on giving bond, with security, to hold the amounts so received subject to the order of the court, he will not be considered an officer of the court, but the agent of the parties, and only responsible as such. The appointment is the act of the parties. *Ib.*

7. One acting as an agent, will not be liable, personally, to a party aware that he acts as such. *Hazard* v. *Lambeth*, 378.

See BILLS OF EXCHANGE AND PROMISSORY NOTES, 2. ATTORNEY AT LAW, 2. SALE, 2. 3. 7.

## AMENDMENT.

See APPEAL, 34. PLEADING, 21. 22. 28. 29.

## ANSWER.

See Pleading, IV. V. VI. VII. VIII.

## APPEAL.

I. *From what Judgments an Appeal will lie.*

II. *Period within which Appeal will lie.*

III. *Abandonment of Right to Appeal.*

IV. *Appeal Bond.*

V. *Effect of Appeal.*

VI. *Parties to Appeal.*

VII. *Citation of Appeal.*

VIII. *Record of Appeal.*

IX. *Answer and Exceptions waived below, or which may be pleaded for the first time on Appeal.*

X. *Verdict and Judgment appealed from.*

XI. *Damages on Appeal.*

### I. *From what Judgments an Appeal will lie.*

1. Where the creditors of a succession are litigating their rights contradictorily with each other, and the value of the succession exceeds three hundred dollars, an appeal will lie to the Supreme Court, though the claim of each creditor may not amount to that sum. *Succession of Field,* 5.

2. Where the act which imposes a fine prescribes that it shall be recovered by a civil action, the officers of the State cannot, by instituting a suit in the form of an indictment, deprive the party of the right of appeal to the Supreme Court. *State v. Linton,* 55.

3. An appeal will lie from an order maintaining an injunction until the succeeding term of the court. It is an interlocutory judgment which may effect irreparable injury. *Newell v. Morton,* 102.

4. Where the matter really in-dispute is under three hundred dollars, and a larger amount is claimed in the petition, evidently for the purpose of giving jurisdiction to the appellate court, the appeal will be dismissed.
*Dabbs v. Stevens,* 143.

5. The jurisdiction of the Supreme Court is to be determined by the value of what is claimed in the petition, not by the amount allowed by the judgment.
*Gerber v. Marzoni,* 370.

6. An appeal will lie from a judgment on a demand in reconvention, where the sum claimed in reconvention is sufficient to give jurisdiction to the appellate court, though the original demand be under three hundred dollars ; but the judgment on the latter cannot be examined into. The demand in reconvention is in the nature of a new action. *Gore v. Kendig,* 387.

7. No appeal will lie from an order, discharging a rule to show cause why an injunction should not be dissolved, on the ground that the petition sets forth

no legal cause for issuing it.   The order is an interlocutory one, and works no irreparable injury.   If erroneous, it may be corrected by appeal from the final judgment.   *Osborne* v. *Clayton*, 437.

## II. *Period within which Appeal will lie.*

8.  Where an appeal is taken, after the lapse of twelve months from the day on which final judgment was rendered, by one who alleges in his petition of appeal that he is a non-resident, and the allegation is denied, the case will be remanded to try the issue ; and until the judgment rendered thereon, and the evidence on which it is based, is sent up, no opinion will be pronounced on any other point in the case.   *Griffing* v. *Bowmar*, 112.

9.  The general doctrines relative to the interruption of prescription, do not apply to the period fixed by art. 593 of the Code of Practice, after which no appeal will lie.   No appeal can be taken after the expiration of that time, though one may have been dismissed, which was taken within the period.
*Ib.* 113.

## III. *Abandonment of Right to Appeal.*

10.  Where, after obtaining an order allowing him an appeal, plaintiff does not appear to have attempted to avail himself of it by giving bond and security, nor to have taken any steps, until after the expiration of a year from the date of the judgment, to procure a transcript of the record, nor to have made any application to the judge *a quo* for a new appeal, the right of appeal will be lost.
*Sibley* v. *Roman Catholic Congregation of Natchitoches*, 27.

11.  When the period has elapsed within which a party might have appealed, he will not be allowed to contest his rights in the name of another appellant.
*Griffing* v. *Bowmar*, 113.

12.  In an action to recover the undivided half of a tract of land, for the rents and profits from the commencement of defendant's illegal possession, and for a division of the tract, there was a judgment for the plaintiff for the portion of the land claimed, and in favor of defendant for a certain sum for his improvements over and above the amount due by him for rents and profits.   The decree ordered a partition of the land.   In conformity with the part of the judgment ordering a partition, plaintiff proceeded to have the tract divided, and the respective portions designated by a further decree homologating the proceedings of the notary and experts in making the partition, and ordering himself to be put in possession of the half allotted to him, on paying the amount previously adjudged to be due for the improvements.   *Held*, that this was not such an acquiescence, on the part of the plaintiff, in the judgment, by voluntarily executing it, as is contemplated by art. 567 of the Code of Practice, and will not prevent his appealing from so much thereof as condemns him to pay for the improvements above the rents and profits.   *Milliken* v. *Rowley*, 253.

## IV. *Appeal Bond.*

13.  The signature of the appellant is not necessary to the appeal bond.   His

obligation to discharge any judgment rendered against him on the appeal, results from the judgment itself. *Fisk* v. *Friend*, 264.

## V. *Effect of Appeal.*

14. Where, through error, an order has been made allowing a suspensive appeal on security for costs only, and no transcript of the record has been delivered to the party, the order may be rescinded by the lower court on a rule to show cause. *Mathison* v. *Field*, 42.

15. Where the amount fixed by the judge for the appeal bond, is less than that required by law to render the appeal suspensive, it will be good as a devolutive one; the bond, in the latter case, being only to secure the payment of the costs. *Tipton* v. *Crow*, 63.

## VI. *Parties to Appeal.*

16. In an action on a joint contract, the suit was dismissed by the inferior court as to one of the defendants, on the ground of his domicil being in a different parish. Plaintiff took no appeal from the judgment of dismissal, but obtained a judgment against the other defendant. On an appeal by the latter: *Held*, that the action being on a joint contract, both contractors must be before the court; that the plaintiff having failed to make use of the means given him by law to reverse the erroneous decision of the inferior court, cannot avail himself of his own neglect; and that there must be judgment as in case of nonsuit. *Thompson* v. *Chrétien*, 26.

17. The testator had bequeathed all his estate to his mother and one of his sisters. An order for a sale of the property having been procured by the executor, a sister of the deceased, to whom no part of the estate had been left, obtained an injunction to prevent the sale, and the curator of the testator's mother, an interdicted person, intervened in the suit, alleging that the latter was a forced heir recognized by the will, that the injunction was for her benefit as well as the plaintiff's, claiming part of the damages sued for, and praying to be allowed, with the consent of the plaintiff, to unite with the latter, and to pay a part of the costs. Answer by defendant to the petition of intervention, denying the right of the curator to intervene; and judgment dissolving the injunction, and ordering the executor to proceed with the sale. On an appeal by plaintiff and intervenor: *Held*, that the plaintiff, having no interest in the succession of the testator, had no right to interfere with its administration: and that no judgment having been rendered for or against the intervenor in the lower court, his appeal must be dismissed. *Field* v. *Mathison*, 38.

18. Where an appeal is taken from a judgment in an action on a joint contract, all who were required to be parties below, must be made parties to the appeal, and this, though a part only have appealed, or the appeal will be dismissed. *Drew* v. *Atchison*, 140.

19. All the parties who are interested that the judgment should remain undisturbed, must be made parties to the appeal, or it will be dismissed.
*Garcia, &c.* v. *Their Creditors*, 436.

20. A creditor of an insolvent, in whose favor a judgment has been rendered, on a tableau of distribution, securing him a privilege or mortgage, must be made a party to any appeal, taken by another creditor or the syndic, for the purpose of reversing such judgment. *Ib.*

## VII. *Citation of Appeal.*

21. Where an appellee resides in the State, service of citation of appeal must be on the party himself, and not on his counsel. *Lee* v. *Kemper*, 1.

22. Under the act of 20th March, 1839, time will be allowed to correct any error or omission in the service of citation of appeal, where such error or omission did not result from the fault or neglect of the appellant. *Ib.*

23. Failure to serve citation of appeal in due time, will authorize the appellee to delay his answer until the expiration of the period allowed him by law, or, perhaps, to require a new citation, but not to demand the dismissal of the appeal. *Grove* v. *Harvey*, 271.

## VIII. *Record of Appeal.*

24. Under the act of 20th March, 1839, time will be allowed to correct any errors or omissions in the record of appeal, where such errors or omissions did not result from the fault or neglect of the appellant.

*Lee* v. *Kemper*, 1.

25. Where it does not appear from the record, that the amount in controversy exceeds three hundred dollars, the appeal must be dismissed. The appellant must show that he is entitled to an appeal. *Hall* v. *Sanders*, 10.

26. Third persons, not parties to the suit, who allege themselves aggrieved by the judgment, to whom the right of appeal is given by art. 571 of the Code of Practice, are entitled to avail themselves of every thing in the record affecting their rights. *Griffing* v. *Bowmar*, 113.

27. Where the record shows that the defendant moved to have a judgment by default set aside, he will not be permitted to urge before the appellate court, that no such judgment was obtained. *Hemken* v. *Farmer*, 155.

28. It is not required that the grounds upon which a judgment by default was taken, should be stated in the record. The absence of any exception, or answer, is, itself, evident and sufficient ground. *Ib.*

29. Where the record contains the evidence on which a judgment by default was made final, it is unnecessary that it should state that it was taken down at the request of either party. *Ib.*

30. A certificate by the clerk, that the record " contains all the evidence upon which the judgment appealed from was rendered," is insufficient.

*Grand Gulf Rail Road and Banking Co.* v. *Douglass*, 169.

31. Where the appellee has answered to the merits, and the record is so defective that the case cannot be examined, and justice requires that it should be tried *de novo*, the judgment of the lower court will be reversed, and the case remanded. *Ib.*

32. Where the evidence has not been taken in writing, it is the duty of the appellant to require the adverse party to join him in drawing up a statement

of the facts, or, in case of disagreement or refusal by the other party, to apply to the court to make such a statement, in order that the clerk may prepare a complete record of the case. *Ib.*

33. A bill of exceptions is only necessary, where something is to be brought to the knowledge of the appellate court, which would not otherwise appear in the record. *Harrison* v. *Weymouth*, 340.

See 36, *infra*.

IX. *Answer and Exceptions waived below, or which may be pleaded for the first time on Appeal.*

34. A prayer for the amendment of a judgment must be made when the answer to the appeal is filed. It will be too late, when the case is fixed for trial. *McGuire* v. *Bry*, 196.

35. An exception to the jurisdiction of the court, waived below, cannot be revived in the appellate court. *Reynolds* v. *Rowley*, 201.

36. There is a class of exceptions which may be pleaded for the first time on the appeal; but the facts necessary to sustain them, must appear from a mere inspection of the record. *Zollicoffer* v. *Briggs*, 236.

X. *Verdict and Judgment appealed from.*

37. The verdict of a jury will not be disturbed, unless clearly wrong.
*McCoy* v. *Hunter*, 118. *Hughes* v. *Lee*, 429.

38. A case will not be remanded, after appeal, on an affidavit of newly discovered evidence. The court cannot notice any thing which may have occurred subsequent to the date of the judgment appealed from.
*Succession of Hamblin*, 130.

39. On a question of fact, the judgment of the lower court will be affirmed, unless manifestly erroneous. *Bordelon* v. *Kilpatrick*, 159.

40. Action for the balance of an account, with interest, and verdict and judgment in favor of plaintiffs for a certain sum, without interest, and no new trial applied for by the latter. On an appeal by defendant, and prayer by plaintiffs for the amendment of the judgment, so as to allow the interest claimed: *Held*, that no attempt having been made to correct the judgment in the court below, by moving for a new trial, no amendment can be allowed in the appellate court. *Lambeth* v. *Burney*, 254.

41. The admission of irrelevant testimony is no ground for remanding a case for a new trial, where its exclusion would not probably vary the result.
*Ferguson* v. *Whipple*, 344.

42. Objections to a verdict lose much of their weight, when not made before the court which tried the case originally. A case will be less readily remanded on a question of fact, where a new trial has not been moved for below. An appeal from the judgment of an inferior tribunal, founded on a verdict, should only be taken after the refusal of a new trial.
*Hughes* v. *Lee*, 429.

43. The decisions of inferior tribunals in matters addressed to their discretion, will not be interfered with, unless in cases of extreme hardship or manifest injustice.  *Gottheil* v. *Fisk,* 434.

44. Where the petition prays for a judgment against defendants *in solido,* and one of the latter severs in his answer, but does not plead that the obligation is joint only, and judgment is rendered against defendants *in solido,* it will not be disturbed on appeal.  *Comstock* v. *Paie,* 440.

*Vide* 31, *supra.*

### XI. *Damages on Appeal.*

45. The court has no authority to give damages for a frivolous appeal, when not prayed for.  *Garrett* v. *Grimball,* 8.

## ARGUMENT OF CASE.

A party against whom an order of seizure and sale had been issued, presented a petition alleging that the mortgage and notes were obtained by fraud, and that the mortgage was illegally executed, and praying for an injunction, for a judgment rescinding the act, for damages against the mortgagee and a third person alleged to have been concerned in the fraud, and for a trial by jury.  The mortgagee answered, praying that the injunction might be dissolved, the demand rejected, and for a judgment in his favor for the amount of his debt.  *Held,* that the causes of opposition not being confined to those enumerated in art. 739 of the Code of Practice, and the proceedings having been changed from the *via executiva* to the *via ordinaria,* the mortgagee must be considered as a defendant in the proceedings to obtain the injunction ; and that the other party, like other plaintiffs, was entitled to open and close the argument.  *Beaulieu* v. *Furst,* 345.

## ASSIGNEE.

### See BANKRUPTCY, 2.

## ATTACHMENT.

1. The formalities prescribed by art. 254 of the Code of Practice, which requires where the defendant has no known place of residence, or conceals his person, or is absent, or resides out of the State, that the sheriff shall serve the attachment and citation, by affixing copies thereof to the door of the parish church of the place, or to that of the room where the court in which the suit is pending is held, stand in the place of citation, and form the basis on which all subsequent proceedings must rest, and their omission will be fatal.  Service of citation on the defendant, is the first step to be taken.  *Putnam* v. *Grand Gulf Rail Road and Banking Co.,* 232.

2. The remedy by attachment is a harsh one, and those who resort to it, must comply strictly with the requisites of the law.  *Ib.*

3. The subsequent return of a party, whose property had been attached on an affidavit that he had left the State with the intention of never returning, will not alone be sufficient ground for dissolving the writ, where circumstances render it probable that his original intention was not to return. The intention of returning should have been clearly proved, to entitle the defendant to a dissolution of the attachment. *Reeves* v. *Comly*, 363.

4. The surety in an attachment, though a resident of a different parish, may, under the third section of the act of 20th March, 1839, be proceeded against, summarily, before the court by which the original suit was decided. The object of that section was to authorize the court before which the action was instituted, to determine all questions, principal and incidental, raised in the course of the proceedin s, and thus to secure a speedy adjustment of the rights of the plaintiff. *Wallace* v. *Glover*, 411.

5. Where plaintiff, in an action commenced by attachment, has obtained a judgment before defendant's application to be declared a bankrupt under the act of Congress of 1841, he will be entitled to a preference on the property attached. *Aliter*, where defendant's application was made before judgment. In the last case no privilege is acquired. *Fisher* v. *Vose*, 457.

## ATTORNEY AT LAW.

1. An attorney is not admissible as a witness to disclose facts, the knowledge of which he acquired confidentially, in the practice of his profession. But when in possession of papers belonging to his client's adversary, or when called on, after having had them in his possession, to disclose what he has done with them, or to point out where they may be found, the rule does not apply; and he may be as properly called on to produce the papers necessary to establish the rights of the adverse party, if still in his possession, or interrogated as to facts which may lead to their discovery, as his client himself could be. C. P. 140, 473. *Travis* v. *January*, 227.

2. An agreement, by an attorney at law, to receive payment of a judgment in any thing but the legal currency of the United States, will not be binding on the plaintiff. *Dunbar* v. *Morris*, 278.

3. On a rule upon an attorney, under the third section of the act of 27th March, 1823, to show cause why an information should not be filed against him, it is the duty of the judge by whom the rule was granted, to decide as to the sufficiency of the cause shown. The act does not require that the Attorney General should be notified of, or take any part in this preliminary proceeding. *State* v. *Judge of First District*, 416.

## ATTORNEY, DISTRICT.

The twenty-first sect. of the act of 22d February, 1817, which allows the prosecuting attorneys on behalf of the State, ten per cent on amounts collected by them, to be paid by the defendant, will not authorize the allowance of such a commission to a District Attorney, who appears on behalf of the officers of the State, for the purpose of dissolving an injunction, obtained by

a delinquent sheriff to stay an execution issued against him by the Treasurer. The defence of such a suit, is one of the duties that devolves on the District Attorney as a public officer. *Scarborough* v. *Stevens*, 147.

## ATTORNEY IN FACT.

See AGENCY. EVIDENCE, 32.

## BAIL.

1. Where the condition of a recognizance is, that the principal shall appear at court to answer such matters and things as may be objected against him on behalf of the State, and shall not depart the said court without leave thereof, and no formal surrender has been made of him to the sheriff by his sureties, and the accused effects an escape from the court room while the jury are deliberating on his case, the recognizance will be forfeited. His sureties might have released themselves, at any time, by a surrender of their principal ; but until manifesting, by an actual surrender, their intention to be no longer bound, the principal remained in their custody, notwithstanding his appearance in court. *State* v. *Martel*, 22.

2. Whenever a question arises out of a bail bond, it is incidental to the main action, and may be tried summarily, without instituting a new suit.
*Wallace* v. *Glover*, 411.

## BANK.

1. When the rate of interest to be charged by a Bank on loans or discounts, is limited by its charter, it cannot stipulate for a higher rate on the amount of any loan or discount, in consideration of its forbearance to sue.
*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

2. The act of incorporation of a banking company provided that its capital should be divided into shares of one hundred dollars, of which five dollars should be paid at the time of subscribing for the stock, and the residue in such instalments, and at such times, as might be required by the Directors. Fifty dollars on each share were called in, and paid. A resolution, subsequently adopted by the Directors, provided, "that any stockholder who shall pay in anticipation a part, or the full amount due on the stock held by him, shall be entitled to dividends thereon in proportion to the amount so paid in." Under this resolution, a stockholder paid up the whole amount due on the stock held by him, and received dividends thereon, and loans (less, however, than the amount so advanced by him) upon the pledge of it. The Bank having gone into liquidation, required the re-payment of the loan, and refused to call for further contributions from the other stockholders. An action was commenced by the stockholder who had paid in full against the Bank, to compel the calling in of the whole amount subscribed, or, in default thereof, or in the event of the inability of the stockholders to pay the balance due, to recover the amount paid by him beyond fifty dollars on each share, with interest on the over-payment, and to restrain the company, from ex-

acting re-payment of the loan made to him, until the stockholders should be placed on an equality as to their payments. The Bank, thereupon, sued on the notes given for the loan. On appeal from a judgment rendered in the two actions, which had been consolidated : *Held,* That no stockholder can be liable for more than one hundred dollars on each share held by him, and that each share must lose an equal amount on the final liquidation of the Bank. That if the whole capital be sunk, those who have paid but fifty per cent will be debtors for the balance, and those who have paid in full cannot be called on for more. That if but half have been lost, the former are no further liable, but a balance will be due to the stockholder who has paid in full. That the payment of the whole amount of the shares under the reso-lution of the Directors, did not change the relative position of the stockhold-ers to each other as partners, except as to the dividends, the one having merely anticipated the payment of all he could ever be called upon to pay, and the others remaining liable for the balance of their subscriptions. That the payment was under the tacit condition that, if the concern proved pro-fitable, the party so paying should receive dividends in proportion to the amount paid by him, and on the winding up of its business, after payment of the debts from the surplus profits, the whole amount so paid in; and, if not profitable, that he should lose only the same proportion, upon each share, as the other stockholders. That *quoad* the creditors of the Bank, the excess above fifty per cent so paid is capital, liable for its debts ; but that, as among the stockholders, the party who made the advance is a creditor to the extent of the surplus, and entitled to interest thereon from the time when the Bank ceased its operations. That the stockholders are liable for the whole amount of their subscriptions, and that, if any further payment beyond fifty dollars on each share be necessary to the discharge of the debts of the company, it will be the duty of the Directors to call on all the stockholders for an equal contribution ; and that it would be unjust to use the amount paid by one stock-holder, beyond the others, for that purpose. That the Bank having gone into liquidation, a stockholder may maintain an action against it ; and that the loan, being less than the amount advanced by the borrower beyond the other stockholders, may be retained by him, unless required for his propor-tionate contribution towards the payment of the debts of the company.

*Millaudon* v. *The New Orleans and Carrollton Rail Road Co.,* 488.

## BANKRUPTCY.

1. The object of the act of Congress of the 19th August, 1841, establishing a uniform system of bankruptcy, was, while it released the debtor, to dis-tribute the proceeds of his property as equitably as possible among his cre-ditors, due regard being had to the nature of the different contracts and liens affecting it. *Fisher* v. *Vose,* 457.
2. Where a party to a suit pending before a State court, applies to be declared a bankrupt under the act of Congress of 19th August, 1841, the proceedings must be suspended, for a reasonable time, to enable him to file the decree, when the assignee must be made a party. As soon as the decree in bank-ruptcy is pronounced, the bankrupt, in relation to all actions for and against

him except such as the statute prescribes, is legally dead, and can only be represented by the assignee. *Ib.*

3. Where plaintiff, in an action commenced by attachment, has obtained a judgment before defendant's application to be declared a bankrupt under the act of Congress of 1841, he will be entitled to a preference on the property attached. *Aliter*, where defendant's application was made before judgment. In the last case, no privilege is acquired. *Ib.*

## BILLS OF EXCHANGE AND PROMISSORY NOTES.

I. *Accommodation Endorsers.*

II. *Transfer.*

III. *Presentment for Payment.*

IV. *Indulgence, or Release of a Party.*

V. *Protest for Non-Payment.*

VI. *Evidence in Action on.*

VII. *Payment.*

### I. *Accommodation Endorsers.*

1. An accommodation endorser, must be viewed in the light of a surety, and as such is entitled to discuss the property of his principal.

*Dwight* v. *Linton*, 57.

### II. *Transfer.*

2. The payee of a note made by the defendant, desiring to secure a debt due to plaintiffs, endorsed the note in blank, and deposited it in the hands of plaintiffs' attorney, to apply a portion of the proceeds, when due, to the payment of the debt; the balance to be accounted for to the endorser. Defendant was notified of the transfer to plaintiffs' attorney for the purposes mentioned, and promised to pay the note to the attorney. In an action against the maker: *Held*, that the endorsement and delivery of the note for the purposes stated, and the notice to defendant, operated a legal transfer of the portion intended to be paid to the plaintiffs; that defendant's promise established his consent to the division of the debt; that claims against the payee, subsequently acquired by defendant, can only be set off against the portion of the note not transferred for plaintiffs' benefit; and that the attorney became the agent of both the plaintiffs and payee, and was accountable to each for the portions respectively due to them. *Lambeth* v. *Kerr*, 144.

3. One who purchases a note, knowing that the payment will be contested, will hold it subject to any defence to which it would have been subject in the hands of the payee. *Bordelon* v. *Kilpatrick*, 159.

4. The transfer of a negotiable note, by endorsement, operates a transfer of any mortgage given to secure its payment. C. C. 2615.

*Auguste* v. *Renard*, 389.

### III. *Presentment for Payment.*

5. A note dated the 29th of August, payable at six months, will be due on the 3d of March following.  *Wood* v. *Mullen,* 395.

6. Proof of demand of payment, at the place at which the note is payable, on or after its maturity, is essential to a recovery in an action on the note  *Ib.*

### IV. *Indulgence, or Release of a Party.*

7. Discharging, or giving time to any of the parties to a note or bill, is a discharge of every other party who, upon paying it, would be entitled to sue the party to whom such discharge or indulgence has been granted.

*Calliham* v. *Tenner,* 299.

8. The holder of a protested note, having presented it for payment to the administrator of the succession of the payee and first endorser, it was allowed by the latter, and placed on the tableau of distribution filed by him.  Subsequently to the homologation of the tableau, the holder obtained a judgment, by confession, against the second endorser, and, in consideration of a higher rate of interest, granted him time, at the expiration of which the latter paid the amount due on the note.  In an action by the second endorser against the administrator of the first, to recover the amount thus paid : *Held,* that the first endorser, who would have been entitled, on payment of the note to the holder, to require its delivery, that he might exercise his rights against the maker, was discharged by the indulgence ; and *that the insolvency of the maker, at the time of the indulgence, cannot affect the question of his discharge.  Ib.*

### V. *Protest for Non-Payment.*

9. Notice of protest must be directed to the post office  nearest the residence of the person to whom it is sent.   Even where a party has been in the habit of receiving his letters at different offices, and is proved  to have had a box in the most distant of the two, notice of protest directed to the latter will be bad.  *Mechanics and Traders Bank of New Orleans* v. *Compton,* 4.  *Nicholson* v. *Marders,* 242.

10. The act of thirteenth of March, 1827, relative to the protest and notices to drawers and  endorsers of bills and notes, does not change the general commercial law, as to the diligence to be used in serving notices of protest ; it merely provides a new mode of proof of such diligence, by authorizing the notary, or other officer, to state in his protest the manner in which the demand was made of the drawer, acceptor, or person by whom such order or bill was drawn or given, and, in a certificate subjoined thereto, the manner in which the notices were served or forwarded, and by making a certified copy of such protest and certificate evidence of all the matters therein stated.  The provisions of this act being in derogation of the general commercial law, the mode of proof which it authorizes will be received as sufficient evidence of notice, only where the formalities it prescribes have been strictly complied with.  *Duncan* v. *Sparrow,* 164.

11. Where the party to whom notice is to be given, does not reside in the town

where the protest was made, the second section of the act of 1827, requires, *first*, that the notice be put into the post office nearest to the place where the protest was made, and *secondly*, that it be addressed to the party to be notified, at his domicil or usual place of residence; and the omission of either will be fatal. *Ib.*

12. A notice of protest addressed to a party, at the post office from which he receives his letters and the one nearest to his residence, or addressed to him, without indicating any particular place, and deposited in such post-office, will not be a sufficient compliance with section two of the act of 1827. The notice must, in addition, be addressed to him at his domicil or usual place of residence. *Ib.*

13. Notice of protest to an endorser, put into the post office at the place where the note was payable and at which he was in the habit of receiving his letters, addressed to him there, is insufficient by the law of Mississippi. Otherwise, in this State, since the act of thirteenth of March, 1827.

*Ib. Application for Re-hearing*, 167.

14. Proof that notice of protest was deposited in the post office at seven o'clock, A. M. the day after the protest, shows due diligence; and it will be presumed, in the absence of evidence to the contrary, that the notice was in time to go by the mail of that day. *Commercial Bank of Natchez* v. *King*, 243.

15. The certificate of a notary that " he left the notice of protest at the domicil of the endorser," is sufficient. It is not necessary that it should show whether he delivered the notice to one in the house, or simply left it there, as a notice either way is good. *Manadue* v. *Kitchen*, 261.

16. Notice to one who resides in a place where the protest was made, must be served personally, or by leaving it at his residence or place of business. *Ib.*

17. Where a party resides at two places, alternately, being generally at one during one portion of the year, and at the other during the rest, but goes frequently from one to the other, notice of protest, directed to either, will be sufficient.

*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

## VI. *Evidence in Action on.*

18. Art. 2256 of the Civil Code, which provides that parol evidence shall not be received against or beyond what is contained in written acts, is inapplicable to a case where the defendant offers witnesses to prove that the endorsement of a note was merely as security, and that it was to be paid out of collections to be made by him from claims due to the drawer. The evidence neither explains, nor contradicts the written instrument, but goes to establish a collateral fact or agreement in relation to it.

*Dwight* v. *Linton*, 57.

19. In an action in this State against the endorser of a note, dated at a place in this State in the parish in which the endorser resides, payable in another State, the presumption will be, until the contrary is shown, that the note was endorsed at the place of its execution; and the obligation will be governed by the *lex loci contractus*.

*Duncan* v. *Sparrow—Application for Re-hearing*, 167.

20. Where it clearly appears that defendant intended to authorize a third person to endorse certain notes in his name, he will be bound by such endorsement, though the letter of attorney were received by his agent after the endorsement. The authority, subsequently received, would amount, at least, to a ratification of the act of the agent.

*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

21. The holders of notes given for the price of a tract of land, though not identified with the sale by the *paraph* of a notary, will be entitled to a privilege on the thing sold. The *paraph* of the notary is not the only means by which the notes may be identified. Their identity may be proved by his oath. *Succession of Johnson*, 216.

22. A credit which appears to have been endorsed on a note while in the possession of the payees, will be binding on them, unless they show it to have been made through error. *Norcross* v. *Theurer*, 375.

See 6. 10. 14. *supra.*

### VII. *Payment.*

23. The holder of an accepted draft for a sum payable in the notes of a particular Bank, protested at maturity, will be entitled to recover the value of the notes at the date of the protest. A subsequent tender of the amount in the notes of the Bank, they having depreciated in the mean time, will not entitle the defendant to settle the debt at the value of the notes at the date of the tender. *Meeks* v. *Davis*, 326.

24. A note, though made payable in dimes, may be discharged by a payment in any other legal coin of the United States.

*Commissioners of the Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

### CITATION.

1. It is not necessary that a citation should contain the name of the judge of the court from which it is issued. Art. 179 of the Code of Practice enumerates all the requisites of a citation. *Hemken* v. *Farmer*, 155.

2. The formalities prescribed by art. 254 of the Code of Practice, which requires where the defendant has no known place of residence, or conceals his person, or is absent, or resides out of the State, that the sheriff shall serve the citation by affixing a copy thereof to the door of the parish church of the place, or to that of the room where the court in which the suit is pending is held, stand in the place of citation, and form the basis on which all subsequent proceedings must rest, and their omission will be fatal. Service of citation on the defendant, is the first step to be taken.

*Putnam* v. *Grand Gulf Rail Road and Banking Co.*, 232.

See APPEAL, VII.

### CLERK OF COURT.

It is not enough that a clerk certify the result of the action of a court; he

must make copies of what appears on the records, of which he is the keeper. *Succession of Bowles*, 33.

See EVIDENCE, 8.

## CODES, ARTICLES OF, CITED, EXPOUNDED, &c.

I. *Civil Code of* 1808.
II. *Civil Code.*
III. *Code of Practice.*

### I. *Code of* 1808.

Book III, Tit. II, art. 48.    Donations, *inter vivos* of moveables or slaves. *Harlin* v. *Léglise*, 194.

———————, arts. 210. 220.    Donations by marriage contract, to husband or wife. *Ib.*

————, Tit. III, arts. 56 to 64.    Interpretation of agreements. *Wells* v. *Compton*, 171.

————, Tit. V, art. 15.    Donations *propter nuptias*. *Harlin* v. *Léglise*, 194.

————, Tit. XXI, art. 6.    Exemption from seizure of undivided share of heir in a succession. *Noble* v. *Nettles*, 152.

### II. *Civil Code.*

48. Domicil of minor, where. *Calliham* v. *Tanner*, 299.

128. Powers of married woman, when a public merchant. *Thorne* v. *Egan*, 329.

185. Emancipation of slaves. *Nolé* v. *De St. Romes*, 484.

219. Rights of children legitimated by marriage. *Liautaud* v. *Baptiste*, 441.

224, 257. Rights of natural children. *Ib.*

281, 282, 283. Minors—legal tutor when and how appointed. *Tutorship of Mossy*, 390.

288. Minors—dative tutor when appointed. *Ib.*

289. ——————— appointment and confirmation of tutors, by who made. *Succession of Winn*, 303.

290, 292. Minors—duty of relations as to appointment of tutor. *Ib.*

334, 335, 336. Minors—alienation or mortgage of immoveables and slaves of. *Short* v. *Piety*, 262.

342. Minors—commissions of tutor. *Succession of Frantum*, 283.

343. ——————— expenses for support and education of. *Ib.*

346. ——————— acceptance of inheritance by. *Porter* v. *Muggah*, 29.

420. Corporations, political, defined. *McGuire* v. *Bry*, 196.

423. ———————, actions by or against. *Ib.*

429, 430. Corporations, officers and agents of. *Ib.*

542. Rights of usufructuary. *Thorne* v. *Egan*, 329.

829, 830, 831, 835. Fixing limits between adjacent proprietors. *Wells* v. *Compton*, 171.

895. Successions—representation only exists as to persons deceased. *Succession of Ludewig*, 92.

913. Rights of natural children against their father. *Liautaud* v. *Baptiste*, 441.

948. ——————————— legitimated by marriage. *Ib.*

998. Acceptance of inheritance by persons incapable of contracting. *Porter* v. *Muggah*, 29.

1006. Acceptance of inheritance, effect of, when simple. *Ib.*

1105. Actions against vacant successions, or those the heirs of which are absent and not represented. *Succession of Ludewig*, 92.

1128. Successions—partition of property held by deceased in community or partnership. *Short* v. *Piety*, 262.

1131, 1132. Successions—right of survivor in a commercial partnership to require stock to be disposed of for common profit in ordinary course of trade. *Mathison* v. *Field*, 44.

1137. Successions—division of property after dissolution by death. *Ib.*

1215. Right of parties holding property together to demand a division. *Ib.*

1261. Successions—judicial partition, when to be made by sale. *Kohn* v. *Marsh*, 48.

1265. ——————————— right of heirs to purchase to amount of their portions, at sale of. *Ib. Succession of Carraby*, 349.

1272. Successions—judicial partition—settlement of accounts of heirs by notary. *Kohn* v. *Marsh*, 48.

1278. ——————————— active mass how composed. *Ib.*

1453. Donations—property how disposed of or acquired by gratuitous title. *Brittain* v. *Richardson*, 78.

1455. ———— *mortis causa*, defined. *Ib.*

1507. ———— substitutions and *fidei commissa* prohibited. *Liautaud* v. *Baptiste*, 441.

1523, 1525. Donations *inter vivos*, how executed. *Brittain* v. *Richardson*, 78.

1556. ————*inter vivos*, revocation of, by subsequent birth or legitimation of child. *Liautaud* v. *Baptiste*, 441.

1563. ———— *mortis causa*, how made. *Brittain* v. *Richardson*, 78.

1660. Successions—who to be notified to attend at taking of inventory of. *Succession of Bowles*, 35.

1661, 1662. Successions—sale of property to pay debts and legacies. *Ib.*

1664. Successions—heirs may take seizin of, from testamentary executor when. *Succession of Carraby*, 349.

1682. Donations—order for execution of testament. *Succession of Bowles*, 33.

1684, 1686. Donations—revocation of testament. *Ib.* 31.

1779. Obligations—incapacity of married woman to contract, how removed. *Thorne* v. *Egan*, 329.

1841. ———— fraud in, how defined. *Gros* v. *Bienvenu*, 396.

1905. ———— putting debtor in default. *Meeks* v. *Davis*, 326.

1906, 1907. Obligations—putting debtor in default. *Hodge* v. *Moore*, 400.

1940 to 1957. ———— how interpreted. *Wells* v. *Compton*, 171.

1980. Insolvency, how defined and established. *Campbell* v. *His Creditors*, 106. *Rasch* v. *His Creditors*, 407.

2075. Obligations joint, defined. *Thompson* v. *Chrétien*, 26.

2080, 2081, 2082. Obligations joint—action on. *Ib.* *Estill* v. *Holmes*, 140.

2107. Obligations divisible, how executed. *Cantrelle* v. *Le Goaster*, 432.

2126. ———— how extinguished. *Calliham* v. *Tanner*, 299.

2149. Payment—creditor cannot be compelled to receive in part. *Cantrelle* v. *Le Goaster*, 432.

2156. ———— conventional subrogation. *King* v. *Dwight*, 2.

2160. ———— imputation of. *Shaw* v. *Oakey*, 361.

2190. Novation—indication by creditor of person to receive. *State* v. *New Orleans and Carrollton Rail Road Co.*, 418.

2203, 2204, 2205. Compensation. *Lambeth* v. *Kerr*, 144. *Commissioners of Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

2214. Confusion. *Commissioners of Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

2246. Writings by a creditor on titles or receipts, though not signed or dated, when evidence. *Norcross* v. *Theurer*, 375.

2256. Inadmissibility of parol evidence against or beyond written instruments. *Dwight* v. *Linton*, 57. *Liautaud* v. *Baptiste*, 441.

2265. *Res judicata.* *Towles* v. *Conrad*, 69. *Wells* v. *Compton*, 171.

2329, 2330, 2344. Husband and wife—dowry, rights of husband as to. *Thorne* v. *Egan*, 329.

2367. Husband and wife—mortgage of wife for reimbursement of paraphernal property. *Stafford* v. *Dunwoodie*, 276.

2373. ————————, action by wife against heirs of husband for community property fraudulently alienated. *Smallwood* v. *Pratt*, 132.

2379. ————————, right of wife and her heirs to exonerate themselves from debts contracted during marriage by renouncing community. *Thorne* v. *Egan*, 329.

2399. ————————, right of wife to separation of property. *Ib.*

2433. Sale, by weight, tale or measure, when perfect. *Cook* v. *West*, 331.

2463, 2464. Sale—vendor not obliged to deliver thing sold, when. *Ib.*

2481. Sale—where purchasers aware, at time of sale, of danger of eviction. *Estill* v. *Holmes*, 134.

2497. ———— apparent defects, not redhibitory vices. *Hivert* v. *Lacaze*, 357.

2505. ———— of slave, redhibition for vices of character. *Gros* v. *Bienvenu*, 396.

2523. ———— responsibility of vendor, who is aware of vices of thing sold and fails to declare them. *Hivert* v. *Lacaze*, 357.

2526. ———— renunciation of warranty, not obligatory when. *Galpin* v. *Jessup*, 90.

2535. ———— purchaser may suspend payment on account of eviction or danger of it, when. *Hodge* v. *Moore*, 400.

2588. ———— of immoveables, or slaves—price and possession may be retained until execution of written act. *Hivert* v. *Lacaze*, 357.

2589. ———— *à la folle enchère.* *Hodge* v. *Moore*, 400.

2603. Successions, right of heirs to purchase to amount of their portions at sale of. *Kohn* v. *Marsh*, 48.

2612, 2613, 2614. Transfer of debts and incorporeal rights. *Cantrelle* v. *Le Goaster*, 432.

2615. Sale or transfer of a debt includes what. *Auguste* v. *Renard*, 389. *Cantrelle* v. *Le Goaster*, 432.

2616 to 2624. Transfer of debts and incorporeal rights. *Cantrelle* v. *Le Goaster*, 432.

2662, 2664, 2665. Obligations of lessor. *Perrett* v. *Dupré*, 52.

2796. Partnership, commercial, defined. *Succession of Hamblin*, 130.

2851, 2852. Partnership, dissolution of by death. *Matheson* v. *Field*, 44.

2895. Loan on interest. *Lambeth* v. *Burney*, 251.

3008. Suretyship—will not be presumed. *Hazard* v. *Lambeth*, 378.

3011. Surety, debtor required to furnish, must offer one possessed of what qualifications. *Wallace* v. *Glover*, 411.

3019. ———— obligations of. *Smith* v. *Scott*, 258.

3014. ———— creditor when bound to discuss property of principal debtor. *Dwight* v. *Linton*, 57.

3018, 3019. Liability of joint sureties—application for decision of action. *McGuire* v. *Bry*, 196.

3032. Surety, prolongation of term to principal debtor, without consent of. *Calliham* v. *Tanner*, 299.

3033. ———— one required to furnish, must offer person possessed of what qualifications. *Wallace* v. *Glover*, 411.

3051. Respite, defined. *Rasch* v. *His Creditors*, 407.

3149 to 3152. Privilege—general provisions in regard to. *Campbell* v. *His Creditors*, 106.

3153. Privilege—defined. *Hollander* v *Nicholas*, 7.

3182. ———— of wife on moveables of husband. *Stafford* v. *Dunwoodie*, 276.

3184. ———— on particular moveables—salaries of overseers. *Ib. Succsion of Johnson*, 216.

3238, 3241. Privilege of vendor on immoveables or slaves, how preserved. *Blackstone* v. *His Creditors*, 219.

3251, 3252. Mortgage accessory to and extinguished with principal obligation. *Auguste* v. *Renard*, 389.

3276. Mortgage conventional, future property not subject of. *State* v. *Mexican Gulf Railway Co.*, 513.

3328. Notary, duty of, on passing act of sale, mortgage or donation of immoveables or slaves, to obtain certificate relative to mortgages, or privileges existing on. *Hodge* v. *Moore*, 400.

3374. Mortgages, how extinguished. *Auguste* v. *Renard*, 389.

3464. Presumption as to extent of possession, where one has a title, and possession under it. *Comeau* v. *Melancon*, 73.

3499. Prescription of one year. *Harrod* v. *Woodruff*, 335.

3505. Prescription of five years—notes payable to order.   *Auguste* v. *Renard*, 389.

3507. ———————————————— action for rescission of contracts, partitions, &c.   *Tippett* v. *Jelt*, 313.

## III. *Code of Practice.*

15. Interest necessary to entitle one to sue.   *Succession of Ludewig*, 99.

140. Order for the production of books and papers in possession of a party. *Travis* v. *January*, 227.

162. Action, where to be instituted.   *Hollander* v. *Nicholas*, 7.

179. Citation, requisites of.   *Hemken* v. *Farmer*, 155.

185. Service of citation and petition.   *Lee* v. *Kenver*, 1.

206. Citation, want of, when fatal.   *Putnam* v. *Grand Gulf Rail Road and Banking Company*, 232.

254. Service of citation and attachment where defendant has no known residence, or conceals himself, or is absent, or resides out of the State. *Ib.*

256. Attachment, seizure of property under.   *Ib.*

259. ——————— right of garnishee to bond.   *Wallace* v. *Glover*, 411.

260. ——————— appointment of attorney to represent absent defendant. *Putnam* v. *Grand Gulf Rail Road and Banking Co.*, 232.

284. Provisional seizure, when allowed.   *Hollander* v. *Nicholas*, 7.

301. Right of creditor to enjoin sheriff from paying over proceeds of sale of debtor's property to plaintiff in execution, on allegation of defendant's insolvency.   *Campbell* v. *His Creditors*, 106.

332. Exception, dilatory, defined.   *Dwight* v. *Linton*. 57.

333. ——————— when to be pleaded.   *Ib.*

335. ——————— of *litispendencia*.   *Succession of Ludewig*, 92.

345. ——————— peremptory, founded on law, defined.   *Hivert* v. *Lacaze*, 357.

346. ————————————————————, when and how pleaded.   *Ib.*

348. Interrogatories to parties to the action.   *Commercial Bank of Natchez* v. *King*, 243.

374, 375. Demands in reconvention.   *Gove* v. *Kendig*, 387.

439. Commission to take testimony—term for returning.   *Follain* v. *Lefevre*, 13.

463. Fixing case for trial.   *Gerber* v. *Marzoni*, 370.   *Beaudouin* v. *Rochebrun*, 372.

473. Order for the production of books and papers in possession of a party. *Travis* v. *January*, 227.

476, 477. Trial—opening of case, and order of introduction of evidence. *Beauleiu* v. *Furst*, 345.

485. Trial—argument of case.   *Ib.*

558. New trials to be prayed for within what time.   *Hughes* v. *Lee*, 429.

559, 561. Trials—affidavit of party applying for.   *Gottheil* v. *Fisk*, 434.

566. Appeal from interlocutory judgments when allowed.   *Osborne* v. *Clayton*, 437.

567. Appeal—abandonment of right to, by voluntary execution of judgment. *Milliken* v. *Rowley*, 253.

571. —— by persons not parties. *Griffing* v. *Bowmar*, 113.

575. —— when to be suspensive. *Mathison* v. *Field*, 42.

576, 577. Appeal—amount of surety, when suspensive. *Ib.*

578. Appeal—amount of surety when devolutive. *Ib.* *Tipton* v. *Crow*, 13.

582. —— service of petition and citation of. *Lee* v. *Kemper*, 1.

583. —— appellee to be cited to answer when. *Grove* v. *Harvey*, 271.

593. —— delay after which none will lie. *Griffing* v. *Bowmar*, 113.

603. ——– statement of facts, when to be made by court. *Grand Gulf Rail Road and Banking Co.*, v. *Douglass*, 169.

647. *Fieri facias*—seizure of rights and credits. *Noble* v. *Nettles*, 152.

649. ————right of debtor to point out property, how lost. *Ib.*

652, 653. *Fieri facias*—remedy of debtor in case of over seizure. *Dabbs* v. *Hemken*, 123.

697. *Fieri facias*—act of sale under, to be recorded. *Lee* v. *Darramon*, 160.

698. ————————————, when recorded to make full proof of its contents. *Ib.*

700. *Fieri facias*—when to be returned. *State* v. *Judge of Probates of St. Tammany*, 355.

709. Hypothecary action by one having a previous mortgage against purchaser of property sold under a *fi. fa.* *Succession of Field*, 5. *Lee* v. *Darramon*, 160.

710. *Fieri facias*—when purchasers at sale under, may refuse to pay price where a general mortgage exists on the property. *Succession of Field*, 5.

713. ———— recourse of purchaser, evicted by holder of legal or judicial mortgage, or forced to pay off the mortgage. *Ib.*

717. ———— right of purchaser to require holder of legal or judicial mortgage to discuss the property of the debtor. *Ib.*

722. ———— privilege acquired by seizure under. *Campbell* v. *His Creditors*, 106. *Stafford* v. *Dunwoodie*, 276. *Blackstone His Creditors*, 219.

739. Executory process—arrest of sale under. *Beaulieu* v. *Furst*, 345.

746. 747. ———— when to be issued on judgments of another tribunal. *Miller* v. *Gaskins*, 94.

895. 902. Appeal, how far jurisdiction of Supreme Court confined to matters contested below—exceptions, &c., which may be pleaded for the first time on appeal. *Zollicoffer* v. *Briggs*, 236.

905. Supreme Court to pronounce judgment which should have been rendered below, when. *Succession of Carraby*, 349.

924. 925. Jurisdiction of Courts of Probates. *Succession of Ludewig*, 92. *Ib.* 99.

935. Opening and proof of will—who to be notified to attend. *Succession of Bowles*, 35.

944. Minor—tutor or curator, by who appointed. *Succession of Winn*, 303.

951. Minor, where mother contracts a second marriage, tutorship how conferred on her.  *Tutorship of Mossy*, 390.

952. ———— duty of judge where appointment of legal tutor claimed by ascending relation.  *Ib.*

954, 955. ———— appointment of legal tutor when conflicting claims between ascending and other relatives.  *Ib.*

983. Successions—jurisdiction of Courts of Probate as to claims for money against.  *Succession of Ludewig*, 92.

984. ———— claims for money against, to be presented to executor, administrator or curator, before suit.  *Ib.*  *Fisk* v. *Friend*, 264.

985, 986. ———————, further proceedings by creditor for recovery of.  *Succession of Ludewig*, 92.

989. ———— interest on claims against.  *Burney* v. *Brown*, 270.

996. ———— action against, when in possession of heirs.  *Porter* v. *Muggah*, 29.

1049. 1050. Appeal from Probate to Supreme Court—what amount will authorize.  *Succession of Field*, 5.

## COMPENSATION.

See PLEADING, V.

## CONFLICT OF LAWS.

See CONTRACTS, 8.

## CONFUSION.

To an action by the Commissioners, appointed under the act of 14th March, 1842, for the liquidation of a Bank, for the amount of a due bill, defendants pleaded in compensation a check in their favor, for an equal amount, drawn on the Bank by a depositor.  The check was presented for payment on the 10th of March.  A writ of sequestration had been issued against the Bank on the preceding day, but the judgment declaring the forfeiture of its charter was rendered on the 11th of the same month, and not signed until the 15th. *Held*, that the debts were extinguished by confusion on the 10th, when defendants, who were debtors for the amount of the due bill, became creditors for that of the check.

*Commissioners of the Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

## CONSTITUTION OF THE STATE, EXPOUNDED, &c.

Art. 4, sect. 6.  Style of Process.  *Scarborough* v. *Stevens*, 147.

## CONTINUANCE.

1. In an affidavit for a continuance, on the ground of the absence of a witness,

a statement " that the witness has left the city for a few days," is equivalent to an allegation that he is expected to return at the expiration of that period, and will be sufficient. *Harrison* v. *Waymouth*, 340.

2. Where, on an application for a continuance, defendant swears, that he expects to prove by a witness, who is absent, " that plaintiffs had caused great damage to him by their illegal conduct, that he is not indebted to them, and that he cannot safely go to trial without his testimony," the circumstance of his having other witnesses to the same facts, ought not to deprive him of the benefit of a continuance ; for the absent witness might have the means of speaking more positively than the others. *Ib.*

## CONTRACTS.

1. Where an undertaker has not complied with the terms of his contract for the erection of a house, but his employer receives and uses it, the latter will be bound to pay for the value of the work. *Clark* v. *Kemper*, 10.

2. In an action on a joint contract, all the obligors must be made defendants, though one of them may have performed his part, or may be domiciliated in a parish beyond the jurisdiction of the court, parties contracting joint obligations being considered to waive the personal privilege of being sued before the court having jurisdiction over the place of their domicil ; and the judgment must be against each defendant, separately, for his proportion.
*Thompson* v. *Chértien*, 26.

3. Courts of justice will not lend their aid to either party, to enforce a contract entered into for purposes reprobated by law. *Puckett* v. *Clarke*, 81. *Eastman* v. *Beiller*, 220.

4. Arts. 2080, 2082 of the Civil Code require that all the obligors in a joint contract shall be sued together, including those who may have performed their part, in order that the latter may recover back what they have paid, in case it should be determined they were not bound. The judgment for costs must be *in solido*, against those who have not performed their part.
*Drew* v. *Atchison*, 140.

5. In the interpretation of contracts, the intention of the parties is to be ascertained, and effect given to it, and to all the clauses of the contract. No construction is to be given which will render important expressions useless. The intention must be determined by the words of the contract, if possible ; but where the intention is doubtful, the interest of the parties, or other contracts, may be referred to. Where a clause is susceptible of two interpretations, it must be understood in that sense in which it will have some effect. So, the manner in which it has been executed, or acted under, by both parties, or by one with the express or implied assent of the other, also furnishes a rule of interpretation. Finally, in doubtful cases, the construction must be against the party who has contracted the obligation.
*Wells* v. *Compton*, 171.

6. Where the intention of the parties to a contract is doubtful, under art. 1951 of the Civil Code, the court will inquire into the whole conduct of the parties in relation thereto. *Ib.*

7. In all actions of rescission, the party seeking relief must have offered to restore his adversary to the situation he was in before the contract.

*Tippett* v. *Jett*, 313.

8. Where a person in New Orleans orders, by letter, goods to be shipped to him from New York, offering to pay for them at a certain period after shipment, the contract will be governed by the laws of the latter place, where the final assent necessary to the completion of the contract was given, and the order received and executed. *Sh w* v. *Cakey*, 361.

9. The putting a debtor in default, is a condition precedent to the recovery of damages for the violation of a contract. The want of it need not be pleaded, but may be taken advantage of at any time. C. C. 1906.

*Hodge* v. *Moore*, 400.

10. A debt, as between the debtor and creditor, is indivisible, without the consent of both. A debtor cannot be compelled to pay his debt to a number of transferees, among whom it may please the creditor to divide it. C. C. 2107, 2149. The provisions of the twelfth chapter, of the seventh title, of the third book of the Civil Code, arts. 2612–2024, must be understood as applying only to entire debts, rights, or claims.

*Cantrelle* v. *Le Goaster*, 432.

11. A counter-letter, or something equivalent thereto, is the only proof admissible to establish simulation, not fraudulent, between the parties to a contract, or their representatives. Parol evidence is inadmissible.

*Liautaud* v. *Baptiste*, 441.

12. A legatee, representing an ancestor, and claiming under him, can have no other means of avoiding a contract than such as the ancestor possessed.

*Ib.*

## COSTS.

See CONTRACTS, 4.    MINOR, 14.    SUCCESSIONS, 21.

## COURTS.

I. *Supreme Court.*
II. *Courts of Probate.*
III. *District and Parish Courts.*

### I. *Supreme Court.*

See APPEAL.

### II. *Courts of Probate.*

1. Courts of Probate have exclusive jurisdiction of claims for money against successions administered by curators, executors, &c.; and all suits for money, pending before the ordinary tribunals, against one who dies leaving a vacant succession, must be transferred to the Court of Probates of the place where his succession is opened.    *Succession of Ludewig*, 92.

2. A Court of Probate is competent to determine a question of title where it arises collaterally, and its examination becomes necessary to enable it to arrive at a correct conclusion on matters within its jurisdiction. As where, in an action against a curator for the amount of certain notes executed by the deceased, title to the notes is set up by a third party. In such a case, the Court of Probates will decide who is the real creditor of the succession

*Succession of Goodrich*, 100.

3. In all cases concerning minors, the judge referred to is the judge of the parish within whose jurisdiction the minors reside, if residents of the State. Act 18 March, 1809, sec. 8. *Succession of Winn*, 303.

4. The appointment of a tutor or curator to a minor, belongs to the Probate Judge of the domicil or usual place of residence of the father or mother of such minor, if either be alive. C. P. 944. *Ib.*

See 8, *infra*. SUCCESSIONS 20.

### III. *District and Parish Courts.*

5. An overseer, though entitled to a privilege on the crop for the payment of his wages, cannot maintain an action against his employer in the parish in which the plantation is situated, where the domicil of the latter is in a different parish. The privilege granted by law to overseers is, like all others, an accessory to the principal obligation, and must follow it.

*Hollander* v. *Nicholas*, 7.

6. Art. 996 of the Code of Practice, which authorizes actions for debts due from a succession to be brought before the ordinary tribunals, where the heirs, though all or some of them be minors, are in possession of the estate, should, perhaps, be confined either to heirs absolute, or to beneficiary heirs in possession of a succession after it has been fully administered. But where a succession appears to have had but few debts, and to have been administered to a certain extent, and to have been in the possession of the widow and heirs of the deceased for several years, an action to recover a debt due by it, may be brought before the courts of ordinary jurisdiction.

*Porter* v. *Muggah*, 29.

7. The penalty imposed by the eighteenth section of the act of 7th June, 1806, on the owner or occupier of a plantation, for keeping slaves thereon, without a white or free colored person as manager or overseer, can only be recovered by civil action before an ordinary tribunal. The action must be brought before a Justice of the Peace, a Parish, or District Court, according to the number and amount of the fines claimed. *State* v. *Linton*, 55.

8. The first section of the act of 25th March, 1831, which provides that whenever the Parish Judge of any parish is disqualified by interest, or otherwise, to try any case in the Parish Court, that the District Court shall have jurisdiction thereof, and that the same shall be transferred by the Parish or Probate Court to the District Court, does not contemplate the transfer of all the mortuary proceedings and documents relative to any estate in which the Judge of Probates may be interested. The District Court may take cognizance of

INDEX.

the appointment of a curator, where the Probate Judge is interested ; but it is not necessary for this purpose, that the papers relative to the succession should be removed from their proper place of deposit.

*Ex parte Borden*, 399.

9. On a rule upon an attorney, under the third section of the act of 27th March, 1823, to show cause why an information should not be filed against him, it is the duty of the Judge by whom the rule was granted, to decide as to the sufficiency of the cause shown. The act does not require that the Attorney General should be notified of, or take any part in this preliminary proceeding. *State* v. *Judge of First District,* 416.

See APPEAL, 14. ATTACHMENT, 4. CONTRACTS, 2. SUCCESSIONS, 20.

## CURATOR.

See COURTS, 2. 8. SUCCESSIONS.

## DAMAGES.

See APPEAL, XI. CONTRACTS, 9. LEASE, 3.

## DEFAULT, JUDGMENT BY.

See APPEAL, 27. 28. 29.

## DISCUSSION.

See PLEADING, 9. SURETY, 3. 9.

## DIVISIBLE OBLIGATIONS.

See CONTRACTS, 10.

## DOMICIL.

1. Where a party has repeatedly and publicly declared himself to be a resident of a particular parish, he will not be allowed, though actually residing elsewhere, to gainsay his own declarations, which may have misled others.

*Commercial Bank of Natchez* v. *King*, 243.

2. Where a mother, who had been confirmed as the natural tutrix of her minor children, marries a second husband domiciliated in a different parish, without having convened a family meeting to determine whether she shall be continued as tutrix, both herself and the minors will acquire immediately, by the very fact of the marriage, a domicil in the parish of the second husband. C. C. 48. *Succession of Winn*, 303.

See COURTS, 5. PLEADING, 3. 5.

## DONATIONS.

I. *Donations Inter Vivos.*
II. *Donations Mortis Causa.*
III. *Donations generally.*

### I. *Donations Inter Vivos.*

1. All donations *inter vivos* must be passed before a notary and two witnesses.
*Brittain* v. *Richardson,* 78.

2. The right of children to attack donations *inter vivos* made by their parents which exceed the ,disposable portion, accrues only after the death of the latter; for they might survive all their forced heirs, in which event all donations would be valid and binding. *Succession of Ludewig,* 99.

3. Donations *propter nuptias* were not excepted from the provision of art. 48, tit. 2, book 3, of the Code of 1808, that " no donation *inter vivos* of moveable property or slaves, shall be valid for any other effects than those of which an estimate, signed by the donor or donee, or by those who accept for him, is annexed to the record of the donation." The omission of the estimate, in a donation of slaves, is not cured by the delivery of the slaves.
*Harlin* v. *Léglise.* 194.

4. Donations *propter nuptias* are not excepted from the general rules prescribed by the Code of 1808, in relation to other donations. *Ib.*

5. The rights acquired by children legitimated by the subsequent marriage of their parents, have no effect against gratuitous dispositions previously made by the latter. The legitimation has no retroactive effect. It operates only from the date of the marriage. C. C. 219, 948, 1556.
*Liautaud* v. *Baptiste,* 441.

### II. *Donations Mortis Causa.*

6. Posterior testaments, which do not expressly revoke prior ones, will annul such dispositions in them, as are incompatible with, contrary to, or entirely different from the provisions of the former. Thus, the appointment of one as sole executor, will annul any appointment of another executor made in a previous will. *Succession of Bowles,* 31.

7. The probate of a will is a judicial proceeding, and must be authenticated according to the act of Congress of 26th May, 1790. *Ib.* 33.

8. The certificate of the clerk of a court in another State, that the transcript " is a true copy from the original filed in my office, as proven in open court, at the October term, 1841, and ordered by the court to be recorded," is not such evidence of the testament having been duly proved, before a competent judge of the place where it was received, as will authorize its admission to probate and execution in this State. It does not show how the will was proved, nor what was the order of the court. Duly certified copies of the orders or decree in relation to the proof and recording of the will, should have accompanied the transcript of the latter. *Ib.*

548 INDEX.

9. An instrument, the real object of which was a disposition *mortis causa*, if executed without the formalities required by law to give it validity as such, can have no effect.  *Brittain* v. *Richardson*, 78.

## III. *Donations generally.*

10. Where donations *inter vivos* or *mortis causa*, are clothed with the formalities required by law to give them validity, the forced heirs alone can sue for their reduction, in case they exceed the disposable portion; but when void for the want of such formalities, the legitimate heirs or other representatives of the estate, as well as the forced heirs, may sue to annul them.

*Brittain* v. *Richardson*, 78.

11. The father of certain natural children, who had made a sale of all his property to a third person, by a subsequent marriage legitimated his children. After the death of the father, the property was sold to a fourth.  In an action by the children against the latter, to recover the property on the ground that the sales were simulated, plaintiffs alleged that it was agreed between the deceased and his vendee, that, notwithstanding the sale, the former should remain the owner of the property, which should be reconveyed to him when required, or to his children in case of his death, and that the sale was in the nature a *fidei commissum*, and, as such, prohibited by law. *Held*, that the interest of the plaintiffs, who were subsequently legitimated, not having existed at the date of the first sale, parol evidence was inadmissible to prove that it was a *fidei commissum*; that the object of the action is to enforce the *fidei commissum* complained of; and that plaintiffs cannot, under the pretext that it was a *fidei commissum*, be allowed to establish the simulation of the sale, and thereby give effect to the very agreement prohibited by law.  *Liautaud* v. *Baptiste*, 441.

12. The object of the law-maker being to prevent those whom it disables from receiving donations, from secretly enjoying them, all *fidei commissa*, even those in favor of persons capable of receiving, are prohibited.  C. C. 1507.

*Ib.*

## DOTAL PROPERTY.

See Husband and Wife.

## EMANCIPATION OF SLAVES.

Where a slave ordered to be emancipated by will, sues to establish her right to freedom, she must allege and prove that she is thirty years of age, or a native of the State, and that she has behaved well during the four preceding years.  Act 9 March, 1807.  C. C. art. 185.  The act of 31st January, 1827, effected no other change in the law than to authorize, under certain circumstances, emancipation before the thirtieth year.

*Nolé* v. *De St. Romes*, 484.

## ERROR.

See Appeal, 14. 24.  Evidence, 11.

## EVIDENCE.

I. *When to be Introduced.*

II. *Matters Judicially Noticed.*

III. *Interest of Witness.*

IV. *Examination of Witnesses, and Reduction of Testimony to Writing.*

V. *Commission to take Testimony.*

VI. *Judicial Records and Proceedings, and Copies thereof.*

VII. *Non-Judicial Records and other Public Instruments, and Copies thereof.*

VIII. *Private Writings.*

IX. *Admissibility of Parol Evidence under arts.* 2256 *and* 2895 *of the Civil Code.*

X. *Secondary Evidence.*

XI. *Irrelevant Evidence.*

XII. *Onus Probandi.*

XIII. *Presumption.*

XIV. *Evidence of Particular Persons.*
1. *Parties.*
2. *Attorneys at Law.*
3. *Agents.*

XV. *Evidence in Particular Actions.*
1. *On Bills of Exchange and Promissory Notes.*
2. *For Malicious Prosecution.*
3. *For Partition.*
4. *In Petitory Actions.*
5. *In Actions of Rescission.*
6. *In Proceedings by Attachment.*
2. *In Suits for Freedom.*

## I. *When to be Introduced.*

1. Parties are always allowed to exercise their own judgment, as to the order of introducing their proofs.  *Lynch* v. *Benton*, 106.

2. An amended petition propounding interrogatories to a party to the action, offered after the trial has commenced, will be too late.
*Dabbs* v. *Hemken*, 123.

3. A case will not be remanded, after appeal, on an affidavit of newly discovered evidence. The court cannot notice any thing which may have occurred subsequent to the date of the judgment appealed from.
*Succession of Hamblin*, 130.

4. On a rule against one who had been appointed, by consent of parties, to receive and sue for all debts due to the partnership of which plaintiff and de-

fendant were members, to show cause why he should not pay the amount so received by him into court, he may introduce evidence to show that he had paid debts due by the partnership, without first showing any authority to do so from the parties, or from either of them. A party cannot be controlled as to the order of introducing the testimony in support of his case. The authority to pay might be afterwards proved. *Kellar* v. *Williams*, 327.

## II. *Matters Judicially Noticed.*

5. No evidence will be required of the official capacity of functionaries commissioned by the State. *Follain* v. *Lefevre*, 13.

## III. *Interest of Witness.*

6. It is no objection to a witness that he is interested in a case, when offered to testify against his interest. *Travis* v. *January*, 227.

7. One who had signed a sequestration bond as surety for plaintiffs, but had been released before the trial, another surety having been substituted, is a competent witness for the plaintiffs. *Comstock* v. *Paie*, 440.

## IV. *Examination of Witnesses, and Reduction of Testimony to Writing.*

8. Evidence, when required to be reduced to writing, must be taken down by the clerk, and should, in all cases, be read to the witness before he leaves the stand. The judge has no right, under any circumstances, to add to, or take from it, without recalling the witness. *Jonau* v. *Ferrand*, 364.

9. A broker, examined as a witness to prove the market value of certain stocks, will not be compelled to disclose the names of persons to whom he has sold shares of the same stock, where there is no intimation of any intention to examine such purchasers for the purpose of contradicting him, their names being, under such circumstances, immaterial. *Ib.*

## V. *Commission to take Testimony.*

10. Art. 439 of the Code of Practice, making it the duty of the court which grants a commission to take testimony, to fix a day for its return, was intended to obviate any dispute as to the sufficiency of the time allowed for its execution, when the case should be called for trial before its return. But the neglect of the court to fix a return day, will not render the commission null. *Follain* v. *Lefevre*, 13.

11. A commission to take testimony, directed to "any one of the associate judges of the City Court of New Orleans," appeared from the record to have been executed by one *N.* Jackson. There being no associate judge of that name, on an objection to its admission, and allegation by the party that it was a clerical error for *O. P.* Jackson, an actual judge of that court : *Held*, that the record not having been corrected by *certiorari*, the error is fatal. *Ib.*

12. Where a commission to take testimony has been duly executed, and returned into court, either party may use the evidence taken under it; and this right is not waived, by omitting to cross-examine the witnesses.

*Dwight* v. *Linton*, 57.

13. Where the certificate of the magistrate, to whom a commission was addressed, attests that the witness appeared and answered the interrogatories, and signed his name thereto "after having been examined upon the Holy Evangelist of Almighty God," it will be sufficient. The language of such a certificate is immaterial, provided it appear clearly that the requisites of the law have been complied with. *Follet* v. *Jones*, 274.

14. The object of the 7th sect. of the act of 25th March, 1828, which requires that interrogatories to be propounded to witnesses examined under commission, shall be served on the opposite party or his counsel, three days previous to being forwarded, is to afford the latter sufficient time to examine them, and prepare his objections or cross-interrogatories; and where such interrogatories have been handed to a party, with a request that he will accept service thereof and return them the next day, and he acknowledges service, and returns them accordingly, with his cross-interrogatories, he will be considered as having waived any further delay. *Ib.*

15. As a general rule, the deposition of a witness cannot be read, if his personal attendance can be procured. *Hawkins* v. *Brown*, 310.

16. The deposition of a witness, to whom cross-interrogatories were propounded by the opposite party, having been taken *de bene esse*, and returned into court, the latter objected to its admissibility, on the ground that the witness, who was within the jurisdiction of the court, should have been produced in person. *Held*, that the depositions were inadmissible; and that it could not be inferred from the fact that no objection was made to the depositions previous to the trial, that the opposite party intended to dispense with the personal attendance of the witness. *Ib.*

VI. *Judicial Records and Proceedings, and Copies thereof.*

17. The probate of a will is a judicial proceeding, and must be authenticated according to the act of Congress of 26th May, 1790.

*Succession of Bowles*, 33.

18. The certificate of the clerk of a court in another State, that the transcript " is a true copy from the original filed in my office, as proven in open court, at the October term, 1841, and ordered by the court to be recorded," is not such evidence of the testament having been duly proved, before a competent judge of the place where it was received, as will authorize its admission to probate and execution in this State. It does not show how the will was proved, nor what was the order of the court. Duly certified copies of the orders or decree in relation to the proof and recording of the will, should have accompanied the transcript of the latter. *Ib.*

19. It is not enough that a clerk certify the result of the action of a court; he must make copies of what appears on the records, of which he is the keeper. *Ib.*

20. An instrument, signed by a parish judge alone, purporting to be the *procés-verbal* of the sale of real estate belonging to a succession, which recites that the sale was made in pursuance of a decree of the Court of Probates in which the succession was opened, and of the advice of a family meeting, is insufficient to establish the existence of the decree.

*Beard* v. *Morancy*, 119.

21. Letters of executorship, under the hand and seal of the Judge of the Court of Probates, are conclusive evidence of the facts they purport to establish; nor can the jurisdiction of the judge be inquired into collaterally.

*Succession of Hamblin*, 130.

22. Where the meaning of an instrument is uncertain, the record of another suit, by a different plaintiff, but to which the defendant was a party, will be admissible in evidence to show, by the acts and declarations of the latter, what his understanding of the instrument was. The present plaintiffs, not having been parties to the suit, cannot avail themselves of the statements in the pleadings as judicial admissions, absolutely conclusive of the rights of the defendant. They must be considered simply as other declarations.

*Wells* v. *Compton*, 171.

23. Surveyors' plats, made under the order of court, in a suit to which defendant, against whom they are offered, was a party, though the plaintiff was not, are admissible in evidence as circumstances, so far as they show acts of the defendant. *Ib.*

24. The statements of witnesses taken down in a suit, by a different plaintiff, but to which the defendant was a party, cannot, as a general rule, be received in evidence against the latter. *Aliter*, where the testimony of a witness so taken down is offered to discredit the evidence subsequently given by him; or where the declarations of a deceased surveyor are offered to explain his operations. *Ib.*

25. The record of another suit, when offered to support a plea of *res judicata*, is admissible to show what the parties claimed, and what was decided in such suit. So the record of another suit, to which the plaintiffs were parties, though joined with others and in a different capacity, is admissible against them, when offered by the defendants, who were plaintiffs in that case; the latter are entitled to the full benefit of any decision made on the rights of the parties, and to show that the plaintiffs have compromised any of their rights by that suit. *Ib.*

VII. *Non-Judicial Records and other Public Instruments, and Copies thereof.*

26. The Registers of the Land Offices of the United States, may, like all other keepers of public records, give copies or extracts from any books or documents in their custody, and such copies, when duly certified, are admissible in evidence; but they cannot attest or certify the contents of such books or documents in any other manner. *Judice* v. *Chrétien*, 15.

27. The provisions of arts. 697 and 698 of the Code of Practice, requiring the sheriff to cause the act of sale executed by him for property sold under a

*fi. fa.*, to be recorded in the office of the clerk of the court from which the writ was issued, were designed to give to the sheriff's deed the authenticity of a notarial act, and to authorize its introduction in evidence without further proof of its execution. They do not repeal, nor in any way modify the act of the 24th March, 1810, which declares, sect. 7, that no notarial act concerning immoveable property shall have effect against third persons, until recorded in the office of the parish judge of the parish in which it is situated ; nor that of 26th March, 1813, providing, sect. 1, that sales of land or slaves, under execution, shall, except between the parties, be void, unless so recorded. *Lee* v. *Darramon*, 160.

28. The act of the thirteenth of March, 1827, relative to the protest and notices to drawers and endorsers of bills and notes, does not change the general commercial law, as to the diligence to be used in serving notices of protest ; it merely provides a new mode of proof of such diligence, by authorizing the notary or other officer to state in his protest, the manner in which the demand was made of the drawer, acceptor, or person by whom such order or bill was drawn or given, and, in a certificate subjoined thereto, the manner in which the notices were served or forwarded, and by making a certified copy of such protest and certificate evidence of all the matters therein stated. The provisions of this act being in derogation of the general commercial law, the mode of proof which it authorizes will be received as sufficient evidence of notice, only where the formalities it prescribes have been strictly complied with. *Duncan* v. *Sparrow*, 164.

29. Parish Surveyors are regularly appointed officers known to the law, and when dead, their declarations, taken in other suits, may be used, when necessary, as evidence to explain their acts. So plats made by a Parish Surveyor under orders of court, in a suit to which defendant was a party, are admissible, after the decease of the former, to prove the declarations of the defendant made at the time of the survey. *Wells* v. *Compton*, 171.

30. The official acts and certificates of Parish Surveyors are entitled to full faith and credit, in all of the courts of this State. *Ib.*

31. The *procés-verbal* of a survey made by a Parish Surveyor, is legal evidence of the acts which it recites, as that notice was given, that the parties attended, &c. *Ib.*

32. A power of attorney admitted to record in another State, is not " a record or judicial proceeding of any court," within the meaning of the act of Congress of twenty-sixth May, 1790. A copy of such an instrument, must be certified in the manner required by the act of twenty-seventh of March, 1804. *Reynolds* v. *Rowley*, 201.

33. In controversies between the original grantee of a tract of land, or those claiming directly under him, and one in whose favor, as assignee, the title has been confirmed by the Commissioners of the United States, the certificate in favor of the latter, and the facts recited in it, will not be evidence, but the confirmation will enure to the benefit of the party having the inchoate title. Otherwise, as to third persons showing no title. The Commissioners appointed to decide upon land titles emanating from the former sove-

reigns of Louisiana, being authorized, by different acts of Congress, to confirm inchoate titles existing at the time of the change of government, in favor of certain grantees, or *their legal representatives*, had authority, *incidentally*, to decide whether one who claimed, not as the original grantee, was entitled to a confirmation ; and such confirmation, in favor of an assignee, has been uniformly regarded as entitling the latter to a patent. It is evidence against the government, and though not binding on the original grantee, or those claiming under him, is *prima facie* evidence against the rest of the world. *Thomas* v. *Turnley*, 206.

34. A document, certified by the Secretary of State of another State, under his hand and the great seal of the State, to be a correct copy of an act of the legislature, on file in his office as having been approved on a particular day, is sufficiently attested.

*Commercial Bank of Vicksburg* v. *King*, 243.

35. A receipt of the Receiver of Public Moneys, for the price of government lands, is sufficient evidence of title from the United States to form the basis of a petitory action—not that it is of equal dignity with a patent, but evidence of an equitable title on which the owner may recover.

*Lott* v. *Prudhomme*, 293.

36. The certificate of a notary, that no note signed or endorsed by a particular person, was protested by him within a certain period, is inadmissible. A notary can only certify copies of proceedings in his office ; any other fact, within his knowledge, must be disclosed under oath.

*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

37. Under the act of Congress of 26th May, 1790, an act of the legislature of another State can only be authenticated by affixing the seal of the State thereto. *Union Bank of Maryland* v. *Freeman*, 48.

38. A copy of an act of the legislature of another State, certified to have been made " from *Liber*, I. G., one of the law records of the State, belonging to the office of the Court of Appeals," is inadmissible. A copy from the original deposited among the archives of the State, would be better evidence.

*Ib.*

## VIII. *Private Writings.*

39. Proof of the signatures of the grantor, and of that of one of the subscribing witnesses residing in another State, is sufficient evidence of the execution of a deed *sous seign privé*. *Thomas* v. *Turnley*, 206.

## IX. *Admissibility of Parol Evidence under arts.* 2256 *and* 2895 *of the Civil Code.*

40. Art. 2256 of the Civil Code, which provides, that parol evidence shall not be received against or beyond what is contained in written acts, is inapplicable to a case where the defendant offers witnesses to prove that the endorsement of a note was merely as security, and that it was to be paid out of collections to be made by him from claims due to the drawer. The

evidence neither explains, nor contradicts the written instrument, but goes to establish a collateral fact or agreement in relation to it.

*Dwight* v. *I inton*, 57.

41. Parol evidence is admissible to show that the vendor made known, at the time of the sale, the defects of the thing sold. *Hawkins* v. *Brown*, 310.

42. Parol evidence is admissible to prove an agreement to sell a vessel, anterior to the date of the written act of sale. *Bell* v. *Firemen's Insurance Company of New Orleans*, 423. *Bell* v. *Western Marine and Fire Insurance Co.*, 428.

43. A claim for conventional interest must be established by written proof. C. C. 2895. *La,,beth* v. *Burney*, 251.

## X. *Secondary Evidence.*

44. Plaintiff offered in evidence copies of deeds taken from the records of the office of the Parish Judge, on making oath that he had inquired in vain, from all persons who were likely to have any knowledge of the matter, for the originals, which he believed had been lost or destroyed. It was shown that the deeds were more than thirty years old ; that the Record of Conveyances had been regularly kept ; that it was formerly the practice to give back the originals after they were recorded ; and that the Parish Judge and subscribing witnesses were dead. Other circumstances tended to show that the deeds were genuine. *Held*, that the copies were properly admitted.
*Thomas* v. *Turnley*, 206.

## XI. *Irrelevant Evidence.*

45. The admission of irrelevant testimony is no ground for remanding a case for a new trial, where its exclusion would not probably vary the result.
*Ferguson* v. *Whipple*, 344.

46. Instead of striking out any portion of the pleadings, a more regular course is to permit the parties to go to trial, and to reject, on the objection of the opposite party, any evidence offered to sustain such portion.
*Jonau* v. *Ferrand*, 364.

## XII. *Onus Probandi.*

47. Where a sheriff has received a tax roll and undertaken its collection, he must show that he has used due diligence. He cannot throw upon the State, the burden of proving that he actually received the amount.
*Scarborough* v. *Stevens*, 147.

48. A party, who seeks to render another liable for the debt of a third person, must prove such liability beyond all doubt, or he cannot recover. C. C. 3008. *Hazard* v. *Lambeth*, 378.

## XIII. *Presumption.*

49. In an action, in this State, against the endorser of a note dated at a place in this State in the parish in which the endorser resides, payable in another

State, the presumption will be, until the contrary is shown, that the note was endorsed at the place of its execution ; and the obligation will be governed by the *lex loci contractus.*

*Duncan* v. *Sparrow—Application for Re-hearing,* 167.

50. The acknowledgment and payment by tutors, curators, and executors, of debts due from the estates administered by them, are *prima facie* evidence of their correctness. When, from the extravagance of the charges, the unnecessary character of the supplies, or from any other circumstance, bad faith or dishonesty may be presumed, courts cannot be too strict ; but where there is every appearance of good faith and correct management, such fiduciaries should not be held. in the settlement of their accounts, to the strictest rules of evidence. Were they obliged to prove the signatures to every receipt, the cost of the attendance of witnesses or of their depositions, would involve the estates in heavy and unnecessary expense.

*Succession of Frantum,* 283.

51. Proof that the notice of protest was deposited in the post office at seven o'clock, A. M. the day after the protest, shows due diligence ; and it will be presumed, in the absence of evidence to the contrary, that the notice was in time to go by the mail of that day.

*Commercial Bank of Natchez* v. *King,* 243.

52. Where the record does not show whether a slave sold was delivered to the vendee at the time of the adjudication, or after the execution of the notarial act, it will be presumed that the vendor retained possession until the act of sale was passed. C. C. 2588. *Hivert* v. *Lacaze,* 357.

See 56, *infra.*

XIV. *Evidence of Particular Persons.*

1. *Parties.*

53. Any consent given, or admission made on record, by a party, in the progress of a suit, from which his adversary may derive any legal right, cannot be withdrawn without the consent of the latter, who is entitled to the benefit of its full legal effect. *Aliter,* where such consent or admission confers no right, as where experts have been appointed, by consent, to ascertain a fact, in which case either party may move to rescind the order, or it may be done by the court *ex officio. Kohn* v. *Marsh,* 48.

54. In an action against a seizing creditor and the sheriff, in which plaintiff prayed for an injunction and damages, he cannot call upon the latter to testify as a witness. He must release him, or propound interrogatories to him as a party. *Dabbs* v. *Hemken,* 123.

55. A party to a suit, interrogated as to a particular fact, cannot, under the pretext of answering the interrogatory, annex to his answer letters of a third person, and thus introduce in evidence statements not under oath, for the purpose of influencing the jury on other points in the case.

*Reynolds* v. *Rowley,* 201.

56. In contests between the creditors of an insolvent, the confessions or ac-

knowledgments of the latter are not evidence. Such declarations are presumed to be fraudulent. *Blackstone* v. *His Creditors*, 219.

57. A party to a suit is not bound to answer interrogatories propounded to him by his opponent, unless ordered to do so by the court. C. P. 348.

*Commercial Bank of Natchez* v. *King*, 243.

58. Where a party has repeatedly and publicly declared himself to be a resident of a particular parish, he will not be allowed, though actually residing elsewhere, to gainsay his own declarations, which may have misled others.

*Ib.*

59. Where an action commenced by an administrator, is carried on, after the expiration of his administration, by the heirs, the defendant cannot examine him as a party, by annexing interrogatories to an amended answer. The term of his administration having expired, he has no interest in the case, and cannot be interrogated as a party. *Hawkins* v. *Brown*, 310.

### 2. Attorneys at Law.

60. An attorney cannot object, on the ground of professional confidence, to being interrogated as to the manner in which he became possessed of papers introduced by him in support of his client's cause, where it does not appear that he received them from his client or his agent.

*Reynolds* v. *Rowley*, 201.

61. An attorney is not admissible as a witness to disclose facts, the knowledge of which he acquired confidentially, in the practice of his profession. But when in possession of papers belonging to his client's adversary, or when called on, after having had them in his possession, to disclose what he has done within them, or to point out where they may be found, the rule does not apply ; and he may be as properly called on to produce the papers necessary to establish the rights of the adverse party, if still in his possession, or interrogated as to facts which may lead to their discovery, as his client himself could be. C. P. 140, 473. *Travis* v. *January*, 227.

### 3. Agents.

62. The declarations of one who had acted as an agent, made after the termination of his agency, are not binding on the principal, though the former be dead at the time of the trial. *Reynolds* v. *Rowley*, 201.

## XV. Evidence in Particular Actions.

### 1. On Bills of Exchange and Promissory Notes.

See Bills of Exchange and Promissory Notes, VI.

### 2. For Malicious Prosecution.

63. To maintain an action for a malicious prosecution, the plaintiff must prove : *first*, the prosecution ; *second*, that the defendant was the prosecutor, or the cause of the prosecution ; *third*, that he was actuated by malice ; *fourth*, that there was no probable cause for the prosecution.

*Grant* v. *Deuel*, 17:

64. In an action for a malicious prosecution, malice may be established: *first*, by proving express malice ; *second*, by showing want of probable cause for the prosecution.   Malice is usually inferred from the want of probable cause.   *Ib*.

65. It is a well settled rule of law, founded on principles of policy and convenience, that the prosecutor shall be protected, though his private motives may have been malicious, provided he had probable cause for the charge. Where express malice has been proved, there must be some positive evidence to show that the prosecution was groundless, though slight evidence will be sufficient.   *Ib*.

66. An acquittal, or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause.   *Ib*.

67. Proof that the jury entertained doubts on the evidence, or deliberated as to the guilt of the accused after the case was concluded, is proof of probable cause for the prosecution.   *Ib*.

### 3. *For Partition.*

68. Petition by the syndics of an insolvent for a division of partnership property by sale.   Four experts having been appointed, by consent, to report whether the property could be divided in kind, without loss or inconvenience, and two only having reported, on motion of plaintiffs the order appointing experts was rescinded, and the court proceeded to receive other evidence of the facts intended to be established by their report.   *Held*, that the report of the experts was not the only mode of proof to which the court might resort, to enable it to decide whether the property should be sold ; and that, under art. 1261 of the Civil Code, any other legal evidence might be received.   *Kohn* v. *Marsh*, 48.

### 4. *In Petitory Actions.*

69. A petitory action may be maintained against a naked possessor, upon a title which, if accompanied by possession, would be regarded as a just title.
                                    *Thomas* v. *Turnley*, 206.

70. A petitory action may be defeated, by showing that the title is in a third person, or that the latter has a better title than the plaintiff.   *Ib*.

71. To recover against a mere trespasser, who sets up no title in himself or in any other person, it is unnecessary that the plaintiff should show a title, perfect in all respects ; one apparently good will suffice.
                                    *Baillio* v. *Burney*, 317.

### 5. *Actions of Rescission.*

72. In all actions of rescission, the party seeking relief must have offered to restore his adversary to the situation he was in before the contract.
                                    *Tippett* v. *Jelt*, 313.

73. Proof of an offer by the vendor to annul the sale of a slave, on the payment of a certain sum, will exonerate the plaintiff, in a redhibitory action,

from the necessity of proving a tender of the slave. The tender would have been useless, without the payment of the sum demanded.

*Hivert* v. *Lacaze*, 367.

74. The purchaser of a slave, to entitle himself to the benefit of the third section of the act of 2d Jan. 1834, which provides that one who institutes a redhibitory action on the ground that the slave is a runaway or thief, shall not be bound to prove that such vice existed before the sale, when discovered within two months thereafter, where such slave had not been more than eight months in the State, must show that the slave has not resided therein for eight months preceding the sale. *Smith* v. *McDowell*, 430.

75. A counter-letter, or something equivalent thereto, is the only proof admissible to establish simulation, not fraudulent, between the parties to a contract, or their representatives. Parol evidence is inadmissible.

*Liautaud* v. *Baptiste*, 441.

76. The father of certain natural children, who had made a sale of all his property to a third person, by a subsequent marriage legitimated his children. After the death of the father, the property was sold to a fourth. In an action by the children against the latter, to recover the property on the ground that the sales were simulated, plaintiffs alleged that it was agreed between the deceased and his vendee that, notwithstanding the sale, the former should remain the owner of the property, which should be reconveyed to him when required, or to his children in case of his death, and that the sale was in the nature of a *fidei commissum*, and, as such, prohibited by law. *Held*, that the interest of the plaintiffs, who were subsequently legitimated, not having existed at the date of the first sale, parol evidence was inadmissible to prove that it was a *fidei commissum;* that the object of the action is to enforce the *fidei commissum* complained of; and that plaintiffs cannot, under the pretext that it was a *fidei commissum*, be allowed to establish the simulation of the sale, and thereby give effect to the very agreement prohibited by law. *Ib.*

## 6. *In Proceedings by Attachment.*

77. The subsequent return of a party, whose property had been attached on an affidavit that he had left the State for the purpose of never returning, will not alone be sufficient ground for dissolving the writ, where circumstances render it probable that his original intention was not to return. The intention of returning should have been clearly proved, to entitle the defendant to a dissolution of the attachment. *Reeves* v. *Comly*, 363.

## 7. *In Suits for Freedom.*

78. Where a slave ordered to be emancipated by will, sues to establish her right to freedom, she must prove that she is thirty years of age, or a native of the State, and that she has behaved well during the four preceding years. Act 9 March, 1807. C. C. art. 185. The act of 31st January, 1827, effected

no other change in the law than to authorize, under certain circumstance s, emancipation before the thirtieth year. *Nolé* v. *De St. Romes*, 484.

See APPEAL, 29. 30. 32.　CONTINUANCE.

## EXCEPTION.

See PLEADING, IV.

## EXCEPTIONS, BILL OF.

A bill of exceptions is only necessary, where something is to be brought to the knowledge of the appellate court, which would not otherwise appear in the record. *Harrison* v. *Waymouth*, 340.

## EXECUTOR.

See EVIDENCE, 21.　SUCCESSIONS.

## EXECUTORY PROCESS.

1. The provisions of the Code of Practice, art. 746, *et seq.*, authorizing summary process to enforce judgments rendered in other States or in foreign countries, instead of the ordinary action on the record, which was formerly the only mode of proceeding, must be strictly pursued ; and the party resorting to it must show, that he comes clearly within the law, not in appearance only, but in reality. *Miller* v. *Gaskins*, 94.

2. Defendant having procured an order of seizure and sale, on a judgment rendered in another State, against the plaintiff, a resident of Louisiana, under process of arrest, the latter enjoined the proceeding, alleging that, though it appears from the record an answer was put in for him by an attorney, that no one was authorized to appear for him, and that he never appeared or defended the action. On a motion to dissolve, on the ground that the facts alleged, though true, are insufficient to maintain the injunction ; *Held*, that admitting the allegations of the petition to be true, the judgment can have no greater effect than one rendered, after personal service, but without appearance, on a judgment by default ; and that the motion should have been overruled. *Ib.*

3. Defendant having obtained a judgment against plaintiff in another State, levied an execution on property of the latter in that State, the sale of which was deferred for twelve months, in consequence of not bringing two-thirds of its appraised value. Defendant, thereupon, procured an order of seizure and sale in this State, which plaintiff enjoined. On the trial, the injunction was maintained until the succeeding term, reserving to the parties the right to show whether the judgment had been satisfied out of the property originally seized, or the remedy exhausted. On an appeal by defendant : *Held*, that it is oppressive to carry on two executions at the same time, and that the judgment should be affirmed. *Newell* v. *Morton*, 102.

4. Where the the.sheriff''s deed for immoveable property sold under a *fi. fa.*, subject to a previous mortgage, has not been recorded in the office of the parish judge of the parish in which the property is situated, it will be without effect as to the hypothecary creditor, who may seize and sell the same as if in possession of the original debtor. *Lee* v. *Dar amon,* 160.

5. Defendants having obtained a judgment against plaintiff in a Circuit Court in another State, procured an order of seizure and sale in this. Subsequently to the order of seizure, plaintiff obtained an injunction from the Chancellor of the State in which the original judgment was rendered, staying its execution until the further order of court. On an application to enjoin the order of seizure and sale : *Held,* that the injunction should be maintained until the termination of the chancery proceedings on the original judgment.

*Bien* v. *Loftus,* 163.

See MORTGAGE.

## EXPERTS.

See PARTNERSHIP, 3. PLEADING, 26.

## FAMILY MEETING.

See MINOR, 3. 4. 9. 13.

## FATHER AND CHILD.

1. Illegitimate children, though duly acknowledged, have no claim against the estate of their natural father, but for alimony. C. C. 224, 257, 913.

*Liautaud* v. *Baptiste,* 441.

2. The rights acquired by children legitimated by the subsequent marriage of their parents, have no effect against gratuitous dispositions, previously made by the latter. The legitimation has no retroactive effect. It operates only from the date of the marriage. C. C. 219, 948, 1556. *Ib.*

## FIDEI–COMMISSUM.

See DONATIONS, 11. 12.

## FIERI FACIAS.

I. *Form of Writ.*
II. *Execution may be taken out by who.*
III. *Several Executions at the same time.*
IV. *Of the Seizure.*
V. *Privilege acquired by Seizure.*
VI. *Sale of Things Seized.*
VII. *Execution will be stayed, when.*

## I. *Form of Writ.*

1. No particular form is prescribed by law for a warrant or execution, on behalf of the State, against a delinquent tax collector. A writ signed by the Treasurer, commanding the proper officer, " in the name of the State of Louisiana," is a sufficient compliance with the provision of sect. 6, art. 4, of the State constitution, in regard to the style of process.

*Scarborough* v. *S tevens*, 147.

## II. *Execution may be taken out by who.*

2. One who has paid the debt due to a plaintiff, and been expressly subrogated to his rights, may take out execution against the defendant.

*King* v. *Dwight*, 2.

## III. *Several Executions at the same time.*

3. A second *fi. fa.* cannot be issued on a judgment, until the first is returned.

*State* v. *Judge of Probates of St. Tammany*, 355.

See EXECUTORY PROCESS, 3.

## IV. *Of the Seizure.*

4. Where sufficient property could not be found, or has not been seized to satisfy an execution, a further seizure may be made when the deficiency is discovered, or other property found. Where more property has been seized than sufficient, the remedy is pointed out by arts. 652 and 653 of the Code of Practice. Such an over seizure will not authorize an injunction.

*Dabbs* v. *Hemken*, 123.

5. Under a judgment against a husband and wife, *in solido*, the sheriff may levy on the separate property of either.    *Smallwood* v. *Pratt*, 152.

6. Under art. 647 of the Code of Practice, the undivided share of an heir in a succession, may be seized and sold under execution.

*Noble* v. *Nettles*, 152.

7. It is not necessary that it should be shown that any attempt has been made to seize moveables, immoveables, or slaves, before seizing the rights and credits of the debtor. The property must be pointed out by the latter, or, under art. 649 of the Code of Practice, by allowing the sheriff to execute the writ, without exercising his right of pointing out the property to be seized, he will lose it. *Ib.*

8. Plaintiffs having obtained a judgment against the defendants, seized, under a *fi. fa.*, all the rights, credits, money, and other property of defendants, in the hands, or under the control of the Receiver of Public Moneys at New Orleans. A draft from the Commissioner of the General Land Office on the Receiver, in favor of one of the defendants, was presented for payment after the seizure, which was not accepted, there not being, at the time, sufficient funds in the hands of the Receiver. The draft was subsequently given up by the holder, and the instructions to pay it revoked. On a rule on the Receiver, to show cause why he should not pay over the money in his hands

be'onging to defendant. *Held*, that the Receiver had no funds belonging to the defendant; that the money belonged to the United States, and until paid over remained under the control of the government : that the mere order to pay, did not, of itself, transfer to the defendant any money in the hands of the Receiver, but was, at most, only an acknowledgment of the debt.

*Mechanics and Traders Bank of New Orleans* v. *Hodge*, 373.

9. A rule cannot be taken on an officer of the United States, in his official capacity, to show cause why he should not pay over money, seized in his hands under a *fi. fa.*, as the property of a third person. To condemn him to pay as an officer, would be to condemn the government, which cannot be done. *Ib.*

## V. *Privilege acquired by Seizure.*

10. Under art. 722 of the Code of Practice, the creditor acquires, by the mere act of seizure, a privilege on the immoveable or moveable property seized, which entitles him to a preference over other creditors, unless the debtor has been declared a bankrupt previous thereto. If the seizure created a privilege only where the property of the debtor was sufficient to pay all his debts, it would only attach when it would be useless.

*Campbell* v. *His Creditors*, 106.

11. Art. 301 of the Code of Practice, which declares that the " sheriff may be enjoined from paying the claim of the plaintiff out of the proceeds of the sale of the property seized, if a third person oppose such payment, alleging that *the defendant has no other property to pay his debts, and pray that the pro-ceeds may be brought into court, to be distributed among all the creditors of the defendant according to the* order of their respective privileges or hypothecations," makes a provision in favor of the creditors who have a *higher privilege* than that of the seizing creditor. It directs the proceeds to be divided among the creditors according to their respective privileges and hypothecations, including the privilege obtained by the seizure. *Ib.*

## VI. *Sale of Things Seized.*

12. The circumstance, that the sale of property seized under execution was advertised before the expiration of the three days allowed for notice of the seizure, is immaterial. *Dabbs* v. *Hemken*, 123.

13. A slight variance between the description of the property in the advertisement, and that in the notice of seizure, which cannot mislead the debtor, is immaterial. *Ib.—Re-hearing*, 129.

14. The second section of the act of 20th March, 1816, requires that the property of a delinquent sheriff, which has been seized under execution issued by the Treasurer of the State, shall be sold for cash, and without appraisement. *Scarborough* v. *Stevens*, 147.

15. The purchaser of property sold under a *fi. fa.* on twelve months' credit, having offered defendants' testator to the sheriff as security for the price, received a blank bond from the sheriff to be signed by himself and the testator, and filled up on its return. The bond was signed, but not returned to

the sheriff, till after the death of the surety, which happened a few days after he signed the instrument, when it was filled up. *Held*, that the security having been previously approved by the sheriff, the contract was complete by the signature of the former. *Wells* v. *Moore*, 156.

16. In a sale under execution, on a twelve months' credit, the sheriff is the agent of the party for whose benefit the sale is made, in taking bond from a purchaser. He is liable to the former if he accept insufficient, and to the latter if he refuse sufficient surety ; and is, therefore, the proper judge of its sufficiency. *Ib.*

17. The provision of arts. 697 and 698 of the Code of Practice, requiring the   · sheriff to cause the act of sale executed by him for property sold under a *fi. fa.*, to be recorded in the office of the clerk of the court from which the writ was issued, were designed to give to the sheriff's deed the authenticity of a notarial act, and to authorize its ı troduction in evidence without further proof of its execution. They do not repeal, nor in any way modify the act of the 24th March, 1810, which declares, sect. 7, that no notarial act concerning immoveable property shall have effect against third persons, until recorded in the office of the parish judge of the parish in which it is situated ; nor that of 26th March, 1813, providing sect. 1, that sales of land or slaves, under execution, shall, except between the parties, be void unless so recorded.

*Lee* v. *Darramon*, 160.

18. Where the sheriff's deed for immoveable property sold under a *fi. fa.*, subject to a previous mortgage, has not been recorded in the office of the parish judge of the parish in which the property is situated, it will be without effect as to the hypothecary creditor, who may seize and sell the same as if in possession of the original debtor. *Ib.*

19. A sheriff has a right to retain possession of property sold by him, during the pendency of a rule to show cause why the sale should not be set aside.

*Bayon* v. *Breedlove*, 383.

VII. *Execution will be stayed, when.*

20. Where different seizures have been made in the hands of defendant, of whatever sums may be due by him to plaintiff, on a judgment in favor of the latter, execution will be stayed until the seizures are proved to have been satisfied or abandoned. No law authorizes a judgment ordering the amount to be deposited in court, subject to the claims of the seizing creditors.

*Rightor* v. *Slidell*, 375.

FRAUD.

See HUSBAND AND WIFE, 2.    SALE, VI.

HUSBAND AND WIFE.

1. Under a judgment against a husband and wife, *in solido*, the sheriff may levy on the separate property of either. *Smallwood* v. *Pratt*, 132.

2. The husband, as the head of the community, has a right to alienate its

property. When done collusively, for the purpose of injuring the wife, she has her remedy against his heirs, after his death, under art. 2373 of the Civil Code, and, perhaps, after a separation from bed and board. *Ib.*

3. Donations *propter nuptias* were not excepted from the provision of art. 48, tit. 2, book 3, of the Code of 1808, that "no donation *inter vivos* of moveable property or slaves, shall be valid for any other effects than those of which an estimate, signed by the donor or donee, or by those who accept for him, is annexed to the record of of the donation." The omission of the estimate, in a donation of slaves, is not cured by the delivery of the slaves.

*Harlin* v. *Léglise*, 194.

4. Donations *propter nuptias* are not excepted from the general rules prescribed by the Code of 1808, in relation to other donations. *Ib.*

5. A wife has a privilege on the moveables of her husband, for her dotal, but not for her paraphernal property. For the latter, she has only a tacit or legal mortgage, on his immoveables. C. C. 2367, 3182.

*Stafford* v. *Dunwoodie*, 276.

6. Defendant having seized under a *fi. fa.* certain moveables belonging to the husband of the plaintiff, the latter procured an injunction, pending which she obtained a judgment against her husband in a suit for separation of property, and, in virtue thereof, caused the moveable property, previously seized by defendant, to be sold, and purchased it herself, crediting the amount upon her judgment. On a motion to dissolve the injunction : *Held*, that by his seizure defendant had acquired a privilege on the moveables seized : that the rights of the wife, being merely paraphernal, gave her no privilege on the moveables ; and that having, by the effect of her seizure, disabled the defendant from enforcing his privilege, she was responsible in damages for the injury he sustained from her act. *Ib.*

7. Real property purchased during the existence of the community of *acquêts*, but conveyed to the wife, will be liable for debts contracted by the husband unless proved to have been paid for out of the paraphernal funds of the former. *Marshall* v. *Mullen*, 328.

8. A married woman, who is a public merchant, may bind herself for any thing relative to her trade, without being empowered by her husband ; and in such a case, if there be a community of *acquêts*, the husband will be also bound. C. C. 128. Otherwise, if not a public merchant.

*Thorne* v. *Egan*, 329.

9. The authorization of the husband to the commercial contracts of the wife, is presumed by law, whenever he permits her to trade in her own name. C. C. 1779. *Ib.*

10. The wife cannot deprive the husband of the right to administer her dowry. He administers it for his own account, and not as her agent, and is not accountable to her for the profits or revenues derived from it. C. C. 2329, 2330. His obligations are those of an usufructuary. C. C. 2344. Debts contracted by him, during the marriage, as administrator of the dowry, are personal to him, and cannot bind the wife, if she renounce the community. C. C. 2379. *Ib.*

## HYPOTHECARY ACTION.

### See EXECUTORY PROCESS.

## ILLEGITIMATE CHILDREN.

### See EVIDENCE, 76.  FATHER AND CHILD.

## IMMOVEABLES.

A railway is not an immoveable, either by nature or destination, when the soil on which it is laid belongs to another ; it is, consequently, not affected by judicial or legal mortgages, nor susceptible of being mortgaged unless authorized by a special act of the legislature.

*State* v. *Mexican Gulf Railway Company*, 513.

## IMPROVEMENTS.

### See ACCESSION.

## INDICTMENT.

### See APPEAL, 2.

## INJUNCTION.

1. The discovery, since the final decision of the appellate court, of new evidence tending to establish allegations in the original petition, is no ground for enjoining the execution of the judgment.   The matter is *res judicata.*

*Campbell* v. *Briggs*, 110.

2. The trial of an injunction is a summary proceeding, in which neither party is entitled to a jury.  *Dabbs* v. *Hemken*, 123.

3. Where sufficient property could not be found, or has not been seized to satisfy an execution, a further seizure may be made when the deficiency is discovered, or other property found.   Where more property has been seized than sufficient, the remedy is pointed out by arts. 652 and 653 of the Code of Practice.   Such an over seizure will not authorize an injunction.   *Ib.*

4. A proper construction of the third section of the act of the 25th March, 1831, will not authorize the court, on dissolving an injunction, to increase the interest, where the original judgment bears interest at ten per cent a year.   Whatever else it may be proper to allow, must be in the form of damages.  *Ib.*

5. An execution cannot be enjoined, on grounds which might have been pleaded in defence before judgment.  *Benton* v. *Roberts*, 224.

6. An injunction will not lie to stay the execution of a judgment for the amount of a note given for the price of a tract of land, on the allegation, that since the rendering of the judgment, plaintiff has discovered that the defendant, his vendor, had no title to the land.   The execution can only be

resisted by appeal, or action of nullity, or on an allegation of extinguishment by payment, release, confusion, novation, or other legal mode.

*Morrison* v. *Crooks*, 273.

7. A party against whom an order of seizure and sale had been issued, presented a petition alleging that the mortgage and notes were obtained by fraud, and that the mortgage was illegally executed, and praying for an injunction, for a judgment rescinding the act, for damages against the mortgagee and a third person alleged to have been concerned in the fraud, and for a trial by jury. The mortgagee answered, praying that the injunction might be dissolved, the demand rejected, and for a judgment in his favor for the amount of his debt. *Held*, that the causes of opposition not being confined to those enumerated in art. 739 of the Code of Practice, and the proceedings having been changed from the *via executiva* to the *via ordinaria*, the mortgagee must be considered as a defendant in the proceedings to obtain the injunction ; and that the other party, like other plaintiffs, was entitled to open and close the argument. *Beaulieu* v. *Furst*, 345.

See APPEAL, 3. EXECUTORY PROCESS, 2. 3. 5.

## INSOLVENCY.

1. Under art. 722 of the Code of Practice, the creditor acquires, by the mere act of seizure, a privilege on the immoveable or moveable property seized, which entitles him to a preference over other creditors, unless the debtor has been declared a bankrupt previous thereto. If the seizure created a privilege only where the property of the debtor was sufficient to pay all his debts, it would only attach when it would be useless.

*Campbell* v. *His Creditors*, 106.

2. Art. 301 of the Code of Practice, which declares that the " sheriff may be enjoined from paying the claim of the plaintiff out of the proceeds of the sale of the property seized, if a third person oppose such payment, alleging that the defendant has no other property to pay his debts, and pray that the proceeds may be brought into court, to be distibuted among all the creditors of the defendant, according to the order of their respective privileges or hypothecations," makes a provision in favor of the creditors who have a *higher privilege* than that of the seizing creditor. It directs the proceeds to be divided among the creditors according to their respective privileges and hypothecations, including the privilege obtained by the seizure. *Ib.*

3. In contests between the creditors of an insolvent, the confessions or acknowledgments of the latter are not evidence. Such declarations are presumed to be fraudulent. *Blackstone* v. *His Creditors*, 219.

4. A debtor who, being unable to pay all his debts at the moment, transacts with his creditors and obtains from them a delay, is not an insolvent. The concession of a respite is based upon the supposed solvency, or eventual ability of the applicant to pay all his debts. The laws relative to respite are not insolvent laws. *Rasch* v. *His Creditors*, 407.

5. A creditor of an insolvent, in whose favor a judgment has been rendered,

on a tableau of distribution, securing him a privilege or mortgage, must be made a party to any appeal, taken by another creditor, or the syndic, for the purpose of reversing such judgment. *Garcia &c.* v. *Their Creditors*, 436.

See PARTNERSHIP, 3.

## INSURANCE.

1. Where a policy of insurance provides that, " in case the insured have any other insurance against loss by fire on the property, not notified to the insurers, nor mentioned in or endorsed upon the policy, or shall afterwards make any other insurance thereon, and shall not, with all reasonable diligence, give notice thereof, and have the same endorsed on the policy, or acknowledged in writing, the policy shall be void," proof that another policy was obtained on the property, which was not notified to the insured, will discharge the latter from all liability.

    *Battaille* v. *Merchants Insurance Company of New Orleans*, 384.

2. Where one of the conditions of a policy against fire requires, as part of the preliminary proof, without which no recovery can be had, a declaration under oath, " whether any, and what other insurance has been made on the same property," the insured will forfeit his right to recover by failing to comply with the condition. *Ib.*

3. One who has agreed to sell a vessel, but has neither delivered it nor received the price, has an insurable interest, the vessel being still at his risk. *Bell* v. *Firemen's Insurance Company of New Orleans*, 423. *Bell* v. *Western Marine and Fire Insurance Co.*, 428.

4. To entitle a party to recover on a policy of insurance, he must have had an interest in the thing insured at the time of the loss, as well as at the date of the insurance ; and the character of this interest cannot be changed, between the date of the insurance and that of the loss, without the assent of both parties. *Ib.*

5. Plaintiffs, owners of a policy of insurance on freight, finding their port of destination in a state of blockade, abandoned the voyage, and returned without insisting upon receiving their freight. There was a provision in the policy that, " the assured shall not abandon in consequence of the port of destination being blockaded, but the vessel shall, in such case, have liberty to proceed to another port not blockaded, and there end the voyage, or wait a reasonable time for the blockade of the original port of destination to be raised." In an action for the amount of the policy : *Held*, that this clause did not authorize the owners to break up the voyage ; and implied nothing more than a consent, on the part of the insurers, to take the risk of proceeding to another port, or of waiting a reasonable time for the blockade to be raised. *Marks* v. *Lousiana State Marine and Fire Insurance Co.*, 454.

## INTEREST.

1. A claim for conventional interest must be established by written proof. C. C. 2895. *Lambeth* v. *Burney*, 254.

2. In an action, on an open account, against the heirs amongst whom a succession has been partitioned, for articles furnished to their ancestor, interest will be allowed from judicial demand, and not from the death of the ancestor. *Burney* v. *Brown*, 270.

3. When the rate of interest to be charged by a Bank on loans or discounts is limited by its charter, it cannot stipulate for a higher rate on the amount of any loan or discount, in consideration of its forbearance to sue.
     *Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

4. An account bears interest from its liquidation ; and will be considered as liquidated from the time when it was rendered, if not objected to within a reasonable period. *Shaw* v. *Oakey*, 361.

5. Where in a sale of goods a time for payment is fixed, an agreement to pay interest may be implied. *Ib.*

6. An unliquidated account bears interest from judicial demand. *Ib.*

7. A payment cannot be imputed to the reduction of the principal, where any interest is due. C. C. 2160. *Ib.*

See PLEADING. 30.

# INTERPRETATION.

1. Where the meaning of an instrument is uncertain, the record of another suit, by a different plaintiff, but to which the defendant was a party, will be admissible in evidence to show, by the acts and declarations of the latter, what his understanding of the instrument was. The present plaintiffs, not having been parties to the suit, cannot avail themselves of the statements in the pleadings as judicial admissions, absolutely conclusive of the rights of the defendant. They must be considered simply as other declarations.
                                   *Wells* v. *Compton*, 171.

2. In the interpretation of contracts, the intention of the parties is to be ascertained, and effect given to it, and to all the clauses of the contract. No construction is to be given which will render important expressions useless. The intention must be determined by the words of the contract, if possible ; but where the intention is doubtful, the interest of the parties, or other contracts, may be referred to. Where a clause is susceptible of two interpretations, it must be understood in that sense in which it will have some effect. So, the manner in which it has been executed, or acted under, by both parties or by one, with the express or implied assent of the other, also furnishes a rule of interpretation. Finally, in doubtful cases, the construction must be against the party who has contracted the obligation. *Ib.*

3. Where the intention of the parties to a contract is doubtful, under art. 1951 of the Civil Code, the court will inquire into the whole conduct of the parties in relation thereto. *Ib.*

4. In all surveys, courses and distances must yield to natural and ascertained objects. *Ib.*

5. Where a mortgage recites, that the mortgagor wishes to place the mortgagee " *à l'abri de ses avances d'argent, et des effets des endossemens que*

. *celui-ci voudra bien lui fournir*," it will be considered as having been given to secure past, as well as future advances. *Succession of De Armas*, 342. .

6. Acts granting mortgages will, in cases of doubt, be strictly construed. *Ib.*

## INTERROGATORIES.

See EVIDENCE.

## INTERVENTION.

See APPEAL, 17.

## JOINT OBLIGATIONS.

See SURETY.

## JOINT OWNERS.

See AGENCY, 2. 3.

## JUDGMENT.

1. The provisions of the Code of Practice, art. 746, *et seq.*, authorizing summary process to enforce judgments rendered in other States or in foreign countries, instead of the ordinary action on the record, which was formerly the only mode of proceeding, must be strictly pursued ; and the party resorting to it must show, that he comes clearly within the law, not in appearance only, but in reality. *Miller* v. *Gaskins*, 94.

2. Defendant having procured an order of seizure and sale, on a judgment rendered in another State against the plaintiff, a resident of Louisiana, under process of arrest, the latter enjoined the proceeding, alleging that, though it appears from the record an answer was put in for him by an attorney, that no one was authorized to appear for him, and that he never appeared or defended the action. On a motion to dissolve, on the ground that the facts alleged, though true, are insufficient to maintain the injunction : *Held*, that admitting the allegations of the petition to be true, the judgment can have no greater effect than one rendered, after personal services, but without appearance, on a judgment by default ; and that the motion should have been overruled. *Ib.*

3. Letters of executorship, under the hand and seal of the Judge of the Court of Probates, are conclusive evidence of the facts they purport to establish ; nor can the jurisdiction of the judge be inquired into collaterally.

*Succession of Hamblin*, 130.

4. Where in an action against sureties who are bound jointly only, they claim in their answer the benefit of division, and it is not alleged that either is insolvent, the judgment must be against each for his virile portion.

*McGuire* v. *Bry*, 296.

5. Where the case requires that a judgment should be rendered for the plain-

tiff, directing him to be put in possession of the land sued for, on paying a sum to the defendant for his improvements, the court will order, at the instance of the latter, that he be authorized to take out execution for the amount decreed to him, if not paid within a certain time.

*Milliken* v. *Rowley*, 253.

6. By the laws of Mississippi, the forfeiture of a forthcoming bond extinguishes the original judgment; and the forfeited bond itself acquires the force and effect of a new judgment. *Briggs* v. *Spencer*, 265.

7. In an action on a judgment obtained in Mississippi, defendant having established that the judgment had been extinguished by the execution and forfeiture of a forthcoming bond : *Held*, that there must be judgment as in case of nonsuit. *Ib.*

8. Where by the laws of a State in which a judgment has been obtained, no execution can be issued against the property of the defendant for a certain period, plaintiffs cannot, by suing on the judgment here, proceed against his property in this State, before the expiration of the delay to which defendant had acquired a right. The judgment cannot have a greater effect extra-territorially, than in the State in which it was rendered. *Ib.*

9. The appointment of a tutor by a Court of Probates, can be set aside only by appeal, or by an action of nullity. Its legality cannot be inquired into collaterally. *Succession of Winn*, 303.

10. Where different seizures have been made in the hands of defendant, of whatever sums may be due by him to plaintiff, on a judgment in favor of the latter, execution will be stayed until the seizures are proved to have been satisfied or abandoned. No law authorizes a judgment ordering the amount to be deposited in court, subject to the claims of the seizing creditors.

*Rightor* v. *Slidell*, 375.

See RES JUDICATA.

## JUDGMENT BY DEFAULT.

See APPEAL, 27. 28. 29.

## JUDGMENT INTERLOCUTORY.

See APPEAL, 3.

## JURY.

1. The verdict of a jury must always be understood with reference to the pleadings, and as responsive to the issues made by them.

*Downes* v. *Scott*, 84.

2. The verdict of a jury will not be disturbed, unless clearly wrong.

*McCoy* v. *Hunter*, 118.   *Hughes* v. *Lee*, 429.

3. The trial of an injunction is a summary proceeding, in which neither party is entitled to a jury. *Dabbs* v. *Hemken*, 123.

4. Jurors are so far the judges of the law as well as of the facts, that they have a right, in all cases, to find a general verdict. But the court, if not satisfied therewith, may grant a new trial. *Thomas* v. *Turnley*, 206.

5. To entitle a defendant to a trial by jury, under the 24th section of the act of 20th March, 1839, he must show, by his affidavit, that his means of defence are certain and unequivocal, and that they will affect the plaintiff's right to recover. *Smith* v. *Scott*, 258.

6. A prayer for a trial by jury, by one of two or more debtors bound *in solido*, will not enure to the benefit of those who have not joined therein.

*Mulhollan* v. *Henderson*, 297.

7. Objections to a verdict lose much of their weight when not made before the court which tried the case originally. A case will be less readily remanded on a question of fact, where a new trial has not been moved for below. An appeal from the judgment of an inferior tribunal, founded on a verdict, should only be taken after the refusal of a new trial. *Hughes* v. *Lee*, 429.

## JUSTICE OF THE PEACE.

### See COURTS, 7.

## LEASE.

1. A lessor is bound to keep the premises in a condition fit for the purposes for which they were leased. If he fail to make the repairs necessary during the lease, the tenant may make them himself, and deduct the amount from the rent. *Perrett* v. *Dupré*, 52.

2. The lessor is bound to indemnify the lessee, for all the damage sustained by the latter in consequence of the vices and defects of the thing leased, though the lessor knew nothing of the existence of such vices and defects at the time of the lease, and even where they have arisen since. *Ib.*

3. Where, after the commencement of a lease, the house becomes so much injured as to be incapable of being rendered fit for the purposes for which it was leased, otherwise than by rebuilding it, and the lessor offers to dissolve the lease, which the lessee refuses, and continues to occupy the building : *Held,* that the lessor will not be responsible for any damage subsequently sustained by the lessee in consequence of the condition of the building, and that the latter will not be entitled to claim any diminution of the rent for the period he continued to occupy the premises after the offer of the lessor to annul the lease. *Ib.*

4. In an action for the rent of a building occupied as a shop by a commercial partnership, the judgment must be against the lessees *in solido*. *Ib.*

## LITISPENDÉNCIA, EXCEPTION OF.

### See PLEADING, 10. 11.

## LOST WRITINGS.

See EVIDENCE, X.

## MALICIOUS PROSECUTION.

1. To maintain an action for a malicious prosecution, the plaintiff must prove : *first*, the prosecution ; *second*, that the defendant was the prosecutor, or the cause of the prosecution ; *third*, that he was actuated by malice ; *fourth*, that there was no probable cause for the prosecution. *Grant* v. *Deuel*, 17.

2. In an action for a malicious prosecution, malice may be established : *first*, by proving express malice : *second*, by showing want of probable cause for the prosecution. Malice is usually inferred from the want of probable cause. *Ib.*

3. It is a well settled rule of law, founded on principles of policy and convenience, that the prosecutor shall be protected, though his private motives may have been malicious, provided he had probable cause for the charge. Where express malice has been proved, there must be some positive evidence to show that the prosecution was groundless, though slight evidence will be sufficient. *Ib.*

4. An acquittal, or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause. *Ib.*

5. Proof that the jury entertained doubts on the evidence, or deliberated as to the guilt of the accused after the case was concluded, is proof of probable cause for the prosecution. *Ib.*

## MEXICAN GULF RAILWAY.

The act of 12th March, 1838, authorizing certain loans to be made to the Mexican Gulf Railway Company, and other Companies, does not, of itself, create a mortgage on the property of those Companies, nor could it without their consent. That consent is expressed by the acts of mortgage, executed in pursuance of it. The act contains only a proposition to loan, upon the execution of a mortgage on the property of the Company ; when accepted, the mortgage exists, and is essentially conventional. The act did not contemplate taking a general mortgage on all the property of the Company, present and future. *State* v. *Mexican Gulf Railway Co.*, 513.

## MINORS.

1. Heirs of age can accept a succession simply, or do acts rendering themselves unconditionally liable. Minors are necessarily beneficiary heirs.
*Porter* v. *Muggah*, 29.

2. The fact that a party was a minor at the time that a judgment was rendered against him, and that his tutor did not attend to, or understand his rights, or take the necessary pains to procure the testimony to establish them, will not entitle him to relief, though it be proved that a different judgment must have been rendered had the proper testimony been produced in the first instance. The first judgment is *res judicata*. *Towles* v. *Conrad*, 69.

3. The advice of a family meeting is not necessary, to authorize the institution of a suit by a tutor to recover real estate belonging to his ward.

*Beard* v. *Morancy*, 119.

4. The decree of the Court of Probates where the succession is opened, made in conformity to the advice of a family meeting, is necessary to authorize the sale of property belonging to minor heirs; and where such a decree has been made, the court will not look beyond it. *Ib.*

5. Property of certain minor heirs having been sold by the parish judge, was afterwards seized under an execution by a creditor of the purchaser. The tutor of the heirs opposed the payment of the proceeds of the sale to the creditor, claiming a vendor's privilege for the price yet due, and setting up a mortgage given to secure the payment. In an action subsequently commenced by him, on behalf of the minors, against the syndic of the purchaser, to recover the land : *Held*, that his opposition to the payment of the proceeds to the seizing creditor, could not preclude the minor heirs from claiming the land itself. *Ib.*

6. The acknowledgment and payment by tutors of debts due from the estates administered by them, are *prima facie* evidence of their correctness. When, from the extravagance of the charges, the unnecessary character of the supplies, or from any other circumstance, bad faith or dishonesty may be presumed, courts cannot be too strict ; but where there is every appearance of good faith and correct management, such fiduciaries should not be held, in the settlement of their accounts, to the strictest rules of evidence. Were they obliged to prove the signatures to every receipt, the cost of the attendance of witnesses or of their depositions, would involve the estates in heavy and unnecessary expense. *Succession of Frantum*, 283.

7. The relations of a minor, who, under arts. 290, 292 of the Civil Code, are bound to cause a tutor to be appointed to them, are authorized, and, perhaps, bound to oppose an appointment when illegally made.

*Succession of Winn*, 303.

8. The appointment of a tutor by a Court of Probates, can be set aside only by appeal, or by an action of nullity. Its legality cannot be inquired into collaterally. *Ib.*

9. Where a mother, who had been confirmed as the natural tutrix of her minor children, marries a second husband domiciliated in a different parish, though without having convened a family meeting to determine whether she shall be continued as tutrix, both herself and the minors will acquire immediately, by the very fact of the marriage, a domicil in the parish of the second husband. C. C. 48. *Ib.*

10. In all cases concerning minors, the judge referred to is the judge of the parish within whose jurisdiction the minors reside, if residents of the State. Act 18 March, 1809, sec. 8. *Ib.*

11. The appointment of a tutor or curator to a minor, belongs to the Probate Judge of the domicil or usual place of residence of the father or mother of such minor, if either be alive. C. P. 944. *Ib.*

12. No legal tutor can be appointed to a minor, unless both the father and mother of the minor be dead. C. C. 281. *Tutorship of Mossy*, 390.

13. Where a mother, the natural tutrix of her minor children, forfeits her tutorship by marrying a second time, without having previously convoked a family meeting to determine whether she shall continue as tutrix, and is reappointed by the judge, under the advice of a family meeting, she will hold the appointment as a dative tutrix. C. P. 951. *Ib.*

14. Where the proceedings in a contest, relative to the tutorship of a minor, have had no other object than to ascertain which of the parties was legally entitled to the appointment, neither having any personal interest in the matter, the costs will be ordered to be paid out of the estate of the minors. *Ib.*

## MORTGAGE.

1. The right of a mortgage creditor is on the thing itself, and may be exercised into whatever hands it may pass. *Succession of Field*, 5.

2. A sale by the administrator of a succession of property held by the deceased, subject to a mortgage, gives the mortgagee no claim against the succession. His rights cannot be affected by such a sale; and he must pursue the property in the hands of the subsequent third possessor. *Ib.*

3. A wife has a privilege on the moveables of her husband, for her dotal, but not for her paraphernal property. For the latter, she has only a tacit or legal mortgage on his immoveables. C. C. 2367, 3182.
$\qquad$ *Stafford* v. *Dunwoodie*, 276.

4. Where a mortgage recites, that the mortgagor wishes to place the mortgagee " *à l'arbri de ses avances d'argent, et des effets des endossemens que celui-ci voudra bien lui fournir,*" it will be considered as having been given to secure past, as well as future advances. *Succession of De Armas*, 342.

5. Acts granting mortgages will, in cases of doubt, be strictly construed. *Ib.*

6. Where a note, secured by mortgage, is prescribed, the mortgage is necessarily extinguished. A mortgage can only exist as an accessary to a principal obligation, with the extinction of which it disappears. C. C. 3251, 3252, 3374. *Auguste* v. *Renard*, 389.

7. The transfer of a negotiable note, by endorsement, operates a transfer of any mortgage given to secure its payment. C. C. 2615. *Ib.*

8. A railway is not an immoveable, either by nature or destination, when the soil on which it is laid belongs to another; it is, consequently, not affected by judicial or legal mortgages, nor susceptible of being mortgaged unless authorized by a special act of the legislature.
$\qquad$ *State* v. *Mexican Gulf Railway Co.*, 513.

9. Future property can never be the subject of conventional mortgage. C. C. 3276. *Ib.*
$\qquad$ See MEXICAN GULF RAILWAY.

## NEW ORLEANS, CITY OF,

1. Sect. 4 of the act of 14th March, 1816, which provides that " neither the

Mayor, Recorder, nor any Alderman then in office, shall be allowed, in his own name, or through the medium of others, to become a lessee or bidder for any branch of the revenues of the city, nor for any work or undertaking whatever which may be authorized or ordered by the corporation of the city of New Orleans," cannot be considered as prohibiting such persons from leasing any lot of ground or other property, not forming an entire branch of the revenue of the city.

*Second Municipality of New Orleans* v. *Caldwell*, 368.

2. Under the ordinance of the Second Municipality of New Orleans, of 12th July, 1836, which declares, that the tax levied on the owners of the property for the reimbursement of their portion of the expense of paving, " shall be paid in cash within ninety days after the work is done, or in notes endorsed to the satisfaction of the Committee of Finance, at six, twelve, eighteen, and twenty-four months, bearing interest at the rate of eight per cent a year," interest, at that rate, may be recovered from a property-holder who has neglected to pay, within the ninety days, the amount assessed as his share of the cost of such pavement.

*Second Municipality of New Orleans* v. *McFarlane*, 406.

# NEW ORLEANS AND CARROLLTON RAIL ROAD COMPANY.

1. By the first section of the act of 1 March, 1836, amending the charter of the New Orleans and Carrollton Rail Road Company, it is provided, that " the Company shall pay to the State, in ten equal annual instalments from the acceptance of the present act, seventy-five thousand dollars to be employed by the State for the completion of the Attakapas Canal through Lake Verret, whenever such improvements shall have been undertaken and the work actually commenced by the State, or by any Company legally chartered for the purpose." In an action, under this act, by the State, against the Company, who had accepted the act, for the instalments due : *Held*, that the State is entitled to recover, whether the works or improvements have been commenced or not ; and that the defendants have nothing to do with the appropriation of the amount they contracted to pay.

*State* v. *New Orleans and Carrollton Rail Road Co.*, 418.

2. The liability of the stockholders in the New Orleans and Carrollton Rail Road Company under their subscriptions, is not affected by the act of 14th March, 1839, relieving the Banks from the forfeiture of their charters. If a further call upon those who have not paid in full, be necessary for the discharge of the debts of the Company, the Directors are authorized to make it.

*Millaudon* v. *New Orleans and Carrollton Rail Road Co.*, 488.

See BANK, 2.

# NEW TRIAL.

1. The admission of irrelevant testimony is no ground for remanding a case for a new trial, where its exclusion would not probably vary the result.

*Ferguson* v. *Whipple*, 344.

2. Objections to a verdict lose much of their weight, when not made before the court which tried the case originally. A case will be less readily remanded on a question of fact, where a new trial has not been moved for below. An appeal from the judgment of an inferior tribunal, founded on a verdict, should only be taken after the refusal of a new trial.

*Hughes* v. *Lee*, 429.

## NOTARY.

1. The certificate of a notary, that no note signed or endorsed by a particular person was protested by him within a certain period, is inadmissible. A notary can only certify copies of proceedings in his office ; any other fact within his knowledge, must be disclosed under oath.

*Exchange and Banking Company of New Orleans* v. *Boyce*, 307.

2. The fees to which a notary public is entitled for his services being fixed by law, he cannot, under any pretence, demand additional compensation.

*Walton, &c.* v. *Their Creditors*, 438.

## NOVATION.

A debtor does not, by the indication of another as the person to whom he is to pay, become the debtor of the latter ; he continues to be the debtor of his original creditor.

*State* v. *New Orleans and Carrollton Rail Road Co.* 418.

## PARAPHERNAL PROPERTY.

### See HUSBAND AND WIFE.

## PARTIES.

### See APPEAL VI. EVIDENCE XIV. PLEADING II.

## PARTITION.

1. The first settlement between heirs or partners, by which a state of *indivision* is terminated, is, in substance, a partition. *Tippett* v. *Jett*, 313.
2. An action for the nullity or rescission of partitions, is prescribed by five years. C. C. 3507. *Ib.*

See APPEAL 12. PARTNERSHIP 1. 3. 4. 8. 9.

## PARTNERSHIP.

1. A partnership is dissolved by the death of one of the partners ; and the property must be divided as soon as practicable, unless there be some stipulation to the contrary. *Mathison* v. *Field*, 44.
2. The representative of a deceased partner may take the necessary measures to protect the interest of the partner he represents ; but he cannot administer the partnership affairs, unless authorized to do so by the contract of partnership. *Ib.*

VOL. III. 73

3. Petition by the syndics of an insolvent for a division of partnership property by sale. Four experts having been appointed, by consent, to report whether the property could be divided in kind, without loss or inconvenience, and two only having reported, on motion of plaintiffs the order appointing experts was rescinded, and the court proceeded to receive other evidence of the facts intended to be established by their report. *Held*, that the report of the experts was not the only mode of proof to which the court might resort, to enable it to decide whether the property should be sold; and that, under art. 1261 of the Civil Code, any other legal evidence might be received.

*Kohn* v. *Marsh*, 48.

4. Where, in an action for the settlement of a partnership, the property is such as cannot be divided in kind without loss or inconvenience, a sale may be ordered at once, without waiting for the settlement of the partnership accounts. *Ib.*

5. A partnership formed for the purpose of purchasing timber, sawing it, and selling it for a profit, is, under art. 2796 of the Civil Code, a commercial one.

*Succession of Hamblin*, 130.

6. Where real property is purchased by a commercial firm, the members of the firm become joint owners thereof; and it cannot be alienated by one partner, without the consent of the rest. C. C. 2796. But where the latter, by receiving a portion of the price, subsequently ratify a sale by the former, they will be estopped from asserting any title to the prejudice of a *bona fide* purchaser. *Thomas* v. *Scott*, 256.

7. Partners cannot plead ignorance of the transactions of their house. *Ib.*

8. Though the legal title to real property bought by a commercial firm, be in the members individually, each holding an undivided share, the value thereof belongs to the partnership; and a partner, after disposing of his interest therein, cannot avail himself of his legal title to sue for a partition. *Ib.*

9. The property of a partnership is common, held *pro indiviso* by all the partners, responsible for the debts of the concern, and subject, after their payment, to division among the partners, according to their agreement. Each is a debtor for what he promises to bring in; and if one have brought in more than the rest, he is a creditor of the partnership for the difference, and, as between the partners, has a right of retention on the common stock for its repayment, and for any debt of the partnership for which he may be made responsible.

*Millaudon* v. *New Orleans and Carrollton Rail Road Co.* 488.

See Bank 2. . Partition 1.

## PAYMENT.

1. A note, though made payable in dimes, may be discharged by a payment in any other legal coin of the United States.

*Commissioners of the Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

2. An agreement, by an attorney at law, to receive payment of a judgment in any thing but the legal currency of the United States, will not be binding on the plaintiff. *Dunbar* v. *Morris*, 278.

3. The holder of an accepted draft for a sum payable in the notes of a particular Bank protested at maturity, will be entitled to recover the value of the notes at the date of the protest. A subsequent tender of the amount in the notes of the Bank, they having depreciated in the mean time, will not entitle the defendant to settle the debt at the value of the notes at the date of the tender. *Meeks* v. *Davis*, 326.

4. A payment cannot be imputed to the reduction of the principal, where any interest is due. C. C. 2160. *Shaw* v. *Oakey*, 361.

## PETITORY ACTION.

See EVIDENCE 69, 70, 71.

## PLEADING.

I. *Of the Petition.*
II. *Parties to Actions.*
III. *Certain Actions where to be brought.*
IV. *Exceptions and Answer.*
V. *Demands in Compensation and Reconvention.*
VI. *Amendments.*
VII. *Interrogatories to a Party.*
VIII. *Admissions.*
IX. *Striking out Plea.*

### I. *Of the Petition.*

1. The signature of the petitioner to an affidavit which the law requires to be annexed to the petition, is a sufficient signature of the petition itself.
*Zollicoffer* v. *Briggs*, 236.

2. A party entitled to the compensation due to the owners of the contiguous lots, from a proprietor of the intermediate ground who has made use of their walls, may cumulate in one action the debts due for the use of the walls of both owners. *Kennedy* v. *Oakey*, 404.

See EMANCIPATION OF SLAVES.

### II. *Parties to Actions.*

3. In an action on a joint contract all the obligors must be made defendants, though one of them may have performed his part, or may be domiciliated in a parish beyond the jurisdiction of the court, parties contracting joint obligations being considered to waive the personal privilege of being sued before the court having jurisdiction over the place of their domicil; and the judgment must be against each defendant, separately, for his proportion.
*Thompson* v. *Chrétien*, 26. *Drew* v. *Atchison*, 140.

4. The judgment for costs, in an action on a joint contract, must be *in solido* against those who have not performed their part. *Ib.*

5. In an action on a joint contract, the suit was dismissed by the inferior court

as to one of the defendants, on the ground of his domicil being in a different parish. Plaintiff took no appeal from the judgment of dismissal, but obtained a judgment against the other defendant. On an appeal by the latter : *Held,* that the action being on a joint contract, both contractors must be before the court ; that the plaintiff having failed to make use of the means given him by law to reverse the erroneous decision of the inferior court, cannot avail himself of his own neglect ; and that there must be judgment as in case of nonsuit. *Thompson* v. *Chrétien,* 26.

6. Where a party to a suit pending before a State court, applies to be declared a bankrupt under the act of Congress of 19th August, 1841, the proceedings must be suspended, for a reasonable time, to enable him to file the decree, when the assignee must be made a party. As soon as the decree in bankruptcy is pronounced, the bankrupt, in relation to all actions for and against him except such as the statute prescribes, is legally dead, and can only be represented by the assignee. *Fisher* v. *Vose,* 457.

### III. *Certain Actions where to be brought.*

7. An overseer, though entitled to a privilege on the crop for the payment of his wages, cannot maintain an action against his employer in the parish in which the plantation is situated, where the domicil of the latter is in a different parish. The privilege granted by law to overseers, is, like all others, an accessory to the principal obligation, and must follow it.

*Hollander* v. *Nicholas,* 7.

8. The penalty imposed by the eighteenth section of the act of 7th June, 1806, on the owner or occupier of a plantation, for keeping slaves thereon, without a white or free colored person as manager or overseer, can only be recovered by civil action before an ordinary tribunal. The action must be brought before a Justice of the Peace, a Parish, or District Court, according to the number and amount of the fines claimed. *State* v. *Linton,* 55.

### IV. *Exceptions and Answer.*

9. Discussion, like all other dilatory exceptions, must be pleaded *in limine litis.* It cannot be received after issue joined. *Dwight* v. *Linton,* 57.

10. Under art. 335 of the Code of Practice, the exception of *litispendéncia,* must show the pendency of another suit, between the same parties, for the same object, and growing out of the same causes of action, before another court of concurrent jurisdiction. *Succession of Ludewig,* 92.

11. The exception *litispendéncia* must be pleaded *in limine litis.* Where it is not pretended that judgment has been rendered in the first suit, it cannot be admitted in bar. *Long* v. *Long,* 108.

12. An exception to the jurisdiction of the court, waived below, cannot be revived in the appellate court. *Reynolds* v. *Rowley,* 201.

13. There is a class of exceptions which may be pleaded for the first time on the appeal ; but the facts necessary to sustain them, must appear from a mere inspection of the record. *Zollicoffer* v. *Briggs,* 236.

14. A prayer for a trial by jury, by one of two or more debtors bound *in so-lido*, will not enure to the benefit of those who have not joined therein.

*Mulhollan* v. *Henderson*, 297.

15. Where the defendant, in a redhibitory action for the price of a slave, pleads a general denial, and specially denies that he was aware of the alleged unsoundness, he cannot set up in his defence that the alleged defect was one which the buyer might have discovered by simple inspection. Such an exception should have been pleaded specially, to put the plaintiff on his guard, and afford him an opportunity of disproving the fact. *Hivert* v. *Lacaze*, 357.

16. One who relies on a peremptory exception, founded in law, must plead it specially. *Ib.*

17. The putting a debtor in default, is a condition precedent to the recovery of damages for the violation of a contract. The want of it need not be pleaded, but may be taken advantage of at any time. C. C. 1906.

*Hodge* v. *Moore*, 400.

18. Where the petition prays for a judgment against defendants *in solido*, and one of the latter severs in his answer, but does not plead that the obligation is joint only, and judgment is rendered against defendants *in solido*, it will not be disturbed on appeal. *Comstock* v. *Paie*, 440.

See PARTNERSHIP, 7.

## V. *Demands in Compensation and Reconvention.*

19. Pleas in compensation must be set forth with the same certainty as to amount, dates, &c., as would be necessary if the party setting them up were the plaintiff in a direct action. General allegations will not suffice. *Smith* v. *Scott*, 258. And so of demands in reconvention. *Jonau* v. *Ferrand*, 364.

20. A balance due on an unliquidated account, cannot be pleaded in compensation to an action on a due bill or *bon;* nor in reconvention, when unconnected with the plaintiff's claim. *Jonau* v. *Ferrand*, 364.

## VI. *Amendments.*

21. An amended petition propounding interrogatories to a party to the action, offered after the trial has commenced, will be too late.

*Dabbs* v. *Hemken*, 123.

22. As a general rule, amendments should be admitted where the justice of the case will be promoted thereby, but they must be presented before going to trial. The case must be an extraordinary one, to justify the reception of an amendment after the trial has commenced; and the amendment must not be calculated to produce delay. *Ib.*

## VII. *Interrogatories to a Party.*

23. A party to a suit, interrogated as to a particular fact, cannot, under the pretext of answering the interrogatory, annex to his answer letters of a third person, and thus introduce in evidence statements not under oath, for the purpose of influencing the jury on other points in the case.

*Reynolds* v. *Rowley*, 201.

24. A party to a suit is not bound to answer interrogatories propounded to him by his opponent, unless ordered to do so by the court.   C. P. 348.

*Commercial Bank of Natchez* v. *King*, 243.

25. Where an action commenced by an administrator, is carried on, after the expiratio of his administration, by the heirs, the defendant cannot examine him as a party, by annexing interrogatories to an amended answer.   The term of his administration having expired, he had no interest in the case, and cannot be interrogated as a party.   *Hawkins* v. *Brown*, 310.

## VIII. *Admissions.*

26. Any consent given, or admission made on record, by a party, in the progress of a suit, from which his adversary may derive any legal right, cannot be withdrawn without the consent of the latter, who is entitled to the benefit of its full legal effect.   *Aliter*, where such consent or admission confers no right, as where experts have been appointed, by consent, to ascertain a fact, in which case either party may move to rescind the order, or it may be done by the court *ex officio*.   *Kohn* v. *Marsh*, 48.

27. Property of certain minor heirs having been sold by the parish judge, was afterwards seized under an execution by a creditor of the purchaser.   The tutor of the heirs opposed the payment of the proceeds of the sale to the creditor, claiming a vendor's privilege for the price yet due, and setting up a mortgage given to secure the payment.   In an action subsequently commenced by him, on behalf of the minors, against the syndic of the purchaser, to recover the land : *Held*, that his opposition to the payment of the proceeds to the seizing creditor, could not preclude the minor heirs from claiming the land itself.   *Beard* v. *Morancy*, 120.

28. A defendant will not be permitted, by shifting his grounds of defence, to contradict, by an amended answer, facts stated and admissions made by him in his original answer.   *Estill* v. *Holmes*, 134.

29. Action by the payee on a promissory note.   Defendant answered, pleading a failure of consideration, and alleging that the note was given in error, for the price of a tract of land purchased by plaintiff from a person to whom defendant had previously sold it.   In an amended answer, filed at a subsequent term, he averred, that the note was executed for the price of a tract of land belonging to the United States, to which plaintiff pretended to have a pre-emption right ; and which he bound himself to convey by a good title to defendant ; that plaintiff had no pre-emption right to the land ; and that the United States had sold the land to a third person, which sale had come to defendant's knowledge, since the last term of the court.   The sale by the United States was established.   *Held*, that defendant could not be allowed to gainsay the admissions originally made by him, and that he must be estopped by his warranty, as vendor, from praying for a rescission on the ground of want of title in the plaintiff.   Judgment in favor of the latter.   *Ib.*

30. Where, in an action against the maker of a note, in whose hands different creditors of plaintiff have seized all sums due by him to the latter, defendant denies that he is indebted to the plaintiff, he will not be exempted from the

payment of interest, on the ground of uncertainty as to whom he should pay. Having denied that he was at all indebted, he cannot allege that he was prevented from paying by any uncertainty as to whom he should pay.

*Rightor* v. *S.idell*, 375.

See EVIDENCE, 22. 25.

## IX. *Striking out Plea.*

31. Instead of striking out any portion of the pleadings, a more regular course is to permit the parties to go to trial, and to reject, on the objection of the opposite party, any evidence offered to sustain such portion.

*Jonau* v. *Ferrand*, 364.

## POLICE JURY.

The Police Jury of a parish is a political corporation. It may sue and be sued, and act through agents of its own appointment.

*McGuire* v. *Bry*, 196.

## PRESCRIPTION.

1. The general doctrines relative to the interruption of prescription, do not apply to the period fixed by art. 593 of the Code of Practice, after which no appeal will lie. No appeal can be taken after the expiration of that time, though one may have been dismissed, which was taken within the period.

*Griffing* v. *Bowmar*, 113.

2. To support the prescription of ten years, the title to the immoveable must be apparently good, and of a character to induce the belief, on the part of the possessor, that it is perfect. A title, defective on its face, will not be sufficient; *aliter*, where the defect proceeds from circumstances or evidence *dehors* the instrument. *Eastman* v. *Beiller*, 220.

3. Where one assumes to sell without title, or without disclosing the defects in his title, the vendee, in good faith, though holding *a non domino*, may plead the prescription of ten years. Otherwise, where vendor sells only his right or interest, shows what it is, and declines to warrant generally, thus bringing home to the vendee a knowledge of his title. *Ib.*

4. Under the act of 28th February, 1837, actions against the suretics of a sheriff on his official bond, are prescribed by the lapse of two years,

*Mulhollan* v. *Henderson*, 297.

5. An action for the nullity or rescission of partitions, is prescribed by five years. C. C. 3507. *Tippett* v. *Jelt*, 313.

6. Where a note, secured by mortgage, is prescribed, the mortgage is necessarily extinguished. A mortgage can only exist as an accessory to a principal obligation, with the extinction of which it disappears. C. C. 3251, 3252, 3374. *Auguste* v. *Renard*, 389.

## PRESUMPTION.

See EVIDENCE, XIII.

## PRIVILEGE.

1. Under art. 722 of the Code of Practice, the creditor acquires, by the mere act of seizure, a privilege on the immoveable or moveable property seized, which entitles him to a preference over other creditors, unless the debtor has been declared a bankrupt previous thereto. If the seizure created a privilege only where the property of the debtor was sufficient to pay all his debts, it would only attach when it would be useless.

*Campbell* v. *His Creditors*, 106.

2. Art. 301 of the Code of Practice, which declares that the "sheriff may be enjoined from paying the claim of the plaintiff out of the proceeds of the sale of the property seized, if a third person oppose such payment alleging that the defendant has no other property to pay his debts, and pray that the proceeds may be brought into court, to be distributed among all the creditors of the defendant, according to the order of their respective privileges or hypothecations," makes a provision in favor of the creditors who have a *higher privilege* than that of the seizing creditor. It directs the proceeds to be divided among the creditors according to their respective privileges and hypothecations, including the privilege obtained by the seizure. *Ib.*

3. One who has ceased to act as overseer, but continues his services as an agent for the owners of a plantation, has no privilege on the crop for his services in the latter capacity. *Succession of Johnson*, 216.

4. An overseer whose services have continued for one year and for a part of a second, has, under art. 3184 of the Civil Code, § 1, a privilege on the crops of both years, or on either, for the whole amount due him. His privilege on the crop of the past year, may be exercised upon its proceeds, even after it has been sold ; but as to the growing crop, his privilege is confined to the crop itself. *Ib.*

5. The holders of notes given for the price of a tract of land, though not identified with the sale by the *paraph* of a notary, will be entitled to a privilege on the thing sold. The *paraph* of the notary is not the only means by which the notes may be identified. Their identity may be proved by his oath. *Ib.*

6. Where the vendors of slaves have left them for a number of years in the possession of the vendee, without taking any steps to preserve their privilege, they cannot assert it to the prejudice of creditors who have obtained judgments against him, or received special mortgages from him. C. C. 3238. *Blackstone* v. *His Creditors*, 219.

7. A wife has a privilege on the moveables of her husband, for her dotal, but not for her paraphernal property. For the latter, she has only a tacit or legal mortgage, on his immoveables. C. C. 2367, 3182.

*Stafford* v. *Dunwoodie*, 276.

8. Defendant having seized under a *fi. fa.* certain moveables belonging to the husband of the plaintiff, the latter procured an injunction, pending which she obtained a judgment against her husband in a suit for separation of property, and, in virtue thereof, caused the moveable property, previously seized by

defendant, to be sold, and purchased it herself, crediting the amount upon her judgment. On a motion to discharge the injunction: *Held*, that by his seizure defendant had acquired a privilege on the moveables seized; that the rights of the wife, being merely paraphernal, gave her no privilege on the moveables; and that having, by the effect of her seizure, disabled the defendant from enforcing his privilege, she was responsible in damages for the injury he sustained from her act. *Ib.*

9. Art. 3499 of the Civil Code does not apply to shipwrights who undertake to build or repair ships or other vessels, whether under a contract for a stipulated sum, or otherwise. It applies only to the claims of workmen or laborers for their daily or monthly wages, and to the sellers of materials for the price thereof, against the person with whom they contract directly, whether the owner or undertaker. *Harrod* v. *Woodruff*, 335.

10. Where plaintiff in an action commenced by attachment, has obtained a judgment before defendant's application to be declared a bankrupt under the act of Congress of 1841, he will be entitled to a preference on the property attached. *Aliter*, where defendant's application was made before judgment. In the last case no privilege is acquired. *Fisher* v. *Vose*, 457.

## PUBLIC LANDS OF THE UNITED STATES.

1. The Registers of the Land Offices of the United States may, like all other keepers of public records, give copies or extracts from any books or documents in their custody, and such copies, when duly certified, are admissible in evidence; but they cannot attest or certify the contents of such books or documents in any other manner. *Judice* v. *Chrétien*, 15.

2. The act of Congress of 29th May, 1830, granting pre-emption rights to settlers on the public lands, which provides, sect. 2, that "where two or more persons are settled on the same quarter section, it may be divided between the two first actual settlers, if, by a north and south, or east and west line, the settlement or improvement of each can be included in a half-quarter section, and that in such case the settlers shall each be entitled to a pre-emption of eighty acres elsewhere in said land district," is directory only. Its object is to give to each settler, *first*, the portion of land on which his improvements were made, and *secondly*, as nearly as possible, an equal quantity of land. Equality of value was not considered important. The direction of the line of division was of secondary consideration, and only intended to effect the principal object. *Downes* v. *Scott*, 84.

3. Where the United States have sold, and given a patent for a tract of land, the property is vested in the purchaser; and the laws of the State in which it is situated operate on it as on other property, except as to taxation, or other special exception; and in effecting a partition, such laws, and the contract of the parties, will, as in other cases, control. *Ib.*

4. In ordering a partition between settlers on the same quarter section, holding as tenants in common, by purchase from the United States, under the pre-emption law of 29th of May, 1830, or between others holding under them, the provisions of that act will be considered as expressing the original

intention of the parties as to the direction of the line of division, where the quarter section is a regular one; *aliter*, as to irregular or fractional surveys. Where lines drawn north and south, or east or west, would not give to each an equal quantity of land, as well as his improvements, the line must be drawn in some other direction, or the land cannot be divided in kind. *Ib.*

5. Under the act of Congress regulating pre-emptions, the Register and Receiver of the Land Office in the district in which the lands lie, have, alone, authority to decide upon claims for pre-emptions; and proof must be made, to their satisfaction, of all the facts necessary to establish the applicant's right to purchase by preference. *Kellam* v. *Rippey*, 138.

6. The right to claim a pre-emption, conferred by act of Congress, does not give the party entitled thereto, any title in or to the land, until he exhibits the necessary proof, and procures the adjudication of the Register and Receiver of the Land District. *Ib.*

7. In an action by one claiming land under a patent from the United States, against a party in possession who had made valuable improvements thereon, the latter will be entitled to claim the excess of the value thereof above the fruits received since the commencement of suit. *Ib.*

8. Where one entitled to claim a tract of land, as an actual settler prior to the twentieth of December, 1803, under the act of Congress of the third of March, 1807, relative to land claims in the territories of Orleans and Louisiana, sells all his right, title, and interest therein; and the claim is subsequently confirmed in the name of the original settler, the confirmation will enure to the benefit of his vendee. *Noulen* v. *Perkins*, 233.

9. One who sells all his right, title, and interest in an improvement made on the public lands, must be considered as parting with all the ulterior advantages to which he may be entitled in virtue thereof. *Ib.*

10. In controversies between the original grantee of a tract of land, or those claiming directly under him, and one in whose favor, as assignee, the title has been confirmed by the Commissioners of the United States, the certificate in favor of the latter, and the facts recited in it, will not be evidence, but the confirmation will enure to the benefit of the party having the inchoate title. Otherwise, as to third persons showing no title. The Commissioners appointed to decide upon land titles emanating from the former sovereigns of Louisiana, being authorized, by different acts of Congress, to confirm inchoate titles existing at the time of the change of government, in favor of certain grantees, or *their legal representatives*, had authority, *incidentally*, to decide whether one who claimed, not as the original grantee, was entitled to a confirmation; and such confirmation, in favor of an assignee, has been uniformly regarded as entitling the latter to a patent. It is evidence against the government, and though not binding on the original grantee, or those claiming under him, is *prima facie* evidence against the rest of the world.
*Thomas* v. *Turnley*, 206.

11. A receipt of the Receiver of Public Moneys, for the price of government lands, is sufficient evidence of title from the United States, to form the basis

of a petitory action—not that it is of equal dignity, with a patent, but evidence of an equitable title on which the owner may recover.

*Lott* v. *Prudhomme*, 293

12. Where the boundaries of a confirmed claim are vague and uncertain, and are to be fixed by the operations of the surveying department, or the confirmation is only the recognition of a pre-existing right, and before such survey and location the government sells a part of the land, not necessarily embraced within the tract confirmed, the title of the purchaser under such sale will prevail. *Ib.*

13. The Commissioner of the General Land Office has no authority to vacate a patent already issued ; but he may declare a *certificate of purchase* of lands, which the law has forbidden to be sold or disposed of, to be void. *Ib.*

14. Whenever the question arises, whether the title to property, which belonged to the United States, has passed, it must be resolved by the laws of the United States. But where it has once passed, it becomes, like all other property in the State, subject to State legislation, so far as such legislation is consistent with the admission that the title has so passed. *Ib.*

15. A patent from the United States, for a portion of the public lands, is conclusive, unless attacked on the ground of error or fraud ; and the question of error or fraud, so far as it concerns a citizen of this State, must be determined by our laws. *Ib.*

16. The moment a patent for public lands has passed the great seal, it is beyond the power of the officers of the United States. *Ib.*

## QUASI–CONTRACTS.

1. The joint owners of a plantation are liable, each for his virile share, for supplies furnished for its use. *Reynolds* v. *Rowley*, 201.

2. Mere voluntary payments, on some previous occasions, will not, of themselves, create an obligation to pay under future, though similar circumstances. *Hazard* v. *Lambeth*, 378.

3. Plaintiff having transferred certain shares of bank stock to a third person, for the purpose of enabling the transferree to raise money thereon, defendant caused a *fi. fa.*, which he had obtained against such third person, to be levied on the stock as the property of the latter. The execution was enjoined by plaintiff, who claimed the stock as his own. On a motion to dissolve : *Held*, that by transferring the stock to enable the transferree to raise money thereon, plaintiff made him the apparent owner, and thereby deceived his creditors ; and that the injunction was correctly dissolved.

*Page* v. *Porée*, 439.

See AGENCY, 3. 5.

## QUASI–OFFENCES.

Defendant having seized under a *fi. fa.* certain moveables belonging to the husband of the plaintiff, the latter procured an injunction, pending which she ob-

tained a judgment against her husband in a suit for separation of property, and, in virtue thereof, caused the moveable property, previously seized by defendant, to be sold, and purchased it herself, crediting the amount upon her judgment. On a motion to dissolve the injunction : *Held*, that by his seizure defendant had acquired a privilege on the moveables seized ; that the rights of the wife, being merely paraphernal, gave her no privilege on the moveables ; and that having, by the effect of her seizure, disabled the defendant from enforcing his privilege, she was responsible in damages for the injury he sustained from her act. *Stafford* v. *Dunwoodie*, 276.

## RAILWAY.

See Immoveables.

## RECEIVER.

1. Though a receiver, appointed to collect money due to the parties to a suit, have no authority to pay debts due by them, yet if they know that he is doing so, and do not object at the time, they cannot do so afterwards.

*Kellar* v. *Williams*, 321.

2. Where, on the motion of one of the parties to a suit, with the consent of the other, a third person is appointed by the court to receive and sue for all amounts due to the litigants, on giving bond, with security, to hold the amounts so received subject to the order of the court, he will not be considered an officer of the court, but the agent of the parties, and only responsible as such. The appointment is the act of the parties. *Ib.*

See Evidence, 4.

## RECONVENTION.

See Appeal, 6. Pleading, V.

## RECUSATION OF JUDGE.

See Successions, 4.

## REDHIBITORY ACTION.

See Pleading, 15. Sale, VI.

## REGISTER OF CONVEYANCES IN NEW ORLEANS.

The act of 20th March, 1827, establishing the office of Register of Conveyances for the city and parish of New Orleans, was intended only to create a particular office, for that city and parish, in which all transfers of immoveable property should be recorded, which, in other parishes, were required to be recorded in the office of the parish judge.

*Lee* v. *Darramon*, 160.

## REGISTRY.

1. The provisions of arts. 697 and 698 of the Code of Practice, requiring the sheriff to cause the act of sale executed by him for property sold under a *fi. fa.*, to be recorded in the office of the clerk of the court from which the writ was issued, were designed to give to the sheriff's deed the authenticity of a notarial act, and to authorize its introduction in evidence without further proof of its execution. They do not repeal, nor in any way modify the act of the 24th March, 1810, which declares, sect. 7, that no notarial act concerning immoveable property shall have effect against third persons, until recorded in the office of the parish judge of the parish in which it is situated; nor that of 26th March, 1813, providing, sect. 1, that sales of land or slaves, under execution, shall, except between the parties, be void, unless so recorded. *Lee v. Darramon, 160.*

2. Where the sheriff's deed for immoveable property sold under a *fi. fa.*, subject to a previous mortgage. has not been recorded in the office of the parish judge of the parish in which the propetry is situated, it will be without effect as to the hypothecary creditor, who may seize and sell the same as if in possession of the original debtor. *Ib.*

## RESCISSION, ACTION OF.

See SALE, VI. EVIDENCE, 72. 73. 74. 75. 76.

## RES JUDICATA.

1. The fact that a party was a minor at the time that a judgment was rendered against him, and that his tutor did not attend to, or understand his rights, or take the necessary pains to procure the testimony to establish them, will not entitle him to relief, though it be proved that a different judgment must have been rendered, had the proper testimony been produced in the first instance. The first judgment is *res judicata*. *Towles v. Conrad*, 69.

2. The discovery, since the final decision of the appellate court, of new evidence tending to establish allegations in the original petition, is no ground for enjoining the execution of the judgment. The matter is *res judicata*.
*Campbell v. Briggs*, 110.

3. The record of another suit, when offered to support a plea of *res judicata*, is admissible to show what the parties claimed, and what was decided in such suit. So the record of another suit, to which the plaintiffs were parties, though joined with others and in a different capacity, is admissible against them, when offered by the defendants, who were plaintiffs in that case; the latter are entitled to the full benefit of any decision made on the rights of the parties, and to show that the plaintiffs have compromised any of their rights by that suit. *Wells v. Compton*, 171.

4. An injunction will not lie to stay the execution of a judgment for the amount of a note given for the price of a tract of land, on the allegation that, since the rendering of the judgment, plaintiff has discovered that the defen-

dant, his vendor, had no title to the land. The execution can only be resisted by appeal, or action of nullity, or on an allegation of extinguishment by payment, release, confusion, novation, or other legal mode.

*Morrison* v. *Crooks*, 273.

## RESPITE.

1. A debtor who, being unable to pay all his debts at the moment, transacts with his creditors and obtains from them a delay, is not an insolvent. The concession of a respite is based upon the supposed solvency, or eventual ability of the applicant to pay all his debts. The laws relative to respite are not insolvent laws. *Rasch* v. *His Creditors*, 407. *Miller* v. *Rasch*, 410.

2. The debtor who applies for a respite does not seek a discharge from his obligations, nor attempt to impair them. The laws of this State relative to respites are not unconstitutional, nor were they repealed or suspended by the act of congress of 19th August, 1841, establishing a uniform system of bankruptcy. *Ib.*

## RULE TO SHOW CAUSE.

1. Where, through error, an order has been made allowing a suspensive appeal on security for costs only, and no transcript of the record has been delivered to the party, the order may be rescinded by the lower court on a rule to show cause. *Mathis on* v. *Field*, 42.

2. Action for $90 paid to defendant, in error, as owner of a butcher's stall, and for $2000 damages for forcibly turning plaintiff out and retaining the possession of the stall. Plaintiff having obtained a rule on defendant to show cause why he should not be put in possession, it was made absolute, and defendant appealed. *Held*, that the court erred in ordering a part of the case to be tried on a rule, and leaving the remainder untried. A cause should not be tried on any other day than the one fixed by the court, when called in its turn. C. P. 463.

*Gerber* v. *Marzoni*, 370. *Beaudouin* v. *Rochebrun*, 372.

See ATTORNEY AT LAW, 3. UNITED STATES, OFFICERS OF.

## SALE.

I. *Form and Requisites of a Sale.*
II. *Warranty.*
III. *Rights and Obligations of Vendee.*
IV. *Putting Vendee in Default.*
V. *Action for Reduction of Price.*
VI. *Rescisson on account of Redhibitory Defects, Fraud, &c.*
VII. *Privilege of Vendor.*

VIII. *Judicial Sales.*

IX. *Sales of Public Lands of the United States.*

I. *Form and Requisites of a Sale.*

1. The vendor of a tract of land is bound to put the purchaser in possession ; and where he sells at different times by separate portions, without boundaries, to different persons, the first purchaser must be satisfied before a second can obtain any portion of his. *Wells* v. *Compton,* 171.

2. Where real property is purchased by a commercial firm, the members of the firm became joint owners thereof; and it cannot be alienated by one partner, without the consent of the rest. C. C. 2796. But where the latter, by receiving a portion of the price, subsequently ratify a sale by the former, they will be estopped from asserting any title to the prejudice of a *bona fide* purchaser. *Thomas* v. *Scott,* 256.

3. The act of receiving the whole or a part of the proceeds of property, sold without authority, amounts to a ratification of the sale, and will preclude the owner from disturbing the purchaser. *Ib.*

4. A vendor may refuse to deliver the thing sold, though he may have granted a term for the payment, where, from the absconding of the vendee, he would be in imminent danger of losing the price. C. C. 2464. *Cook* v. *West,* 331.

5. A sale is perfect, between the parties, as soon as they agree as to the thing and the price. As to third persons, the property of the thing sold passes to the vendee, only by delivery. *Ib.*

6. A vendee who has not received the thing sold, nor paid the price, can transfer to a third person only his right to require the delivery of the thing on the payment of the price, or on giving security for its payment at the time agreed on. *Ib.*

7. One who stands by and sees his property sold as belonging to another, will not be permitted to set up his title in opposition to a *bona fide* purchaser, who has bought on the faith of his declarations or apparent acquiescence. *Aliter,* where the purchaser knew the extent of the rights of the claimant, and was not misled by the acknowledgments so made. *Ib.*

8. Where the record does not show whether a slave sold was delivered to the vendee at the time of the adjudication, or after the execution of the notarial act, it will be presumed that the vendor retained possession until the act of sale was passed. C. C. 2588. *Hivert* v. *Lacaze,* 357.

9. A sheriff has a right to retain possession of property sold by him, during the pendency of a rule to show cause why the sale should not be set aside. *Bayon* v. *Breedlove,* 387.

10. Parol evidence is admissible to prove an agreement to sell a vessel, anterior to the date of the written act of sale. *Bell* v. *The Firemen's Insurance Company of New Orleans,* 423. *Bell* v. *Western Marine and Fire Insurance Co.,* 428.

11. One who has agreed to sell a vessel, but has neither delivered it nor received the price, has an insurable interest, the vessel being still at his risk. *Ib.*

## II. *Warranty.*

12. A purchaser, fully aware of the danger of eviction at the time of the purchase, cannot resist payment of the price on the ground of eviction.   C. C. 2481.   *Estill* v. *Holmes,* 134.

13. Action by the payee on a promissory note.   Defendant answered, pleading a failure of consideration, and alleging that the note was given in error, for the price of a tract of land, purchased by plaintiff from a person to whom defendant had previously sold it.   In an amended answer, filed at a subsequent term, he averred, that the note was executed for the price of a tract of land belonging to the United States, to which plaintiff pretended to have a pre-emption right, and which he bound himself to convey by a good title to defendant ; that the plaintiff had no pre-emption right to the land ; and that the United States had sold the land to a third person, which sale had come to defendant's knowledge, since the last term of the court.   The sale by the United States was established.   *Held,* that defendant could not be allowed to gainsay the admissions originally made by him, and that he must be estopped by his warranty, as vendor, from praying for a rescission on the ground of want of title in the plaintiff.   Judgment in favor of the latter.   *Ib.*

14. Art. 2535 of the Civil Code, which provides, that where a purchaser, who was not informed before the sale of the danger of eviction, is, or has just reason to fear that he will be disquieted in his possession, by any claim, he may suspend the payment of the price until he be restored to quiet possession, unless the seller prefer to give security, does not contemplate the case in which a purchaser's fear of being disquieted arises from a naked point of law.   Every one is bound, at his peril, to know the law.

*Hodge* v. *Moore,* 400.

## III. *Rights and Obligations of Vendee.*

15. Where one assumes to sell without title, or without disclosing the defects in his title, the vendee, in good faith, though holding *a non domino,* may plead the prescription of ten years.   Otherwise, where vendor sells only his his right or interest, shows what it is, and declines to warrant generally, thus bringing home to the vendee a knowledge of his title.

*Eastman* v. *Beiller,* 220.

16. Where in a sale of goods, a time for payment is fixed, an agreement to pay interest may be implied.   *Shaw* v. *Oakey,* 361.

## IV. *Putting Vendee in Default.*

17. To put the purchaser in default, the vendor must tender for his signature an act drawn up in strict conformity to law, and such as the former is bound to sign.   *Hodge* v. *Moore,* 400.

18. Where, in an action against the purchaser of property sold at auction who had failed to comply with the terms of the sale, for the difference between the price bid by him and that at which it was adjudicated on the second exposure, and for the expenses subsequent to the first sale, it appears that the act of sale prepared by a notary and tendered to defendant, was unaccom-

panied with the certificate required by law, showing what privileges or mortgages existed on the property, the defendant will not be considered to have been put *in mora*. C. C. 2589, 3328. *Ib.*

See PLEADING, 17.

## V. *Action for Reduction of Price.*

19. Action by the transferree of instalments due for the price of land. Defendant pleaded a deficiency in quantity, claimed a diminution of the price, and prayed that his vendors might be made parties, and condemned to refund a portion of the amount already paid. Judgment for the plaintiff, and appeal by defendant, the plaintiff alone being cited. *Held*, that the vendors stood towards the defendant in the capacity of plaintiffs, and should have been made appellees; and that the appeal must be dismissed for want of proper parties. *Moore* v. *Rutherford*, 60.

See 33, *post.*

## VI. *Rescission on account of Redhibitory Defects, Fraud, &c.*

20. Where the purchaser knew of the defects before the sale, no redhibitory action will lie. *Lebesque* v. *Bonin*, 12.
21. A *brand* or herd of *running* cattle, advertised and sold as consisting of a certain number, amounted, in fact, to not more than a third. In an action for the price, defendants, having sold a part of the cattle, prayed for a rescission of the sale, or diminution of the price. *Held*, that as defendants could not return all the cattle they had received, the sale could not be rescinded, and that a diminution of the price was properly allowed.

*Richard* v. *Parrott*, 75.

22. The express exclusion, in the sale of a slave, of warranty, except as to title, is not, as a general rule, equivalent to a declaration of unsoundness, and will not relieve the vendor from the obligation of disclosing redhibitory vices or maladies, not apparent, which he knows to exist; and the concealment of such defects will be fraud within the meaning of art. 2526 of the Civil Code. *Aliter*, where from the terms of the exclusion, the idea is conveyed that the slave was unsound; in such case, the exclusion will amount to a declaration of unsoundness. *Galpin* v. *Jessup*, 90.
23. In an action for the price of a slave, the jury, if satisfied that he was addicted to theft, may either rescind the sale, or grant an abatement in the price. *Hawkins* v. *Brown*, 310.
24. Parol evidence is admissible to show that the vendor made known, at the time of the sale, the defects of the thing sold. *Ib.*
25. In all actions of rescission, the party seeking relief must have offered to restore his adversary to the situation he was in before the contract.

*Tippett* v. *Jett*, 313.

26. Proof of an offer by the vendor to annul the sale of a slave, on the payment of a certain sum, will exonerate the plaintiff, in a rehibitory action, from the

necessity of proving a tender of the slave. The tender would have been useless, without the payment of the sum demanded.

<em>Hivert</em> v. <em>Lacaze</em>, 357.

27. Concealment by the vendor of a slave, of the fact that the intellect of the slave was not sound, is a fraud upon the purchaser, and will annul the sale. And so, though the sale was made, in the absence of the owner, by an agent aware of the defect. *Ib.*

28. Concealment by the vendor of any vice or defect in a slave, is no fraud, unless such vice or defect would furnish ground for redhibition.

<em>Gros</em> v. <em>Bienvenu</em>, 396.

29. The purchaser of a slave, to entitle himself to the benefit of the third section of the act of 2d January, 1834, which provides that one who institutes a redhibitory action on the ground that the slave is a runaway or thief, shall not be bound to prove that such vice existed before the sale, when discovered within two months thereafter, where such slave had not been more than eight months in the State, must show that the slave has not resided therein for eight months preceding the sale. *Smith* v. *McDowell*, 430.

See PLEADING, 15.

## VII. *Privilege of Vendor.*

30. The holders of notes given for the price of a tract of land, though not identified with the sale by the *paraph* of a notary, will be entitled to a privilege on the thing sold. The *paraph* of the notary is not the only means by which the notes may be identified. Their indentity may be proved by his oath.

<em>Succession of Johnson</em>, 216.

31. Where the vendors of slaves have left them for a number of years in the possession of the vendee, without taking any steps to preserve their privilege, they cannot assert it to the prejudice of creditors who have obtained judgments against him, or received special mortgages from him. C. C. 3238.

<em>Blackstone</em> v. <em>His Creditors</em>, 219.

## VIII. *Judicial Sales.*

32. In an action, by the purchaser, at a sale under execution, of the undivided shares of certain heirs in a succession, against the administrator, for paying over the amount to the heirs after notice, the defendant cannot set up any irregularity or nullity in the original proceeding against the heirs; the payment is at his peril, and he will be liable over to the purchaser.

<em>Noble</em> v. <em>Nettles</em>, 152.

See SUCCESSIONS, IV.

## IX. *Sales of Public Lands of the United States.*

See PUBLIC LANDS OF THE UNITED STATES.

## SHERIFF.

1. No particular form is prescribed by law for a warrant or execution, on behalf of the State, against a delinquent tax collector. A writ signed by the Treasurer, commanding the proper officer, " in the name of the State of Louisiana," is a sufficient compliance with the provision of sect. 6, art. 4, of the State constitution, in regard to the style of process.

*Scarborough* v. *Stevens*, 147.

2. The second section of the act of 20th March, 1816, requires that the property of a delinquent sheriff, which has been seized under execution issued by the Treasurer of the State, shall be sold for cash, and without appraisement. *Ib.*

3. Where a sheriff has received a tax roll and undertaken its collection, he must show that he has used due diligence. He cannot throw upon the State, the burden of proving that he actually received the amount. *Ib.*

4. Defendant, a sheriff, having received the tax roll, and given security for its collection, enjoined an execution issued against him by the Treasurer for the amount, on the ground that he had no legal authority to collect, no assessors having been appointed, nor assessment regularly made. There was no allegation or proof of any difficulty in making the collections in consequence of such pretended irregularity, nor any proof that defendant hesitated, on that account, to proceed with the collection. On a motion to dissolve the injunction : *Held*, that such illegality not having been objected by the tax payers, it is too late for the sheriff to interpose such an objection. *Ib.*

5. The law having provided the mode by which a sheriff, who has undertaken to collect the taxes, can obtain a credit for the amounts due from non-residents or insolvents, he will not be allowed, by enjoining an execution issued against him by the Treasurer, to retain such amounts. He must resort to the means pointed out by law, to establish the credit to which he is entitled.

*Ib.*

6. Under the twenty-first sect. of the act of 27th March, 1813, a sheriff who fails to pay over, according to law, the taxes collected by him, will be entitled to no commission for their collection. *Ib.*

7. In a sale under execution, on a twelve months' credit, the sheriff is the agent of the party for whose benefit the sale is made, in taking bond from a purchaser. He is liable to the former if he accept insufficient, and to the latter if he refuse sufficient surety ; and is, therefore, the proper judge of its sufficiency. *Wells* v. *Moore*, 154.

8. The sureties on a bond given by a sheriff for the collection of the parish taxes, cannot, when sued as sureties for a portion of the taxes collected but not paid over by the sheriff, contest the legality of the ordinances of the Police Jury making the assessment. By receiving the tax roll, and executing the bond, the sheriff and his sureties recognized the authority of the Police Jury. It is too late to contest the validity of their ordinances, after having acted under them, and collected the taxes. *M'Guire* v. *Bry*, 196.

9. Separate bonds may be taken from a sheriff for the collection of the state and parish taxes, though one bond would be sufficient. *Ib.*

10. Bond, in the sum of $8935, for the collection of the parish taxes, " a^r reebly to the assessment roll." The taxes for ordinary parochial purposes amounted to $3573 ·66, and there was a special tax, of an equal amount, collected for a particular purpose. In an action on the bond.: *Held*, that the sureties were bound for both, it being improbable that a bond would be executed for $8935, to secure the payment of $3573 66 only. *Ib.*

11. Under the act of 28th February, 1837, actions against the sureties of a sheriff on his official bond, are prescribed by the lapse of two years.

*Mulhollan* v. *Henderson*, 297.

12. A sheriff has a right to retain possession of property sold by him, during the pendency of a rule to show cause why the sale should not be set aside.

*Bayon* v. *Breedlove*, 383.

See ATTORNEY, DISTRICT.

## SHIPPING.

1. Parol evidence is admissible to prove an agreement to sell a vessel, anterior to the date of the written act of sale. *Bell* v. *Firemen's Insurance Company of New Orleans*, 423. *Bell* v. *Western Marine and Fire Insurance Co.*, 428.

2. One who has agreed to sell a vessel, but has neither delivered it nor received the price, has an insurable interest, the vessel being still at his risk.

*Ib.*

## STATUTES, CITED, EXPOUNDED, &c.

I. *Statutes of the United States.*

II. *Statutes of the State.*

III. *Statutes of Mississippi.*

IV. *Statutes of New York.*

### I. *Statutes of the United States.*

1790, May 26. Authentication of judicial proceedings of other States. *Succession of Bowles*, 33. *Reynolds* v. *Rowley*, 201. *Union Bank of Maryland* v. *Freeman*, 485.

1804, March 27. Authentication of records and exemplifications of office books, &c. of any public office, not appertaining to a court, of any State or territory. *Reynolds* v. *Rowley*, 201.

1805, March 2. Adjustment of land claims in territory of Orleans and district of Louisiana. *Eastman* v. *Beiller*, 220.

1806, February 28. Extending powers of Surveyor General, and relative to land claims in territory of Orleans and district of Louisiana. *Ib.*

——, April 21. Supplementary to act of 2 March, 1805, for the adjustment of land claims in territory of Orleans and district of Louisiana. *Ib.*

1807, March 3. Respecting claims to land in territories of Orleans and Louisiana. *Ib.*

1830, May 29, § 2. Pre-emption rights of settlers on public lands. *Downes v. Scott*, 84.

1834, June 19. Pre-emption rights of settlers on public lands. *Kellam v, Rippey*, 138. *Baillio v. Burney*, 317.

1838, June 22. Pre-emption rights of settlers on public lands. *Kellam v. Rippey*, 138.

1841, August 19. Establishing uniform system of bankruptcy. *Rasch v. His Creditors*, 407. *Fisher v. Vose*, 457.

### Statutes of the State.

1806, June 7, § 18, 21. Penalty for keeping slaves without a white or free colored person as overseer. *State v. Linton*, 55.

1807, March 9. Emancipation of slaves. *Nolé v. De St. Romes*, 484.

1809, March 18, § 8. Amending Code of 1808—judge referred to in acts concerning minors. *Succession of Winn*, 303.

1810, March 24, § 7. Recording of notarial acts. *Lee v. Darramon*, 160.

1813, March 25, § 5. Powers of Police Juries. *McGuire v. Bry*, 196.

———————— 26, § 1. Recording of certain acts—sales of land or slaves under *fi. fa. Lee v. Darramon*, 160.

———————— 27, § 21. Taxes—collector of, failing to pay over, to lose his commissions. *Scarborough v. Stevens*, 47.

1816. March 14, § 4. City of New Orleans—Mayor, Recorder, Aldermen to lease or bid for any branch of revenue of. *Second Municipality of New Orleans v. Caldwell*, 368.

———————— 20, § 2. Revenues of the State—execution against delinquent sheriff and sureties. *Scarborough v. Stevens*, 47.

———————————— § 18. Police Juries—ordinances of, how signed and promulgated. *McGuire v. Bry*, 196.

1817, February 22, § 21. Revenues of the State—commissions of prosecuting attorneys on amounts collected by them. *Scarborough v. Stevens*, 47.

1818, March 18. Creating offices of Surveyor General and Parish Surveyor. *Wells v. Co ꞹ on*, 171.

1823, March 27, § 3. Attorneys—proceedings against, for fraudulent practice or other offences. *State v. Judge of First District*, 416.

1827, January 31. Emancipation of slaves. *Nolé v. De St. Romes*, 484.

————, March 13. Bills of exchange and promissory notes. *Duncan v. Sparrow*, 164, 167.

———————— 20. Creating office of Register of Conveyances for New Orleans. *Lee v. Darramon*, 160.

1828, March 12. Repealing Civil Code of 1808, except chap. 3, title 10, book 1. *Noble v. Nettles*, 152.

———————— 25, § 4. Amending Civil Code and Code of Practice—attachments, arrests, and sequestrations to be issued on filing bond and affidavit. *Briggs v. Spencer*, 265.

————————, § 11. ———————— registry of sheriff's sales. *Lee v. Darramon*, 160.

1828, March 25, § 7. Amending Civil Code and Code of Practic—eservice of interrogatories under a commission on opposite party. *Tollett* v. *Jones*, 274.

1830, March 15, § 21. Revenues of the State—sheriff's bonds for collection of taxes. *McGuire* v. *Bry*, 196.

1831, March 25, § 1. Amending Code of Practice—recusation of parish judge. *Ex parte Borden*, 399.

——————————, § 3. Injunctions. *Dabbs* v. *Hemken*, 123.

1833, February 9. Charter of New Orleans and Carrollton Rail Road Company. *Millaudon* v. *New Orleans and Carrollton Rail Road Co.*, 488.

1834, January 2, § 3. Presumption in actions for rescission of sales of slaves not eight months in the State. *Smith* v. *McDowell*, 430.

——, March 10, § 2. Advertisements of public sales. *Griffing* v. *Bo mar*, 113. *Beard* v. *Morancy*, 119.

——————————. § 2. Assurance of titles of purchasers at judicial sales. *Griffing* v. *Bowmar*, 113.

1835, April 1. Amending charter of the New Orleans and Carrollton Rail Road Co. *State* v. *New Orleans and Carrollton Rail Road Co.*, 418. *Millaudon* v. *Same*, 488.

1836, March 1. Amending act of 1 April, 1835, relative to charter of New Orleans and Carrollton Rail Road Co. *Ib.*, 418, 488.

1837, February 28. Prescription of actions against sheriff or his sureties. *Mulhollan* v. *Henderson*, 297.

——, March 11, § 2. Bail—release of. *State* v. *Martel*, 22.

——————————— 13. To expedite construction of New Orleans and Nashville Rail Road. *State* v. *Mexican Gulf Railway Co.*, 513.

1838, March 12. Amending act of 13 March, 1837, for expediting construction of New Orleans and Nashville Rail Road—loan to Mexican Gulf Railway Company. *Ib.*

1839, March 14. Relieving Banks from forfeitures of charter. *Millaudon* v. *New Orleans and Carrollton Rail Road Co.*, 488.

——————————— 20, § 3. Amending Code of Practice—summary proceedings against surety on attachment bond. *Wallace* v. *Glover*, 411.

——————————— § 19. —— defects, errors, and irregularities in appeals, time allowed to correct. *Lee* v. *Kemper*, 1. *Grand Gulf Rail Road and Banking Co.* v. *Douglass*, 169.

——————————— § 24. —— trial by jury in actions on unconditional obligations to pay certain sum, when allowed. *Smith* v. *Scott* 258.

——————————— § 6. Charter of Attakapas Canal Company through Lake Verret—authority to company to receive sum from New Orleans and Carrollton Rail Road Co. *State* v. *New Orleans and Carrollton Rail Road Co.*, 418.

1842, February 5. Reviving charters of Banks in New Orleans. *Ib.*

——, March 14. Liquidation of Banks. *Commissioners of the Atchafalaya Rail Road and Banking Co.* v. *Bean*, 414.

————26. Payment of notes due to Banks in liquidation—their own notes to be received in payment, when. *Ib.*

### III. *Statutes of Mississippi.*

Authorizing stay of execution when property will not sell for two-thirds of appraised value. *Briggs* v. *Spencer*, 265.

### IV. *Statutes of New York.*

Establishing rate of interest. Revised Statutes, Ed. 1836, Part II, Chap. IV, Tit. 3. *Shaw* v. *Oakey*, 361.

## SUBROGATION.

See SURETY, 1. 2. 12.

## SUCCESSIONS.

I. *Jurisdiction in matters of Succession.*
II. *Of Executors, Administrators, and Curators.*
III. *Acceptance of Successions, and Rights and Responsibility of Heirs.*
IV. *Sale of Property of Successions.*
V. *Claims against Successions.*

### I. *Jurisdiction in matters of Succession.*

1. Where the creditors of a succession are litigating their rights contradictorily with each other, and the value of the succession exceeds three hundred dollars, an appeal will lie to the Supreme Court, though the claim of each creditor may not amount to that sum. *Succession of Field*, 5.

2. Art. 996 of the Code of Practice, which authorizes actions for debts due from a succession to be brought before the ordinary tribunals, where the heirs, though all or some of them be minors, are in possession of the estate, should, perhaps, be confined either to heirs absolute, or to beneficiary heirs in possession of a succession after it has been fully administered. But where a succession appears to have had but few debts, and to have been administered to a certain extent, and to have been in the possession of the widow and heirs of the deceased for several years, an action to recover a debt due by it, may be brought before the courts of ordinary jurisdiction.

*Porter* v. *Muggah*, 29.

3. Courts of Probate have exclusive jurisdiction of claims for money against successions administered by curators, executors, &c.; and all suits for money, pending before the ordinary tribunals, against one who dies leaving a vacant

succession, must be transferred to the Court of Probates of the place where his succession is opened. *Succession of Ludewig*, 92.

4. The first section of the act of 25th March, 1831, which provides that whenever the Parish Judge of any parish is disqualified by interest, or otherwise, to try any case in the Parish Court, that the District Court shall have jurisdiction thereof, and that the same shall be transferred by the Parish or Probate Court to the District Court, does not contemplate the transfer of all the mortuary proceedings and documents relative to any estate in which the Judge of Probates may be interested. The District Court may take cognizance of the appointment of a curator, where the Probate Judge is interested; but it is not necessary for this purpose, that the papers relative to the succession should be removed from their proper place of deposit.

*Ex parte Borden*, 399.

## II. *Of Executors, Administrators, and Curators.*

5. In an action, by the purchaser, at a sale under execution, of the undivided shares of certain heirs in a succession, against the administrator, for paying over the amount to the heirs after notice, the defendant cannot set up any irregularity or nullity in the original proceeding against the heirs; the payment is at his peril, and he will be liable over to the purchaser.

*Noble* v. *Nettles*, 152.

6. The acknowledgment and payment by curators and executors, of debts due from the estates administered by them, are *prima facie* evidence of their correctness. When, from the extravagance of the charges, the unnecessary character of the supplies, or from any other circumstance, bad faith or dishonesty may be presumed, courts cannot be too strict; but where there is every appearance of good faith and correct management, such fiduciaries should not be held, in the settlement of their accounts, to the strictest rules of evidence. Were they obliged to prove the signatures to every receipt, the cost of the attendance of witnesses or of their depositions, would involve the estates in heavy and unnecessary expense.

*Succession of Frantum*, 283.

7. Full commissions of two and a half per cent on the productive property, may be allowed to an administrator, though the whole estate has not been fully administered by him. *Ib.*

8. Before delivering the whole estate into the hands of an universal heir, the executor has a right to require, that a sufficient sum be placed in his hands to pay the particular legacies. C. C. 1664. *Succession of Carraby*, 349.

See COURTS, 8. EVIDENCE, 21. 59. PARTNERSHIP, 2.

## III. *Acceptance of Successions, and Rights and Responsibility of Heirs.*

9. Heirs of age can accept a succession simply, or do acts rendering themselves unconditionally liable. Minors are necessarily beneficiary heirs.

*Porter* v. *Muggah*, 29.

10. The heirs should be informed of every act of an executor or creditor, which may charge or materially affect the property of a succession.

*Succession of Bow'es,* 35.

11. Under art. 647 of the Code of Practice, the undivided share of an heir in a succession, may be seized and sold under execution. *Noble* v. *Nettles,* 152.

12. In an action, on an open account, against the heirs amongst whom a succession has been partitioned, for articles furnished to their ancestor, interest will be allowed from judicial demand, and not from the death of the ancestor. *Barney* v. *Brown,* 270.

13. Illegitimate children, though duly acknowledged, have no claim against the estate of their natural father, but for alimony. C. C. 224, 257, 913.

*Liautaud* v. *Baptiste,* 441.

14. The rights acquired by children legitimated by the subsequent marriage of their parents, have no effect against gratuitous dispositions, previously made by the latter. The legitimation has no retroactive effect. It operates only from the date of the marriage. C. C. 219, 948, 1556. *Ib.*

## IV. *Sale of Property of Successions.*

15. A sale by the administrator of a succession of property held by the deceased, subject to a mortgage, gives the mortgagee no claim against the succession. His rights cannot be affected by such a sale ; and he must pursue the property in the hands of the subsequent third possessor.

*Succession of Field,* 5.

16. Notice must be given to the forced heirs, of any application to sell the property of a succession in which they are interested. It may be to their interest to prevent a sale, by furnishing the means necessary to extinguish the debts and legacies. *Succession of Bowles,* 35.

17. An application by an executor for authority to sell a part of the effects of a succession, is in the nature of a rule to show cause ; and it is only necessary that reasonable notice thereof should be given to the parties interested.

*Ib.*

18. The testator had bequeathed all his estate to his mother and one of his sisters. An order for a sale of the property having been procured by the executor, a sister of the deceased, to whom no part of the estate had been left, obtained an injunction to prevent the sale, and the curator of the testator's mother, an interdicted person, intervened in the suit, alleging that the latter was a forced heir recognized by the will, that the injunction was for her benefit as well as the plaintiff's, claiming part of the damages sued for, and praying to be allowed, with the consent of the plaintiff, to unite with the latter, and to pay a part of the costs. Answer by defendant to the petition of intervention, denying the right of the curator to intervene ; and judgment dissolving the injunction, and ordering the executor to proceed with the sale. On an appeal by plaintiff and intervenor : *Held,* that the plaintiff, having no interest in the succession of the testator, had no right to interfere with its administration ; and that no judgment having been rendered for or against the intervenor in the lower court, his appeal must be dismissed.

*Field* v. *Mathison,* 38.

19. The decree of the Court of Probates where the succession is opened, made in conformity to the advice of a family meeting, is necessary to authorize the sale of property belonging to minor heirs ; and where such a decree has been made, the court will not look beyond it. *Beard* v. *Morancy*, 119.

20. Where a stranger to a succession withholds the price of property purchased at a sale of its effects, an action for the amount can be brought only before a court of ordinary jurisdiction. *Aliter*, where a legatee and universal heir seeks to avail himself of the privilege allowed by art. 1265 of the Civil Code, of retaining the price of property so adjudicated, until his share shall be fixed by a partition. The rights of a co-heir, who exercises this privilege, must be settled contradictorily with the other heirs, under the direction of the Court of Probates, whose decree must fix the portion coming to each. Until this be done, the heir who purchases keeps the purchase money as a kind of deposit, subject to the decision of the Court of Probates, which must determine what he is to pay over. The court which makes such a decree, must have authority to enforce obedience to it. *Succession of Carraby*, 349.

See EVIDENCE, 20.    SALE, VIII.

### V.  *Claims against Successions.*

21. The provision of art. 984 of the Code of Practice, requiring the holder of any claim for money against a succession to present it to the curator or executor before commencing an action, is like the amicable demand to be made of a debtor before suit. Its omission may prevent the recovery of costs, but not that of the debt itself. *Fisk* v. *Friend*, 264.

## SUMMARY PROCEEDINGS.

1. The surety in an attachment, though a resident of a different parish, may, under the third section of the act of 20th March, 1839, be proceeded against, summarily, before the court by which the original suit was decided. The object of that section was to authorize the court before which the action was instituted, to determine all questions, principal and incidental, raised in the course of the proceedings, and thus to secure a speedy adjustment of the rights of the plaintiff. *Wallace* v. *Glover*, 411.

2. Whenever a question arises out of a bail bond, it is incidental to the main action, and may be tried summarily, without instituting a new suit. *Ib.*

See EXECUTORY PROCESS.

## SURETY.

1. Subrogation, whether legal or conventional, invests the person in whose favor it takes place, with all the rights, actions, privileges, and mortgages of the creditor against his debtor. *King* v. *Dwight*, 2.

2. One who has paid the debt due to a plaintiff, and been expressly subrogated to his rights, may take out execution against the defendant. Such an

e⸱press subrogation, is equivalent to an authority to use the plaintiff's name in prosecuting the suit for the recovery of the debt. *Ib.*

3. An accommodation endorser must be viewed in the light of a surety, and as such is entitled to discuss the property of his principal.

*Dwight* v. *Linton*, 57.

4. The purchaser of property sold under a *fi. fa.* on twelve months' credit, having offered defendants' testator to the sheriff as security for the price, received a blank bond from the sheriff to be signed by himself and the testator, and filled up on its return. The bond was signed, but not returned to the sheriff till after the death of the surety, which happened a few days after he signed the instrument, when it was filled up. *Held,* that the security having been previously approved by the sheriff, the contract was complete by the signature of the former. *Wells* v. *Moore*, 154.

5. The sureties on a bond given by a sheriff for the collection of the parish taxes, cannot, when sued as sureties for a portion of the taxes collected but not paid over by the sheriff, contest the legality of the ordinances of the Police Jury making the assessment. By receiving the tax roll, and executing the bond, the sheriff and his sureties recognized the authority of the Police Jury. It is too late to contest the validity of their ordinances, after having acted under them, and collected the taxes. *McGuire* v. *Bry*, 196.

6. Notice to a principal that, if he do not pay before a certain time, suit will be commenced against him, is not such an agreement for indulgence as precludes the party from suing, and thereby discharges the surety. *Ib.*

7. Bond, in the sum of $8935, for the collection of the parish taxes, " agreeably to the assessment roll." The taxes for ordinary parochial purposes amounted to $3573 66, and there was a special tax, of an equal amount, collected for a particular purpose. In an action on the bond : *Held,* that the sureties were bound for both, it being improbable that a bond would be executed for $8935, to secure the payment of $3573 66 only. *Ib.*

8. Where in an action against sureties who are bound jointly only, they claim in their answer the benefit of division, and it is not alleged that either is insolvent, the judgment must be against each for his virile portion. *Ib.*

9. A surety who binds himself with his principal, *in solido*, is not entitled to the benefit of discussion ; and may be sued alone for the whole debt. His obligation must be regulated by the principles applicable to debtors *in solido*. C. C. 3014. *Smith* v. *Scott*, 258.

10. Under the act of 28th February, 1837, actions against the sureties of a sheriff, on his official bond, are prescribed by the lapse of two years.

*Mulhollan* v. *Henderson*, 297.

11. A prolongation of the term granted to the principal debtor, without the consent of the surety, will release the latter. C. C. 3032. *Calliham* v. *Tanner*, 299.

12. A surety, who pays the debt of his principal, is entitled to all the rights of the creditor against the latter ; for, however desperate his situation may be at any particular time, it may improve, and offer, ultimately, complete indemnity. *Ib.*

13. A party, who seeks to render another liable for the debt of a third person, must prove such liability beyond all doubt, or he cannot recover. C. C. 3008.

*Hazard* v. *Lambeth*, 378.

See ATTACHMENT, 4. BAIL.

## SURVEY.

In all surveys, courses and distances must yield to natural and ascertained objects. *Wells* v. *Compton*, 171.

See EVIDENCE, 23.

## SURVEYOR, PARISH.

1. Parish Surveyors are regularly appointed officers known to the law, and when dead, their declarations, taken in other suits, may be used, when necessary, as evidence to explain their acts. So plats made by a Parish Surveyor under orders of court, in a suit to which defendant was a party, are admissible after the decease of the former, to prove the declarations of the defendant made at the time of the survey. *Wells* v. *Compton*, 171.
2. The official acts and certificates of Parish Surveyors are entitled to full faith and credit, in all of the courts of this State. *Ib.*
3. The *procès-verbal* of a survey made by a Parish Surveyor, is legal evidence of the acts which it recites, as that notice was givin, that the parties attended, &c. *Ib.*

See EVIDENCE, 23.

## TAX COLLECTOR.

See SHERIFF.

## TRIAL.

Action for $90 paid to defendant, in error, as owner of a butcher's stall, and for $2000 damages for forcibly turning plaintiff out and retaining the possession of the stall. Plaintiff having obtained a rule on defendant to show cause why he should not be put in possession, it was made absolute, and defendant appealed. *Held*, that the court erred in ordering a part of the case to be tried on a rule, and leaving the remainder untried. A case should not be tried on any other day than the one fixed by the court, when called in its turn. C. P. 463.

*Gerber* v. *Marzoni*, 370. *Beaudouin* v. *Rochebrun*, 372.

See NEW TRIAL.

## TUTOR.

See MINOR.

## UNITED STATES, OFFICERS OF.

A rule cannot be taken on an officer of the United States, in his official capacity, to show cause why he should not pay over money, seized in his hands under a *fi. fa.*, as the property of a third person. To condemn him to pay as an officer, would be to condemn the government, which cannot be done. *Mechanics and Traders Bank of New Orleans* v. *Hodge*, 373.

## VERDICT.

See APPEAL. 40. JURY, 1. 2. 4. 7.

## WARRANTY.

See SALE, 12. 13. 14. 15. 22.

## WILL.

See DONATIONS, II. III.

END OF VOLUME III.

# ERRATA.

Page 1, line 18 from top, for *applicant,* substitute *appellant.*
 " 26, " 6  " *places,* " *place.*
 " 94, " 14  " *services,* " *service.*
 " 326, " 12  " *rendered,* " *tendered.*
 " 420, " 10  " *6th,* " *5th.*
 " 489, " 29  " insert *each* after *share.*
 " 492, " 5  " for 6*th April,* 1833, substitute 9*th Febuary,* 1833.